MICHAEL A. COLUMBO (SBN: 271283)
SHAWN COWLES (SBN: 163826)
MARK P. MEUSER (SBN: 231335)
**DHILLON LAW GROUP INC.**
4675 MacArthur Court, Suite 1410
Newport Beach, CA 92660
Tel: (415) 433-1700
Email: mmeuser@dhillonlaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAVID TANGIPA** et al., | Case No. 2:25-cv-10616 JLS (KESx) |
| Plaintiffs, | **DECLARATION OF SEAN TRENDE IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |
| vs. | |
| **GAVIN NEWSOM**, in his official capacity as the Governor of California; **SHIRLEY WEBER**, in her official capacity as California Secretary of State, | Assigned to Hon. Josephine L. Staton |
| Defendants. | Action Filed:  November 5, 2025 |

## DECLARATION OF SEAN TRENDE

I, Sean Trende, declare and state as follows:

1.    I am over the age of 18, and a United States citizen. I know the following facts of my own personal knowledge, and if called upon as a witness, I could and would testify competently thereto.

2.    I am a political scientist and elections analyst. I have been asked by counsel in this Proposition 50 matter to offer expert opinions on redistricting, the use of race in line-drawing. My background and experience qualify me to offer these opinions, as set out below.

3.    My curriculum vitae, which summarizes my education, experience, and publications, is attached hereto as Exhibit 1.

4.    My educational background combines law, political science, and advanced statistics. I received my J.D., cum laude, from Duke University School of Law in 2001, where I served as Research Editor of the Duke Law Journal. In the same year I earned an M.A. in Political Science from Duke University. I later completed an M.A.S. (Master of Applied Statistics) at The Ohio State University in 2019, and a Ph.D. in Political Science at The Ohio State University in 2023, with a dissertation titled "Application of Spatial Analysis to Contemporary Problems in Political Science." This combination of legal training, quantitative methods, and doctoral-level work in political science informs the empirical and legal orientation of my redistricting work.

5.    Since 2010 I have served as the Senior Elections Analyst for RealClearPolitics, a role in which I analyze election results, demographic change, and partisan performance across states and congressional districts. I have also been a Visiting Scholar at the American Enterprise Institute and have written extensively on American elections in books edited by Larry Sabato and in the Almanac of American Politics. This public-facing work reflects the same core skill set I apply in litigation: connecting demographic and electoral data to real-world political outcomes.

6.    I have been qualified and have testified as an expert in a large number of redistricting, racial-gerrymandering, political-gerrymandering, VRA, and election-administration cases in federal and state courts around the country. These matters include, among many others,

Dickson v. Rucho (North Carolina racial gerrymandering), Covington v. North Carolina (racial gerrymandering), Common Cause v. Rucho (political gerrymandering), LULAC v. Abbott (racial/political gerrymandering and VRA), Stone v. Allen (VRA), Agee v. Benson (14th Amendment and VRA), and multiple challenges in Louisiana, South Carolina, Maryland, New York, Michigan, and Arizona. The breadth of these engagements has required me to evaluate whether a jurisdiction has identified a genuine VRA need, whether race predominated over traditional districting criteria, and whether enacted maps actually furnish minority voters an equal opportunity to elect candidates of their choice.

7.    In addition to serving as an expert for parties, I have been appointed directly by government bodies and courts in redistricting matters. In 2020 the Arizona Independent Redistricting Commission appointed me as its Voting Rights Act expert. The Supreme Court of Virginia later appointed me as Special Master to redraw the maps for the Virginia House of Delegates, the Virginia Senate, and Virginia's congressional delegation for the 2022 cycle. These appointments required me to apply VRA principles in a neutral, technical fashion and to produce maps that satisfied one-person-one-vote, traditional districting criteria, and federal non-discrimination requirements.

8.    I have been asked to evaluate whether the revised California Districts were drawn, in whole or in part, with race as a predominate motive.

9.    As a result of my review, the Proposition 50 Map's boundaries between districts 5, 9 and 13 appear to have been crafted to enhance the Hispanic Voting Age Population and Hispanic Citizen Voting Age Population in the district. The twisted shapes cannot be explained by traditional redistricting principles, nor can they be explained by politics. Race predominated in these lines. My full report is attached as Exhibit 2 to this declaration.

///

///

DECLARATION OF SEAN TRENDE

1    I declare under penalty of perjury under the laws of the United States that the foregoing is

2    true and correct.

3

4    Executed this 7th day of November 2025,

5    at _____11/7/2025_____, Ohio.

6                                    *Sean Trende*

7                                    _____
                                     Sean Trende

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

_____
DECLARATION OF SEAN TRENDE

# EXHIBIT 1

Exhibit 1 – Sean Trende C.V.  —  48

# SEAN P. TRENDE

1146 Elderberry Loop

Delaware, OH 43015

strende@realclearpolitics.com

## EDUCATION

Ph.D., The Ohio State University, Political Science, 2023. Dissertation titled *Application of Spatial Analysis to Contemporary Problems in Political Science*, September 2023.

M.A.S. (Master of Applied Statistics), The Ohio State University, 2019.

J.D., Duke University School of Law, *cum laude*, 2001; Duke Law Journal, Research Editor.

M.A., Duke University, *cum laude*, Political Science, 2001. Thesis titled *The Making of an Ideological Court: Application of Non-parametric Scaling Techniques to Explain Supreme Court Voting Patterns from 1900-1941*, June 2001.

B.A., Yale University, with distinction, History and Political Science, 1995.

## PROFESSIONAL EXPERIENCE

Law Clerk, Hon. Deanell R. Tacha, U.S. Court of Appeals for the Tenth Circuit, 2001-02.

Associate, Kirkland & Ellis, LLP, Washington, DC, 2002-05.

Associate, Hunton & Williams, LLP, Richmond, Virginia, 2005-09.

Associate, David, Kamp & Frank, P.C., Newport News, Virginia, 2009-10.

Senior Elections Analyst, RealClearPolitics, 2010-present.

Columnist, Center for Politics Crystal Ball, 2014-17.

Visiting Scholar, American Enterprise Institute, 2018-present.

**BOOKS AND BOOK CHAPTERS**

Larry J. Sabato, ed., *The Red Ripple*, Ch. 15 (2023).

Larry J. Sabato, ed., *A Return to Normalcy?: The 2020 Election that (Almost) Broke America* Ch. 13 (2021).

Larry J. Sabato, ed., *The Blue Wave*, Ch. 14 (2019).

Larry J. Sabato, ed., *Trumped: The 2016 Election that Broke all the Rules* (2017).

Larry J. Sabato, ed., *The Surge:2014's Big GOP Win and What It Means for the Next Presidential Election*, Ch. 12 (2015).

Larry J. Sabato, ed., *Barack Obama and the New America*, Ch. 12 (2013).

Barone, Kraushaar, McCutcheon & Trende, *The Almanac of American Politics* 2014 (2013).

*The Lost Majority: Why the Future of Government is up for Grabs – And Who Will Take It* (2012).

**PREVIOUS EXPERT TESTIMONY AND/OR DEPOSITIONS**

*Dickson v. Rucho*, No. 11-CVS-16896 (N.C. Super. Ct., Wake County) (racial gerrymandering).

*Covington v. North Carolina*, No. 1:15-CV-00399 (M.D.N.C.) (racial gerrymandering).

*NAACP v. McCrory*, No. 1:13CV658 (M.D.N.C.) (early voting).

*NAACP v. Husted*, No. 2:14-cv-404 (S.D. Ohio) (early voting).

*Ohio Democratic Party v. Husted*, Case 15-cv-01802 (S.D. Ohio) (early voting).

*Lee v. Virginia Bd. of Elections*, No. 3:15-cv-357 (E.D. Va.) (early voting).

*Feldman v. Arizona*, No. CV-16-1065-PHX-DLR (D. Ariz.) (absentee voting).

*A. Philip Randolph Institute v. Smith*, No. 1:18-cv-00357-TSB (S.D. Ohio) (political gerrymandering).

*Whitford v. Nichol*, No. 15-cv-421-bbc (W.D. Wisc.) (political gerrymandering).

*Common Cause v. Rucho*, No. 1:16-CV-1026-WO-JEP (M.D.N.C.) (political gerrymandering).

*Mecinas v. Hobbs*, No. CV-19-05547-PHX-DJH (D. Ariz.) (ballot order effect).

*Fair Fight Action v. Raffensperger*, No. 1:18-cv-05391-SCJ (N.D. Ga.) (statistical analysis).

*Pascua Yaqui Tribe v. Rodriguez*, No. 4:20-CV-00432-TUC-JAS (D. Ariz.) (early voting).

*Ohio Organizing Collaborative, et al v. Ohio Redistricting Commission, et al*, No. 2021-1210 (Ohio) (political gerrymandering).

*NCLCV v. Hall*, No. 21-CVS-15426 (N.C. Sup. Ct.) (political gerrymandering).

*Szeliga v. Lamone*, Case No. C-02-CV-21-001816 (Md. Cir. Ct.) (political gerrymandering).

*In the Matter of 2022 Legislative Districting of the State*, Misc. No. 25 (Md. Ct. App.) (political gerrymandering)

*Montana Democratic Party v. Jacobsen*, DV-56-2021-451 (Mont. Dist. Ct.) (early voting; ballot collection).

*Carter v. Chapman*, No. 464 M.D. 2021 (Pa.) (map drawing; amicus).

*NAACP v. McMaster*, No. 3:21-cv-03302 (D.S.C.) (racial gerrymandering).

*Alexander v. NAACP*, Case No. 3:21-cv-03302-MBS-TJH-RMG (D.S.C.) (racial gerrymandering).

*Graham v. Adams*, No. 22-CI-00047 (Ky. Cir. Ct.) (political gerrymandering).

*Harkenrider v. Hochul*, No. E2022-0116CV (N.Y. Sup. Ct.) (political gerrymandering).

*LULAC v. Abbott*, Case No. 3:21-cv-00259 (W.D. Tex.) (racial/political gerrymandering/VRA).

*Moore et al., v. Lee, et al.*, (Tenn. 20th Dist.) (state constitutional compliance).

*Milligan v. Allen*, Case No. 2:21-cv-01530-AMM (N.D. Ala.) (VRA).

*Nairne v. Ardoin*, NO. 22-178-SDD-SDJ (M.D. La.) (VRA).

*Robinson v. Ardoin*, NO. 22-211-SDD-SDJ (M.D. La.) (VRA).

*Republican Party v. Oliver*, No. D-506-CV-2022-00041 (N.M. Cir. Ct. (Lea County)) (political gerrymandering).

*Palmer v. Hobbs*, Case No. 3:22-CV-5035-RSL (W.D. Wash) (VRA; remedial phase only).

*Clarke v. Evers*, No. 2023AP001399-OA (Wisc.) (Political gerrymandering; remedial phase only).

*Stone v. Allen*, No. 2:21-cv-1531-AMM (N.D. Ala.) (VRA).

*Milligan v. Allen*, No. 2:21-cv-01530-AMM (S.D. Ala.) (VRA).

*Pierce v. NC State Board of Elections*, Case No. 4:23-cv-193 (E.D.N.C.) VRA.

*Harkenrider v. Hochul*, No. E2022-0116CV (N.Y. Sup. Ct.) (political gerrymandering).

*LULAC v. Abbott*, Case No. 3:21-cv-00259 (W.D. Tex.) (racial/political gerrymandering/VRA).

*Moore et al., v. Lee, et al.*, (Tenn. 20th Dist.) (state constitutional compliance).

*Agee et al. v. Benson, et al.*, (W.D. Mich.) (racial gerrymandering/VRA).

*Faatz, et al. v. Ashcroft, et al.*, (Cir. Ct. Mo.) (state constitutional compliance).

Docusign Envelope ID: 158FBE17-8E4B-4991-9138-B67910BED0A1

Exhibit 1 – Sean Trende C.V.   —   52

*Coca, et al. v. City of Dodge City, et al.*, Case No. 6:22-cv-01274-EFM-RES (D. Kan.) (VRA).

*Pierce v. NC State Board of Elections*, Case No. 4:23-cv-193 (E.D.N.C.) (VRA).

*Williams v. Hall*, Civil Action No. 23 CV 1057 (M.D.N.C.) (VRA, Racial Gerrymandering).

*Hodges v. Passidomo*, Case No. 8:24-cv-879-CEH-TPB-ALB (M.D. Fla.) (Racial Gerrymandering).

*Coads v. Nassau County*, Index No. 611872/2023 (N.Y. Sup. Ct., Nassau County) (political gerrymandering, racial gerrymandering, NYVRA).

## COURT APPOINTMENTS

Appointed as Voting Rights Act expert by Arizona Independent Redistricting Commission (2020)

Appointed Special Master by the Supreme Court of Virginia to redraw maps for the Virginia House of Delegates, the Senate of Virginia, and for Virginia's delegation to the United States Congress for the 2022 election cycle.

Appointed redistricting expert by the Supreme Court of Belize in Smith v. Perrera, No. 55 of 2019 (one-person-one-vote).

## INTERNATIONAL PRESENTATIONS AND EXPERIENCE

Panel Discussion, European External Action Service, Brussels, Belgium, Likely Outcomes of 2012 American Elections.

Selected by U.S. Embassies in Sweden, Spain, and Italy to discuss 2016 and 2018 elections to think tanks and universities in area (declined Italy due to teaching responsibilities).

Selected by EEAS to discuss 2018 elections in private session with European Ambassadors.

Docusign Envelope ID: 458FBE17-8E4B-4991-9138-B67910BED0A1

**TEACHING**

American Democracy and Mass Media, Ohio Wesleyan University, Spring 2018.

Introduction to American Politics, The Ohio State University, Autumns 2018, 2019, 2020, Spring 2018.

Political Participation and Voting Behavior, Springs 2020, 2021, 2022, 2023.

Survey Methodology, Fall 2022, Spring 2024.

**PUBLICATIONS**

James G. Gimpel, Andrew Reeves, & Sean Trende, "Reconsidering Bellwether Locations in U.S. Presidential Elections," Pres. Stud. Q. (2022) (forthcoming, available online at http://doi.org/10.1111/psq.12793).

**REAL CLEAR POLITICS COLUMNS**

Full archives available at `http://www.realclearpolitics.com/authors/sean_trend e/`

# EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

DAVID TANGIPA, *et al.*,,

      Plaintiffs,

    v.

GAVIN NEWSOM, in his official capacity as the Governor of California; SHIRLEY WEBER, in her official capacity as California Secretary of State;,

      Defendants.

Case No. _____

**EXPERT REPORT OF SEAN P. TRENDE, Ph.D**

# Table of Contents

1   Introduction and Executive Summary                                                    1

2   Qualifications                                                                          1

  2.1  Career . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

  2.2  Publications and Speaking Engagements  . . . . . . . . . . . . . . . . . . . . .    2

  2.3  Education . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

  2.4  Prior Engagements as an Expert . . . . . . . . . . . . . . . . . . . . . . . . .    4

3   California District 13 shows signs of racial predominance in line draw-
    ing.                                                                                   4

4   Demonstration Maps                                                                    22

5   Conclusion                                                                            27

# List of Figures

Figure 1:    California District 13 . . . . . . . . . . . . . . . . . . . . . . . . . . .    5

Figure 2:    Madera Area, By HCVAP and Block Group . . . . . . . . . . . .    7

Figure 3:    Madera Area, By HVAP and Block Group . . . . . . . . . . . . .    8

Figure 4:    Madera Area, By Politics and Block Group . . . . . . . . . . . .    9

Figure 5:    Madera Area, By HVAP and Precinct  . . . . . . . . . . . . . . .    10

Figure 6:    Madera Area, By Politics and Precinct . . . . . . . . . . . . . . .    10

Figure 7:    California District 13, Modesto/Ceres Area . . . . . . . . . . . . .    11

Figure 8:    Modesto/Ceres Area, By Politics and Block Group . . . . . . . .    12

Figure 9:    Modesto/Ceres Area, By Politics and Precinct . . . . . . . . . . .    13

Figure 10:   Modesto/Ceres Area, By HCVAP and Block Group . . . . . . . .    14

Figure 11:   Modesto/Ceres Area, By HVAP and Block Group . . . . . . . . .    15

Figure 12:   Modesto/Ceres Area, By HVAP and Precinct  . . . . . . . . . . .    16

Figure 13:   District 9/13 Boundary, Stockton Area . . . . . . . . . . . . . . .    17

Figure 14:   District 9/13 Boundary, Stockton Area, By Politics and Block Group    18

Figure 15:   District 9/13 Boundary, Stockton Area, By Politics and Precinct .    19

Figure 16:   District 9/13 Boundary, Stockton Area, By HCVAP and Block Group    20

Figure 17:   District 9/13 Boundary, Stockton Area, By HVAP and Block Group    21

Figure 18:   District 9/13 Boundary, Stockton Area, By HVAP and Precinct  .    22

Figure 19:   Demonstration Map A . . . . . . . . . . . . . . . . . . . . . . . .    23

Figure 20:   Demonstration Map B . . . . . . . . . . . . . . . . . . . . . . . .    25

Figure 21:   Demonstration Map C . . . . . . . . . . . . . . . . . . . . . . . .    26

# 1   Introduction and Executive Summary

My name is Sean P. Trende. I am over 18 years of age and I hold a Ph.D. in Political Science. I have been retained by Dhillon Law Group on behalf of plaintiffs in the above-captioned matter. In this part of my report, I am asked to evaluate whether the revised California Districts were drawn, in whole or in part, with race as a predominant motive. The Enacted Map's boundaries between districts 9 and 13 appear to have been crafted to enhance the Hispanic Voting Age Population and Hispanic Citizen Voting Age Population in the district. The twisted shapes cannot be explained by traditional redistricting principles, nor can they be explained by politics. I conclude race predominated in drawing these lines. I am being compensated at a rate of $500/hr for authoring this report. My compensation is in no way dependent upon the conclusions that I reach.

# 2   Qualifications

## 2.1   Career

I serve as Senior Elections Analyst for Real Clear Politics. I joined Real Clear Politics in January of 2009 and assumed a fulltime position in March of 2010. Real Clear Politics is a company of approximately 50 employees, with its main offices in Washington D.C. It produces one of the most heavily trafficked political websites in the world, which serves as a one-stop shop for political analysis from all sides of the political spectrum and is recognized as a pioneer in the field of poll aggregation. Real Clear Politics produces original content, including both data analysis and traditional reporting.

My main responsibilities with Real Clear Politics consist of tracking, analyzing, and writing about elections. I collaborate in rating the competitiveness of Presidential, Senate, House, and gubernatorial races. As a part of carrying out these responsibilities, I have studied and written extensively about demographic trends in the country, exit poll data at the state and federal level, public opinion polling, and voter turnout and voting behavior. In particular, understanding the way that districts are drawn and how

geography and demographics interact is crucial to predicting United States House of Representatives races, so much of my time is dedicated to that task.

I am currently a Visiting Scholar at the American Enterprise Institute, where my publications focus on the demographic and coalitional aspects of American Politics.

I am also a Lecturer at The Ohio State University. My courseload is detailed below.

## 2.2    Publications and Speaking Engagements

I am the author of the 2012 book The Lost Majority: Why the Future of Government is up For Grabs and Who Will Take It. In this book, I explore realignment theory. It argues that realignments are a poor concept that should be abandoned. As part of this analysis, I conducted a thorough analysis of demographic and political trends beginning in the 1920s and continuing through modern times, noting the fluidity and fragility of the coalitions built by the major political parties and their candidates.

I also co-authored the 2014 Almanac of American Politics. The Almanac is considered the foundational text for understanding congressional districts and the representatives of those districts, as well as the dynamics in play behind the elections. My focus was researching the history of and writing descriptions for many of the 2012 districts, including tracing the history of how and why they were drawn the way that they were drawn. Because the 2014 Almanac covers the 2012 elections, analyzing how redistricting was done was crucial to my work. I have also authored a chapter in Dr. Larry Sabato's post-election compendium after every election dating back to 2012.

I have spoken on these subjects before audiences from across the political spectrum, including at the Heritage Foundation, the American Enterprise Institute, the CATO Institute, the Bipartisan Policy Center, and the Brookings Institution. In 2012, I was invited to Brussels to speak about American elections to the European External Action Service, which is the European Union's diplomatic corps. I was selected by the United States Embassy in Sweden to discuss the 2016 elections to a series of audiences there and

was selected by the United States Embassy in Spain to fulfill a similar mission in 2018. I was invited to present by the United States Embassy in Italy, but was unable to do so because of my teaching schedule.

## 2.3   Education

I received my Ph.D. in political science at The Ohio State University in 2023. I passed comprehensive examinations in both Methodology and American Politics. The first chapter of my dissertation involves voting patterns on the Supreme Court from 1900 to 1945; the second chapter involves the application of integrated nested LaPlace approximations to enable the incorporation of spatial statistical analysis in the study of United States elections. The third chapter of the dissertation involves the use of communities of interest in redistricting simulations. In pursuit of this degree, I also earned a Master's Degree in Applied Statistics. My coursework for my Ph.D. and M.A.S. included, among other things, classes on G.I.S. systems, spatial statistics, issues in contemporary redistricting, machine learning, non-parametric hypothesis tests and probability theory. I also earned a B.A. from Yale University in history and political science in 1995, a Juris Doctor from Duke University in 2001, and a Master's Degree in political science from Duke University in 2001.

In the winter of 2018, I taught American Politics and the Mass Media at Ohio Wesleyan University. I taught Introduction to American Politics at The Ohio State University for three semesters from Fall of 2018 to Fall of 2019, and again in Fall of 2021. In the Spring semesters of 2020, 2021, 2022 and 2023, I taught Political Participation and Voting Behavior at The Ohio State University. This course spent several weeks covering all facets of redistricting: how maps are drawn, debates over what constitutes a fair map, measures of redistricting quality, and similar topics. It also covers the Voting Rights Act and racial gerrymandering claims. I also taught survey methodology in Fall of 2022 and Spring of 2024. In Spring of 2025 I taught Introduction to the Policy Process.

Docusign Envelope ID: 458EBE17-8E4B-4991-9138-B67910BED0A1
Case 2:25-cv-10616-JLS-WLH-KKL   Document 16-5   Filed 11/07/25   Page 19 of 42
Page ID #:257
California District 13 shows signs of racial predominance in line drawing.   — 4

## 2.4    Prior Engagements as an Expert

A full copy of all cases in which I have testified or been deposed is included on my C.V., attached as Exhibit 1. In 2021, I served as one of two special masters appointed by the Supreme Court of Virginia to redraw the districts that will elect the Commonwealth's representatives to the House of Delegates, state Senate, and U.S. Congress in the following decade. The Supreme Court of Virginia accepted those maps, which were praised by observers from across the political spectrum. See, e.g., New Voting Maps, and a New Day, for Virginia, The Washington Post (Jan. 2, 2022), *available at* `https://www.washingtonpost.com/opinions/2022/01/02/virginia-redistricting-voting-maps-gerrymander`; Henry Olsen, Maryland Shows How to do Redistricting Wrong. Virginia Shows How to Do it Right, The Washington Post (Dec. 9, 2021), *available at* `https://www.washingtonpost.com/opinions/2021/12/09/maryland-virginia-redistricting`; Richard Pildes, Has VA Created a New Model for a Reasonably Non-Partisan Redistricting Process, Election Law Blog (Dec. 9, 2021), *available at* `https://electionlawblog.org/?p=126216`.

In 2019, I was appointed as the court's expert by the Supreme Court of Belize. In that case I was asked to identify international standards of democracy as they relate to malapportionment claims, to determine whether Belize's electoral divisions (similar to our congressional districts) conformed with those standards, and to draw alternative maps that would remedy any existing malapportionment.

I served as a Voting Rights Act expert to counsel for the Arizona Independent Redistricting Commission in 2021 and 2022.

# 3    California District 13 shows signs of racial predominance in line drawing.

In a presentation, map drawer Paul Mitchell stated "The Prop. 50 maps I think will be great for the Latino community in two critical ways. One is that they ensure that

the Latino districts that are the VRA seats are bolstered in order to make them most effective, particularly in the Central Valley." Hispanas Organized for Political Equality (HOPE) Presentation, 10/7/25, 30:6-11. It is apparent in the lines for District 13 in the Central Valley.

California District 13 as drawn is a competitive district in the Central Valley. It is comprised of western Madera County, a portion of Fresno County, all of Merced County, southwestern Stanislaus County, and a portion of San Joaquin County. The district has relatively unremarkable boundaries, with three exceptions: Madera in the southeast, the area near Ceres and Modest in the northern portion of the district, and the large protrusion near Stockton off the far northern tip.

Figure 1: California District 13



© OpenStreetMap contributors

Docusign Envelope ID: 458FBE17-8E4B-4991-9138-B67910BED0A1

California District 13 shows signs of racial predominance in line drawing.   —   6

Overall, the district performs better politically for Democratic Representative Adam Gray than did the previous iteration of the district. However, two of the three odd shapes appear to exist not to enhance Gray's fortunes, but rather to improve Hispanic performance in the district.

To better understand this, it is useful to first explore the shape that does not appear to be motivated by race: The one in the south. The following image shows the shape of the district overlaid upon block groups shaded by Hispanic Citizen Voting Age Population; the next one uses Hispanic Voting Age Population.[1] As you can see, the entire area is heavily Hispanic, but there is Hispanic population that is left out of the district. To be sure, the most heavily Hispanic areas tend to be in the center of the district, but it is not neatly sliced by race. The same is true whether you use HCVAP or HVAP.

---

[1] I am aware of caselaw from the 9th Circuit suggesting that CVAP is the proper measure. However, CVAP has large error margins, particularly at the block group level. Because of this, I use both measures.

California District 13 shows signs of racial predominance in line drawing.  —  7

Figure 2: Madera Area, By HCVAP and Block Group



California District 13 shows signs of racial predominance in line drawing.    — 8

Figure 3: Madera Area, By HVAP and Block Group



Contrast this with the political map of the district. Here, we can see the district boundaries much more neatly capturing the Democratic areas, although the area is overall politically marginal.

California District 13 shows signs of racial predominance in line drawing.   — 9

Figure 4: Madera Area, By Politics and Block Group



We can see the same thing using precinct boundaries, as calculated by Dave's Redistricting App (a popular online map drawing tool, which was used to draw the boundaries in Virginia).

California District 13 shows signs of racial predominance in line drawing.    —    10

Figure 5: Madera Area, By HVAP and Precinct



Figure 6: Madera Area, By Politics and Precinct



Docusign Envelope ID: J58FBE17-8F4B-4991-9138-B67910BFD0A1

California District 13 shows signs of racial predominance in line drawing.   — 11

Figure 7: California District 13, Modesto/Ceres Area



© OpenStreetMap contributors

Here, we can see that the district does conform nicely to the political outlines of the district, with Republicans kept outside and Democratic areas inside. This an example of something where race and politics appear to be at least mixed.

Next, consider the area near Ceres and Modesto. The district bulges out here as well. It splits Modesto but keeps Ceres intact. It also captures some areas outside of Ceres.

If we examine the political split, we see that the map in fact leaves a significant Democratic population on the table in Modesto, to the north of the district boundary. In addition, it captures a large Republican population in and around Ceres.

California District 13 shows signs of racial predominance in line drawing.    —    12

Figure 8: Modesto/Ceres Area, By Politics and Block Group



California District 13 shows signs of racial predominance in line drawing.    —    13

Figure 9: Modesto/Ceres Area, By Politics and Precinct



When we examine this from a racial angle, the motivation for the split appears more obvious. Most of the Democratic territory left in Modesto is White. More importantly, the Republican territory captured around Ceres is heavily Hispanic. If partisanship were really the motivating factor for this division, the district would drop some of the Republican areas in Ceres and pick up Democratic areas in Modesto.

California District 13 shows signs of racial predominance in line drawing.    —    14

Figure 10: Modesto/Ceres Area, By HCVAP and Block Group



California District 13 shows signs of racial predominance in line drawing.    —    15

Figure 11: Modesto/Ceres Area, By HVAP and Block Group



© OpenStreetMap contributors

California District 13 shows signs of racial predominance in line drawing.    —   16

Figure 12: Modesto/Ceres Area, By HVAP and Precinct



But the northern split, near Stockton, is one of the more egregious examples. The large plume off the top of the district might make sense as a Democratic gerrymander at first blush.

The problem is once again that this leaves a lot of Democrats on the table. In particular, areas to the west of the District are heavily Democratic, more so than some of the precincts at the District's northern boundary.

California District 13 shows signs of racial predominance in line drawing.  —  17

Figure 13: District 9/13 Boundary, Stockton Area



© OpenStreetMap contributors

California District 13 shows signs of racial predominance in line drawing.    —    18

Figure 14: District 9/13 Boundary, Stockton Area, By Politics and Block Group



California District 13 shows signs of racial predominance in line drawing.    —    19

Figure 15: District 9/13 Boundary, Stockton Area, By Politics and Precinct



What differentiates them is that the portion at the northern end of the district are heavily Hispanic, while the areas left out to the west of the district are more heavily White. In other words, this appendage bypasses white Democrats, making the district less compact, to gain Hispanic areas that are less heavily compact. From a gerrymandering perspective, this makes little sense.

California District 13 shows signs of racial predominance in line drawing.  —  20

Figure 16: District 9/13 Boundary, Stockton Area, By HCVAP and Block Group



California District 13 shows signs of racial predominance in line drawing.    —    21

Figure 17: District 9/13 Boundary, Stockton Area, By HVAP and Block Group



Figure 18: District 9/13 Boundary, Stockton Area, By HVAP and Precinct



# 4   Demonstration Maps

I have also drawn three maps to demonstrate that it is possible to achieve the political goals of the map with a more regular configuration that does not target race. Geojsons for the districts are available as an attachment to this report. The first map, Map A, simply reconfigures Stockton to capture the more heavily Democratic areas to the west of the city.

Figure 19: Demonstration Map A



© OpenStreetMap contributors

District 13 and 9 are equipopulous. The Hispanic Voting Age Population of District 13 in the Enacted Map District 13 is 60.5%; the Hispanic Voting Age Population of District 13 in this version is 58.9%. The estimated Hispanic Citizen Voting Age Population (HCVAP) of District 13 in the Enacted Map is 53.2%; the estimated HCVAP of District 13 in Demonstration District A is 51.3%. The Enacted Map's District 13 has a Reock compactness score of 0.417 and a Polsby-Popper compactness score of 0.205. Demonstration District A has scores of 0.412 and 0.223, respectively. From a political perspective, the map improves Democratic performance. The following table shows Democratic and Republican vote shares for District 13 in the Enacted Map, and in Demonstration District A.

Docusign Envelope ID: 458FBE17-8E4B-4991-9138-B67910BED0A1

Table 1: Political Performance, Enacted Map vs. Map A

| Race | Enacted R% | Enacted D% | D Edge | Map A, R% | Map A, D% | D Edge |
|------|-----------|-----------|--------|-----------|-----------|--------|
| Gov '22 | 50.40% | 49.60% | -0.80% | 50% | 50% | 0% |
| Pres '24 | 48.20% | 48.90% | 0.70% | 48% | 49.20% | 1.20% |
| Sen '24 | 48.70% | 51.30% | 2.60% | 48.30% | 51.70% | 3.40% |

Map B pulls the district further out of Stockton, and captures Democratic voters in the city of Tracy, closer to the district core. While Tracy is split, the map fixes the split in French Cap.

The map also addresses the split in Modesto/Ceres. It does so by making the boundary conform with the Ceres city limits while picking up some Democratic precincts in Modesto.

Figure 20: Demonstration Map B



© OpenStreetMap contributors

District 13 and 9 are equipopulous here. The Hispanic Voting Age Population of District 13 in the Enacted Map District 13 is 60.5%; the Hispanic Voting Age Population of District 13 in this version is 56.0%, The Hispanic Citizen Voting Age Population (HCVAP) of District 13 in the Enacted Map is 53.2%; the HCVAP of District 13 in Demonstration District B is 48.9%. The Enacted Map's District 13 has a Reock compactness score of 0.417 and a Polsby-Popper compactness score of 0.205. Demonstration District B has scores of 0.4082 and 0.2297, respectively.

From a political perspective, the map improves Democratic performance. The following table shows Democratic and Republican vote shares for District 13 in the Enacted Map, and in Demonstration District B.

Docusign Envelope ID: 458FBE17-8E4B-4991-9138-B67910BED0A1
Case 2:25-cv-10616-JLS-WLH-KKL    Document 16-5    Filed 11/07/25    Page 41 of 42
Page ID #:279

Demonstration Maps — 26

Table 2: Political Performance, Enacted Map vs. Map B

| Race | Enacted R% | Enacted D% | D Edge | Map B, R% | Map B, D% | D Edge |
|------|-----------|-----------|--------|-----------|-----------|--------|
| Gov '22 | 50.40% | 49.60% | -0.80% | 50.2% | 49.8% | -0.4% |
| Pres '24 | 48.20% | 48.90% | 0.70% | 48.2% | 49% | 0.8% |
| Sen '24 | 48.70% | 51.30% | 2.60% | 48.7% | 51.3% | 2.6% |

Finally, Map C goes further than Map B. In the Modesto area, it splits Ceres to exclude the Republican areas, otherwise following SR-99. It picks up more Democratic areas in Modesto.

Figure 21: Demonstration Map C



© OpenStreetMap contributors

Docusign Envelope ID: 158FBE17-8E4B-4991-9138-B67910BED0A1     Case 2:25-cv-10616-JLS-WLH-KKL     Document 16-5     Filed 11/07/25     Page 42 of 42
Page ID #:280

Conclusion  —  27

In the north, it pulls further out of Stockton, regularizing the boundary overall.

District 13 and 9 are equipopulous here. The Hispanic Voting Age Population of District 13 in the Enacted Map District 13 is 60.5%; the Hispanic Voting Age Population of District 13 in this version is 55.1%, The Hispanic Citizen Voting Age Population (HCVAP) of District 13 in the Enacted Map is 53.2%; the HCVAP of District 13 in Demonstration District C is 48.1%. The Enacted Map's District 13 has a Reock compactness score of 0.417 and a Polsby-Popper compactness score of 0.205. Demonstration District B has scores of 0.4106 and 0.2421, respectively.

From a political perspective, the map improves Democratic performance. The following table shows Democratic and Republican vote shares for District 13 in the Enacted Map, and in Demonstration District C.

Table 3: Political Performance, Enacted Map vs. Map C

| Race | Enacted R% | Enacted D% | D Edge | Map C, R% | Map C, D% | D Edge |
|------|-----------|-----------|--------|-----------|-----------|--------|
| Gov '22 | 50.40% | 49.60% | -0.80% | 50.3% | 49.7% | -0.6% |
| Pres '24 | 48.20% | 48.90% | 0.70% | 48% | 49.1% | 1.1% |
| Sen '24 | 48.70% | 51.30% | 2.60% | 48.6% | 51.4% | 2.8% |

## 5    Conclusion

The Enacted Map's boundaries between districts 9 and 13 appear to have been crafted to enhance the Hispanic Voting Age Population and Hispanic Citizen Voting Age Population in the district. The twisted shapes cannot be explained by traditional redistricting principles, nor can they be explained by politics. Race predominated in these lines. I reserve the right to supplement this report as additional information becomes available, or according to any scheduling order this Court might set.