1  MICHAEL A. COLUMBO (SBN: 271283)
   SHAWN COWLES (SBN: 163826)
2  MARK P. MEUSER (SBN: 231335)
3  **DHILLON LAW GROUP INC.**
   4675 MacArthur Court, Suite 1410
4  Newport Beach, CA 92660
   Telephone: (415) 433-1700
5  Fax: (415) 520-6593

6  *Attorneys for Plaintiffs*

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11 **DAVID TANGIPA**; *et al.*,              CASE NO. 2:25-cv-10616 JLS (KESx)

              Plaintiffs,
12
                                    **DECLARATION OF SENATOR**
13         vs.                      **ROSILICIE OCHOA BOGH (SD-19) IN**
                                    **SUPPORT OF PLAINTIFFS' MOTION**
14 **GAVIN NEWSOM**, in his official  **FOR PRELIMINARY INJUNCTION**
   capacity as the Governor of California; *et al.*;
15                                  Assigned to Hon. Josephine L. Staton
              Defendants.
16

17                                  Action Filed:  November 5, 2025

18

19

20

21

22

23

24

25

26

27

28



I, Senator Rosilicie Ochoa Bogh, declare:

1.      I am over the age of 18, and a United States citizen. I know the following facts of my own personal knowledge, and if called upon as a witness, I could and would testify competently thereto.

2.      I am a duly elected Member of the California State Senate, representing Senate District 19.

3.      I am the first Republican Latina elected to the California State Senate, representing nearly one million residents in Senate District 19.

4.      I make this declaration of my own personal knowledge to describe what information was, and was not, provided to me when the Legislature considered measures placing what has been described as 'Proposition 50' on the ballot.

5.      Senate District 19 encompasses cities and communities across Riverside and San Bernardino Counties. It is among the largest geographic senate districts and includes more than thirty-five communities. Examples of communities served in the district include Banning, Barstow, Twentynine Palms, Helendale, and Grand Terrace.

6.      This declaration concerns the Legislature's consideration of three interrelated measures related to placing Proposition 50 on the November 4, 2025, ballot: ACA 8 (Rivas/McGuire), AB 604 (Aguiar-Curry/Gonzalez), and SB 280 (Cervantes) (collectively, the 'Measures'). On information and belief, these Measures addressed congressional maps and procedures that proponents publicly justified by references to the federal Voting Rights Act ('VRA') and to so-called 'VRA districts.'

7.      I understand that when a State invokes the VRA as a reason to use race in drawing district lines, it must, before acting, have district-specific evidence showing that, absent the use of race, the State would likely face liability under Section 2. As a legislator, I therefore look for concrete analytical materials, not general assurances.

8.      In July 2025, while the Legislature was in summer recess, I first heard rumors through the media that a mid-cycle redistricting push might occur in mid-August. Around that time, our caucus began sharing information about a possible bill and ballot question.

9.      When we returned to Sacramento in early August 2025, caucus colleagues continued to



1

**DECLARATION OF SENATOR  ROSILICIE OCHOA BOGH (SD-19)**

flag that a bill was coming. After coming back into session, I was shown bill language and received caucus analysis, the first non-press materials I saw regarding the Measures.

10.     This little information was not provided through official committee channels and only contained basic information about what the Measures did: placed a Constitutional Amendment on the ballot for a November 2025 special election to do a mid-decade redistricting effort.

11.     In this information and in all of the official proceedings I was a part of, no one ever told us who drew the maps. The materials I saw did not identify any map author, consultant, or mapping source, and I received no district-by-district technical work explaining or justifying the lines.

12.     I do not sit on the Senate Elections & Constitutional Amendments Committee and was not afforded an opportunity to ask questions there. By the time the Measures reached the Senate Floor on August 21, 2025, I had no say in the map-drawing process, no background about the maps, and I was forced to vote on the Measures with very little information.

13.     On the floor, I spoke against the bills. Proponents' principal theme was to "counteract what Texas was doing" and to put a ballot question to voters, not to explain the maps themselves.

14.     We were given analysis from the Republican Caucus staff, but nothing in that analysis showed where the maps came from or why the specific lines were drawn.

15.     When voting on the Measures and to date, I have not been provided any of the district-by-district technical materials I would expect to see if the Legislature were relying on the VRA to justify race-conscious line-drawing.

16.     Specifically, I did not receive: (a) any racially polarized voting (RPV) analysis; (b) any expert report (or draft) addressing the Gingles preconditions; (c) any functional performance analysis (including candidate-of-choice results, turnout differentials, and evaluations using citizen voting-age population (CVAP)); (d) any compactness metrics for any proposed 'VRA district'; or (e) any side-by-side race-neutral alternatives with an explanation of why those alternatives would not avoid a Section 2 problem.

17.     From my knowledge, even after the Measures passed through the legislative process, no such materials exist elsewhere in the legislative process. To my knowledge, and after reasonable



**DECLARATION OF SENATOR  ROSILICIE OCHOA BOGH (SD-19)**

1    diligence on my part, I still have not seen district-specific RPV findings, expert submissions, or race-

2    neutral alternatives that were available to members before their votes on the Measures. If such materials

3    existed, they were not provided to me.

4        18.    Attached here as Exhibit 1 are the documents I recall receiving prior to my votes. None

5    contained the sort of district-specific evidence justifying race-based line-drawing to create or maintain

6    'VRA districts,' or to add a new Latino VRA district.

7

8        I declare under penalty of perjury under the laws of the State of California and of the United

9    States that the foregoing is true and correct.

10   Executed on November 7, 2025,

11   at _____Yucaipa_____, California.

12

13

14                                          _____
                                            Senator Rosilicie Ochoa Bogh
15                                          Member, California State Senate (R-19)

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF SENATOR  ROSILICIE OCHOA BOGH (SD-19)**



# EXHIBIT 1

AB 604
Page 1

Date of Hearing:  March 26, 2025

ASSEMBLY COMMITTEE ON ELECTIONS
Gail Pellerin, Chair
AB 604 (Berman) – As Introduced February 13, 2025

**SUBJECT**:  Voter registration: residency confirmation.

**SUMMARY**:  Repeals an obsolete provision of law related to residency confirmation of registered voters.

**EXISTING STATE LAW**:

1) Requires each county elections official to conduct a pre-election residency confirmation of each registered voter, as specified, prior to each primary election. (Elections Code §§2220, 2222, 2223, 2227)

2) Provides for the status of a voter's registration to be changed to inactive if change-of-address data received by the county elections official from the United States Postal Service (USPS) or its licensees indicates that the voter has moved and left no forwarding address or has moved out of the state, as specified. Requires the county elections official to send a forwardable address verification mailing to the voter in that case, as specified. (Elections Code §§2221, 2225, 2226)

3) Permitted a county elections official, until December 31, 2019, to send an alternate residency confirmation (ARC) postcard to any voter who had not voted in an election within the preceding four years, and who had not updated their residence address, name, or party preference during that time. Permitted a county elections official, until December 31, 2019, to make a voter's registration inactive if the voter failed to respond to an ARC postcard. This provision of law was made inoperative on January 1, 2020, but remains in state law until January 1, 2029, at which point it will be repealed by its own terms. (Elections Code §2224)

4) Provides that voters with an inactive voter registration status do not receive vote by mail (VBM) ballots or other election materials that otherwise are sent to registered voters, and are not included in voter registration numbers for the purposes of certain election administration related processes. (Elections Code §§2226, 3000.5)

5) Provides that any voter whose registration is inactive, and who offers to vote, who notifies the elections official of a continued residency, or who confirms the voter's registration record on the SOS's website, shall be removed from the inactive list and placed on the active voter list. (Elections Code §2226(c))

**EXISTING FEDERAL LAW**:

1) Requires each state, as specified, to do both of the following pursuant to the National Voter Registration Act of 1993 (NVRA):

   a) Provide that the name of a registrant may not be removed from the official list of eligible voters except at the registrant's request, as provided by state law by reason of criminal conviction or mental incapacity, or as provided by specified procedures outlined in the

NVRA.

b) Conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of death of the registrant, or a change in the residence of the registrant, as specified. (52 U.S. Code §20507)

2) Requires all of the following, pursuant to NVRA and the federal Help America Vote Act (HAVA):

a) That a voter not be removed from the list of eligible voters in elections for federal office on the ground that the registrant has changed residence unless either of the following is true:

i) The registrant confirms their change in residence in writing, as specified; or,

ii) The registrant has failed to respond to a specified notice and has not voted or appeared to vote in an election between the time that the notice is sent and the date of the second federal general election after the notice is sent.

b) That a voting registrar shall correct an official list of eligible voters in elections for federal office in accordance with change of residence information obtained in conformance with the state program or activity to ensure the maintenance of an accurate and current voter registration roll for elections for federal office. (52 U.S. Code §20507)

**FISCAL EFFECT**:  None. This bill is keyed non-fiscal by the Legislative Counsel.

**COMMENTS**:

1) **Purpose of the Bill**: According to the author:

State and federal law require elections officials to follow specified procedures to confirm the residency of registered voters. These residency confirmation procedures are designed to keep voter registration rolls up-to-date by ensuring that voters' registrations are updated when voters move. If information from a residency confirmation process indicates that a voter has moved and not left a forwarding address, the voter's registration becomes inactive. A voter whose registration is inactive remains eligible to vote, but their registration eventually may be canceled if the voter does not vote or confirm their address with the elections official.

I authored AB 504 in 2019 to, among other changes, allow a voter to confirm their address by logging in to the Secretary of State's "My Voter Status" website, which ensures that the voter's registration remains active, or makes the registration active again if it was inactive. Because some of the changes made by AB 504 necessitated technology upgrades, the bill contained two nearly identical provisions of law, with one taking effect following passage and the second taking effect once the upgrades were completed. I'm authoring AB 604 to clean up the law and prevent any confusion as to which provision of code is in effect.

2) **Inactive Voters**: California law provides that a voter's registration may be changed to "inactive" status under specified circumstances. Voters whose registrations are inactive do not receive VBM ballots, but remain eligible to vote. The inactive list is one tool that California uses to protect voters from being disenfranchised inadvertently if elections officials receive inaccurate information about the residence address of a voter.

Under state law, a voter's registration is made inactive when the county elections official receives information from the USPS that indicates that the voter has moved and has not provided a new address, or has moved out of state. Additionally, until recently, a voter's registration could be made inactive even in situations where the elections official had not received information that suggested that a voter has moved. Specifically, until the beginning of 2020, state law allowed (but did not require) elections officials to conduct an ARC process under which voters who had not voted in at least four years were sent a residency confirmation postcard. If the voter failed to return that postcard, state law provided for the voter's registration to be made inactive.

When a county elections official changes a voter's registration status to inactive, state and federal law require the elections official to send a forwardable address verification mailing to the voter at the address at which the voter was registered to vote. If the voter responds to that mailing and confirms that they have not changed their residence, the voter's registration status is changed back to active. Alternately, if the voter responds and indicates that they have changed their residence, the voter's registration is either updated to the voter's new residence address if the new address is in California, or canceled if the new address is outside of California.

If a voter's registration status is changed to inactive and that voter does not respond to the address verification mailing sent by the elections official, then the voter's registration remains inactive. If that voter does not vote, attempt to vote, or otherwise confirm or update their voter registration between the date of that notice and the second federal general election that occurs after the date of the notice, then the voter's registration is canceled.

3) **Secretary of State's My Voter Status Website**: HAVA generally requires each state to implement a single, centralized, interactive computerized statewide voter registration list that is defined, maintained, and administered at the state level and that contains the name and registration information of every legally registered voter in the state. California's federally compliant statewide voter registration database is known as VoteCal.

When California launched VoteCal in September 2016, the SOS also launched a "My Voter Status" portal that allows eligible Californians to register to vote, check their voter registration status, and check the status of their VBM or provisional ballots, among other functions. To access the "My Voter Status" website, a voter must provide their name, driver's license or identification card number, the last four digits of their Social Security number, and their date of birth.

4) **Seeing Double and Previous Legislation**: AB 504 (Berman), Chapter 262, Statutes of 2019, was legislation sponsored by the SOS that made various changes to state laws related to the confirmation of voters' residence addresses. Among other changes, AB 504 eliminated the ARC process described above in an effort to bring state law into conformity with a United States Supreme Court ruling from the prior year.

AB 504 additionally provided that if a voter verifies their registration record through the SOS's My Voter Status website, that verification would serve as a confirmation of the voter's residency for the purposes of pre-election residency confirmation processes and voter list maintenance procedures. At the time AB 504 was enacted, however, the VoteCal system did not have the ability to notify the relevant county elections official when a voter confirmed their registration record on the SOS's My Voter Status website. Accordingly, AB 504 enacted two versions of Section 2226 of the Elections Code, which contains rules for voter list maintenance. One version of Section 2226 went into effect on January 1, 2020, and the second version specified that it would go into effect only after the SOS certified that necessary changes were made to VoteCal such that the relevant county elections official would be notified when a voter confirmed their registration record on the SOS's My Voter Status website. According to information from the SOS, those changes were made to VoteCal in 2020. As a result, the first version of Section 2226 of the Elections Code is no longer operative, and the second version of that code section is in effect.

This bill repeals the inoperative version of Section 2226 of the Elections Code.

**REGISTERED SUPPORT / OPPOSITION**:

**Support**

None on file.

**Opposition**

None on file.

**Analysis Prepared by**:  Ethan Jones / ELECTIONS / (916) 319-2094

Docusign Envelope ID: 462616FF-9FD6-4A32-A990-025BFCA13385
Case 2:25-cv-10616-JLS-RES    Document 16-6    Filed 11/07/25    Page 10 of 33    Page
ID #:290

AB 604
Page 1

**(Without Reference to File)**

CONCURRENCE IN SENATE AMENDMENTS
AB 604 (Aguiar-Curry and Gonzalez)
As Amended  August 18, 2025
2/3 vote. Urgency

## SUMMARY

Specifies the boundaries for California's congressional districts, to take effect only if the voters
approve ACA 8 (Rivas and McGuire) of the current legislative session, and if another state
voluntary engages in mid-decade congressional redistricting, as specified.

**Senate Amendments**
Delete the Assembly-approved version of the bill, and instead:

1)  Add legal descriptions of the boundaries of 52 congressional districts.

2)  Provide that the district boundaries in this bill become operative only if ACA 8 (Rivas and
    McGuire) is approved by the voters, takes effect, and becomes operative because another
    state voluntarily puts a new congressional map into effect.

3)  Provide that if any ambiguity or dispute arises regarding the location of a boundary line for
    the districts contained in this bill, the Secretary of State (SOS) and the elections official of
    each county shall rely on detailed maps posted by the Assembly Elections Committee and the
    Senate Committee on Elections and Constitutional Amendments of the congressional districts
    boundaries proposed by this bill.

4)  Sunset the provisions of this bill once a new congressional map is certified by the Citizens
    Redistricting Commission (CRC) pursuant to the California Constitution.

5)  Add a severability clause, and add an urgency clause, allowing this bill to take effect
    immediately upon enactment.

## COMMENTS

"Redistricting" is the process by which the boundaries of districts of a governmental body are
adjusted. Redistricting generally occurs at the beginning of each decade following the decennial
federal census, when new district lines are adopted based on the census data so that the
populations of each district of a governmental body are roughly equal.

The California Legislature last redrew the boundary lines of the congressional, State Senatorial,
Assembly, and Board of Equalization (BOE) districts in 2001 based on the results of the 2000
census. Those district lines were finalized and approved in September 2001.
In 2008, California voters approved Proposition 11, which created the CRC, and gave it the
responsibility for drawing district lines for the state Senate, Assembly, and the BOE. It also
changed the criteria used when drawing those lines. In 2010, voters approved Proposition 20,
which expanded the CRC's duties to include drawing California's congressional districts, and
made additional changes to the procedures and criteria to be used by the CRC. The passage of
Propositions 11 and 20 meant that the California Legislature did not play a direct role in adopting

Docusign Envelope ID: 462616FF-9FD6-4A32-A990-025BFCA13385

district boundaries for congressional, legislative, and BOE districts following the 2010 and 2020 federal censuses.

Under current law, the districts drawn by the CRC after the 2020 census are scheduled to remain in place until the CRC adopts new maps following the 2030 census. Those new districts would take effect for regularly-scheduled elections in 2032 and beyond.

However, if ACA 8 (Rivas and McGuire) of the current legislative session is approved by voters and becomes operative because another state voluntary engages in mid-decade congressional redistricting, the congressional district boundaries in this bill could be used for congressional elections in California as soon as the 2026 statewide elections.

More detailed information about the congressional districts proposed by this bill, including demographic details for each of the 52 proposed districts, an interactive map of the proposed district boundaries, and downloadable computer files (shapefiles and a block equivalency file) with geographic details about the proposed districts are available on the Assembly Elections Committee's website at https://aelc.assembly.ca.gov/proposed-congressional-map.

This bill contains a provision that specifies that if an ambiguity or dispute arises regarding the location of a boundary line in this bill, the SOS and county elections officials may rely on detailed maps posted by the Assembly Elections Committee and the Senate Elections and Constitutional Amendments Committee of the congressional districts contained in this bill to resolve that ambiguity or dispute. This language is similar to language that was included in legislation (AB 632 (Cedillo), Chapter 348, Statutes of 2001 and SB 802 (Elections and Reapportionment Committee), Chapter 349, Statutes of 2001) when the California Legislature last redrew district boundary lines in 2001. As noted above, this committee's website already includes detailed information about the proposed districts, including an interactive map of the district boundaries.

**According to the Author**
"AB 604 will protect Californians' interests in the national democratic process by presenting the voters with a temporary congressional district map to use if Texas or other states decide to conduct mid-decade, partisan gerrymandering of their congressional district maps. The temporary congressional district boundaries laid out in AB 604 follow the principles that California voters value most in establishing legislative districts. The proposed map maintains the geographic integrity of even more cities than the current map adopted by the Citizens Redistricting Commission. Importantly, the temporary map in AB 604 will also ensure that communities of interest remain intact — a key principle of the constitutional amendment establishing the Citizens Redistricting Commission — to exercise their collective voice and vote to elect officials who truly represent them. AB 604 does all of this without diluting or favoring the voting power of any one voter over another. And, unlike any other congressional maps in use across the country today, the district map in AB 604 will go directly to California voters for their approval. AB 604 not only appropriately responds to the mid-cycle redistricting attempts by President Trump and Republicans in Texas and other states, but also adheres to redistricting principles that Californians hold dear — from protecting the many types of communities of interest in our state, to not favoring incumbents, to maintaining the geographic integrity of neighborhoods. The temporary congressional district lines proposed in AB 604 provide an effective response to the partisan gerrymander attempted by Texas and other states without eroding fair representation for all California voters and communities."

## Arguments in Support

In support of this bill, Planned Parenthood Affiliates of California writes, "At President Trump's urging, Texas Republicans plan to redraw their Congressional district map in an unprecedented attempt to "rig" the election in their favor before voting even begins. This dangerous election gaming puts politics over people and California must fight back. This is California's only opportunity to "check" the Trump administration's abuses of power to restrict civil rights and attack individual freedoms. AB 604, proposes draft California maps that respond to Texas' action in a transparent, time-limited manner that voters must approve."

## Arguments in Opposition

In opposition to this bill, Alliance San Diego writes, "AB 604 is the vehicle for the legislature to approve new maps submitted by a partisan political action committee, which is problematic. The legislative timeline leaves no room for meaningful public input, and the bill does not include maps, but rather hundreds of pages of codes for census blocks, which are meaningless to the average member of the public. Given the manner in which redistricting bills are being presented to the public — as already decided — we are also concerned about violations of open meeting laws. The business of the public should be conducted in public, but that is not what appears to be happening right now."

## FISCAL COMMENTS

According to the Senate Appropriations Committee, the SOS would incur administrative costs to the extent that specified ambiguities or disputes related to boundary lines occur. Workload to SOS would be driven by 1) the number of such ambiguities/disputes, and 2) their complexity and related resources needed to achieve resolution. Because both of these factors are unknown, the costs to SOS resulting from this bill cannot be determined. (General Fund).

## VOTES:

**ASM ELECTIONS:  Vote not relevant**
YES:

**ASSEMBLY FLOOR:  Vote not relevant**
YES:
NO:
ABS, ABST OR NV:

## UPDATED

VERSION: August 18, 2025

CONSULTANT:  Ethan Jones / ELECTIONS / (916) 319-2094                FN: 0001179

# Redistricting Bill Package (AB 604)
# Constitutional Issues
# Senate Floor Talking Points (8-21-25)

Mr. (Madam) President, Ladies and Gentlemen of the Senate:

- I rise with grave concerns.

- AB 604 was drafted without the Constitutional safeguards intended to promote fair and representative district maps.

- This mid-cycle redistricting plan undermines the state's constitution by seeking a voter-approved amendment that would temporarily waive key provisions of the California State Constitution's Article 21, allowing politicians to redraw lines for partisan gain rather than adhering to established democratic principles.

- First, the plan ignores the Constitutional mandate that redistricting occur only "in the year following the year in which the national census is taken under the direction of Congress, **at the beginning of each decade**."

- By pushing for changes mid-decade – outside the post-census window – this proposal disrupts the every-ten-year rhythm that's designed to ensure districts reflect accurate, updated population data.

- This could open the door to arbitrary manipulations whenever political winds shift.

- Second, it waives the rigorous criteria outlined in the state Constitution that prioritizes geographical and social considerations to promote fairness.

- These include requiring districts to be geographically contiguous (criterion 3), respecting the integrity of cities, counties, neighborhoods, and "communities of interest" by minimizing their division (criterion 4), and ensuring compactness where practicable (criterion 5).

- The Legislature's secretive and rushed map-drawing process discards these standards, potentially fracturing cohesive communities and creating convoluted districts that prioritize electoral outcomes over logical boundaries.

- Finally, the plan flouts the constitution's explicit prohibition against partisan gerrymandering, which states that districts "shall not be drawn to favor or discriminate against an incumbent, political candidate, or political party."

- By suspending the Citizens Redistricting Commission and empowering this Legislature to redraw maps, this legislation invites blatant favoritism, eroding the impartiality voters enshrined in the Constitution to prevent self-serving power grabs.

- For these reasons, I urge your NO vote.

# SENATE COMMITTEE ON APPROPRIATIONS
## Senator Anna Caballero, Chair
## 2025 - 2026  Regular  Session

### AB 604 (Aguiar-Curry) - Redistricting:  congressional districts

| | |
|---|---|
| **Version:** August 18, 2025 | **Policy Vote:** E. & C.A. 4 - 1 |
| **Urgency:** Yes | **Mandate:** No |
| **Hearing Date:** August 20, 2025 | **Consultant:** Robert Ingenito |

**Bill Summary:** AB 604 would specify the elements that define the congressional districts that would be adopted only if (1) ACA 8 of the 2025–26 Regular Session is approved by the voters and takes effect, and (2) specified constitutional provisions become operable.

**Fiscal Impact:**  The Secretary of State (SOS) would incur administrative costs to the extent that specified ambiguities or disputes related to boundary lines occur. Workload to SOS would be driven by (1) the number of such ambiguities/disputes, and (2) their complexity and related resources needed to achieve resolution. Because both of these factors are unknown, the costs to SOS resulting from this bill cannot be determined. (General Fund).

**Background:**  As summarized by the Senate Committee on Elections and Constitutional Amendments, the California Constitution requires that in the year following the year in which a national census is taken under the direction of Congress at the start of a decade, the Citizens Redistricting Commission (CRC) shall adjust the lines of congressional, State Senatorial, Assembly, and Board of Equalization districts, pursuant to specified standards and procedures.

ACA 8 places on the ballot a measure, that if passed by the voters, would amend the Constitution to adopt the maps for congressional districts to be used for every congressional election for a term of office commencing on or after the date ACA 8 takes effect and prior to the operative date of new congressional boundary lines drawn by the CRC following the 2030 national census.

**Proposed Law:**  This bill, among other things, would do the following:

- Contain the legal descriptions of California congressional districts that would be adopted only if (1) ACA 8 of the 2025–26 Regular Session is approved by the voters and takes effect, and (2) specified constitutional provisions become operable.

- Specify that in the event this bill does not list, lists more than once, or only partially accounts for a census tract or census block and, as a result, an ambiguity or dispute arises regarding the location of a boundary line, SOS and the elections official of each county shall rely on the detailed maps prepared by the Assembly Elections Committee and the Senate Committee on Elections and Constitutional Amendments.

Docusign Envelope ID: 462616FF-9FD6-4A32-A990-025BFCA13385

- Remain in effect until CRC redistricts congressional districts following the 2030 national census.

**Related Legislation:**

- ACA 8 (Rivas and McGuire) would implement new congressional districts described in this bill, to take effect if and when Texas or another state redistricts its congressional seats, as specified. The measure is pending in the Assembly Appropriations Committee.

- SB 280 (Cervantes and Pellerin) would call a special election for November 4, 2025, require SOS to submit ACA 8 to the voters at that election as Proposition 50, and provide for the conduct of that election. The bill is pending in the Assembly Appropriations Committee.

- AB 632 (Cedillo, Chapter 348, Statutes of 2001) last adopted legal descriptions of congressional districts via legislative action.

-- END --

# SENATE COMMITTEE ON
# ELECTIONS AND CONSTITUTIONAL AMENDMENTS
## Senator Sabrina Cervantes, Chair
## 2025 - 2026 Regular

| | | | |
|---|---|---|---|
| **Bill No:** | AB 604 | **Hearing Date:** | 8/19/25 |
| **Author:** | Aguiar-Curry | | |
| **Version:** | 8/18/25 | | |
| **Urgency:** | Yes | **Fiscal:** | Yes |
| **Consultant:** | Carrie Cornwell | | |

**Subject:** Redistricting: congressional districts

## DIGEST

This bill contains the legal descriptions of California congressional districts that would be adopted pursuant to ACA 8 (Rivas and McGuire).

## ANALYSIS

Existing law contained in Article XXI of the California Constitution requires that in the year following the year in which a national census is taken under the direction of Congress at the start of a decade, the Citizens Redistricting Commission (CRC) shall adjust the lines of congressional, State Senatorial, Assembly, and Board of Equalization districts, pursuant to specified standards and procedures.

ACA 8 places on the ballot a measure, that if passed by the people, would amend the constitution to adopt the maps for congressional districts to be used for every congressional election for a term of office commencing on or after the date ACA 8 takes effect and prior to the operative date of new congressional boundary lines drawn by the CRC following the 2030 national census.

This bill:

1) Contains the legal descriptions of California congressional districts that would be adopted pursuant to ACA 8.

2) Specifies that in the event this bill does not list, lists more than once, or only partially accounts for a census tract or census block and, as a result, an ambiguity or dispute arises regarding the location of a boundary line, the Secretary of State and the elections official of each county shall rely on the detailed maps posted to the websites of the Legislature's two Elections Committees.

3) Remains in effect only until the CRC redistricts congressional districts following the 2030 national census.

4) Makes its provisions severable.

5) Is an urgency measure.

Docusign Envelope ID: 462616FF-9FD6-4A32-A990-025BFCA13385

## **COMMENTS**

1) <u>Author's Statement.</u>  This bill will protect Californians' interests in the national democratic process by presenting the voters with a temporary congressional district map to use if Texas or other states decide to conduct mid-decade, partisan gerrymandering of their congressional district maps.

   The temporary congressional district boundaries laid out in this bill follow the principles that California voters value most in establishing legislative districts.  The proposed map maintains the geographic integrity of even more cities than the current map adopted by the Citizens Redistricting Commission.  Importantly, the temporary map in this bill will also ensure that communities of interest remain intact — a key principle of the constitutional amendment establishing the Citizens Redistricting Commission — to exercise their collective voice and vote to elect officials who truly represent them.  This bill does all of this without diluting or favoring the voting power of any one voter over another. And, unlike any other congressional maps in use across the country today, the district map in this bill will go directly to California voters for their approval.

   This bill not only appropriately responds to the mid-cycle redistricting attempts by President Trump and Republicans in Texas and other states, but also adheres to redistricting principles that Californians hold dear — from protecting the many types of communities of interest in our state, to maintaining the geographic integrity of neighborhoods. The temporary congressional district lines proposed in AB 604 provide an effective response to the partisan gerrymander attempted by Texas and other states without eroding fair representation for all California voters and communities.

2) <u>Support and Opposition.</u>  Communications of support and opposition received relate to mid-decade redistricting in general, and not to a specific measure within this legislative package.  Supporters in general assert that this legislation is a needed response to the actions others states, specifically Texas, are taking at the urging of President Trump.  They also point out that this legislation asks the voters of the state to decide on whether to approve new congressional districts, rather than politicians making the decision.  Supporters further note that the legislation reaffirms California's support of independent redistricting commissions both here and nationwide.

   Opponents' concerns center on the financial burden of the special election, the short timeframe for public comment on this legislative package, and that California's congressional delegation already includes relatively few Republican members.  The League of Women Voters of California (LWV) notes that it stands "entirely apart from political parties on mid-cycle redistricting and squarely in the fight against President Trump's authoritarian and dangerous policies that threaten the civil rights and liberties of all Americans."  The LWV here and in other states, however, opposes all attempts to gerrymander congressional lines on a partisan basis.

**AB 604 (Aguiar-Curry)**                                          Page **3** of **4**

## RELATED/PRIOR LEGISLATION

ACA 8 (Rivas and Cervantes) proposes a constitutional amendment that would, if approved by the voters, implement new congressional districts described in this bill, which would only take effect if and when Texas or another state redistricts its congressional seats, as specified.

SB 280 (Cervantes and Pellerin) calls a special election for November 4, 2025, requires the Secretary of State to submit ACA 8 to the voters at that election as Proposition 50, and provides for the conduct of that election.

AB 632 (Cedillo), Chapter 348, Statutes of 2001, last adopted legal descriptions of congressional districts via legislative action.

## POSITIONS

Please see comment #2 for more details about support and opposition.

**Support:**    AAPI Equity Alliance
AFSCME California
Alliance for a Better Community
Altadena Chamber of Commerce
Arab Resource & Organizing Center Action
Asian American Drug Abuse Program
Battleground California
CA Church IMPACT
CAUSE Action Fund
California Donor Table
California Federation of Labor Unions, AFL-CIO
California Professional Firefighters
California Teachers Association
Central Valley Immigrant Integration Collaborative
Climate Action Campaign
Democracy Strategy Partners
Democratic Party of Orange County
Democratic Party of San Fernando Valley
Indivisible California: StateStrong (CASS)
Little Manila Rising
Los Angeles County Young Democrats
Outdoor Outreach
Planned Parenthood Affiliates of California
Reproductive Freedom for All California
San Francisco Democratic Party
SEIU California
TruEvolution
UDW/AFSCME Local 3930
United Way Santa Cruz County
The Unity Council
Voices for Progress
WDN Action

**AB 604 (Aguiar-Curry)**                                              Page **4** of **4**

        Women's March Foundation
        Thousands of individuals

**Oppose:**    California Business Roundtable
        California Consumer Advocates for Affordability and Safety
        California Hispanic Chamber of Commerce
        California Manufacturers and Technology Association
        Govern for California
        Greater San Fernando Valley Chamber of Commerce
        Independent Voter Education
        Independent Voter Project
        NFIB
        Protect the Voters FIRST Act
        Simi Valley Chamber of Commerce
        The Two Hundred for Homeownership
        United Latinos Action
        Unity Party of California
        Thousands of individuals

**-- END --**

**SENATE RULES COMMITTEE**                                        AB 604
Office of Senate Floor Analyses
(916) 651-1520   Fax: (916) 327-4478

---

## THIRD READING

---

| | |
|---|---|
| Bill No: | AB 604 |
| Author: | Aguiar-Curry (D) and Gonzalez (D) |
| Amended: | 8/18/25 in Senate |
| Vote: | 27 - Urgency |

---

**ASSEMBLY ELECTIONS & C.A. COMMITTEE: 7-0, 3/26/25**
AYES: Pellerin, Macedo, Bennett, Berman, Solache, Stefani, Tangipa

**ASSEMBLY FLOOR: 75-1, 4/1/25 –** See last page for vote.

**SENATE ELECTIONS & C.A. COMMITTEE:  4-1, 8/19/25**
AYES:  Cervantes, Allen, Limón, Umberg
NOES:  Choi

**SENATE APPROPRIATIONS: 5-2, 8/20/25**
AYES: Caballero, Cabaldon, Grayson, Richardson, Wahab
NOES: Seyarto, Dahle

---

**SUBJECT:**  Redistricting:  congressional districts

**SOURCE:**   Author

---

**DIGEST:**  This bill contains the legal descriptions of California congressional
districts that would be adopted pursuant to ACA 8 (Rivas and McGuire).

**ANALYSIS:**

Existing law contained in Article XXI of the California Constitution requires that
in the year following the year in which a national census is taken under the
direction of Congress at the start of a decade, the Citizens Redistricting
Commission (CRC) shall adjust the lines of congressional, State Senatorial,
Assembly, and Board of Equalization districts, pursuant to specified standards and
procedures.

ACA 8 places on the ballot a measure, that if passed by the people, would amend the constitution to adopt the maps for congressional districts to be used for every congressional election for a term of office commencing on or after the date ACA 8 takes effect and prior to the operative date of new congressional boundary lines drawn by the CRC following the 2030 national census.

This bill:

1) Contains the legal descriptions of California congressional districts that would be adopted pursuant to ACA 8.

2) Specifies that in the event this bill does not list, lists more than once, or only partially accounts for a census tract or census block and, as a result, an ambiguity or dispute arises regarding the location of a boundary line, the Secretary of State and the elections official of each county shall rely on the detailed maps posted to the websites of the Legislature's two Elections Committees.

3) Remains in effect only until the CRC redistricts congressional districts following the 2030 national census.

4) Makes its provisions severable.

5) Is an urgency measure.

**Comments**

1) *Author's Statement.*  This bill will protect Californians' interests in the national democratic process by presenting the voters with a temporary congressional district map to use if Texas or other states decide to conduct mid-decade, partisan gerrymandering of their congressional district maps.

The temporary congressional district boundaries laid out in this bill follow the principles that California voters value most in establishing legislative districts. The proposed map maintains the geographic integrity of even more cities than the current map adopted by the Citizens Redistricting Commission.  Importantly, the temporary map in this bill will also ensure that communities of interest remain intact — a key principle of the constitutional amendment establishing the Citizens Redistricting Commission — to exercise their collective voice and vote to elect officials who truly represent them.  This bill does all of this without diluting or favoring the voting power of any one voter over another. And, unlike any other congressional maps in use across the

country today, the district map in this bill will go directly to California voters for their approval.

This bill not only appropriately responds to the mid-cycle redistricting attempts by President Trump and Republicans in Texas and other states, but also adheres to redistricting principles that Californians hold dear — from protecting the many types of communities of interest in our state, to maintaining the geographic integrity of neighborhoods. The temporary congressional district lines proposed in AB 604 provide an effective response to the partisan gerrymander attempted by Texas and other states without eroding fair representation for all California voters and communities.

2) *Support and Opposition.* Communications of support and opposition received relate to mid-decade redistricting in general, and not to a specific measure within this legislative package. Supporters in general assert that this legislation is a needed response to the actions others states, specifically Texas, are taking at the urging of President Trump. They also point out that this legislation asks the voters of the state to decide on whether to approve new congressional districts, rather than politicians making the decision. Supporters further note that the legislation reaffirms California's support of independent redistricting commissions both here and nationwide.

Opponents' concerns center on the financial burden of the special election, the short timeframe for public comment on this legislative package, and that California's congressional delegation already includes relatively few Republican members. The League of Women Voters of California (LWV) notes that it stands "entirely apart from political parties on mid-cycle redistricting and squarely in the fight against President Trump's authoritarian and dangerous policies that threaten the civil rights and liberties of all Americans." The LWV here and in other states, however, opposes all attempts to gerrymander congressional lines on a partisan basis.

**Related/Prior Legislation**

ACA 8 (Rivas and Cervantes, 2025) proposes a constitutional amendment that would, if approved by the voters, implement new congressional districts described in this bill, which would only take effect if and when Texas or another state redistricts its congressional seats, as specified.

SB 280 (Cervantes and Pellerin, 2025) calls a special election for November 4, 2025, requires the Secretary of State to submit ACA 8 to the voters at that election as Proposition 50, and provides for the conduct of that election.

AB 632 (Cedillo, Chapter 348, Statutes of 2001) last adopted legal descriptions of congressional districts via legislative action.

**FISCAL EFFECT:**  Appropriation:  No    Fiscal Com.:   Yes    Local:  No

**SUPPORT:**  (Verified  8/21/25)

*Please see comment #2 for more details about support and opposition.*

Eleni Kounalakis, California Lieutenant Governor
Paloma Aguirre, San Diego County Supervisor, District 1
Terra Lawson-Remer, San Diego County Supervisor, District 3
AAPI Equity Alliance
AFSCME California
Alliance for a Better Community
Altadena Chamber of Commerce
Arab Resource & Organizing Center Action
Asian American Drug Abuse Program
Battleground California
Black Women Organizing for Political Action
Borderlands for Equity
CA Church IMPACT
CAUSE Action Fund
California Donor Table
California Federation of Labor Unions, AFL-CIO
California Nurses Association
California Professional Firefighters
California Teachers Association
Central Valley Immigrant Integration Collaborative
Child Care Providers United
Climate Action Campaign
Compass Family Services
Democracy Strategy Partners
Democratic Party of Orange County
Democratic Party of San Fernando Valley
El Concilio California
HB Huddle
Imperial Valley Equity and Justice
Indivisible California: StateStrong
Indivisible El Dorado
Indivisible Stanislaus

Docusign Envelope ID: 462616FF-8FD6-4A32-A990-025BFCA12385
Case 2:25-cv-10616-JLS-RES    Document 16-6    Filed 11/07/25    Page 25 of 33    Page
ID #:305

AB 604
Page 5

Inland Empire United
Little Manila Rising
Los Angeles County Young Democrats
Outdoor Outreach
Planned Parenthood Affiliates of California
Reproductive Freedom for All California
San Francisco Democratic Party
Search to Involve Pilipino Americans
SEIU California
South Asian Network
Starting Over Strong
Teamsters California
TruEvolution
UDW/AFSCME Local 3930
United Food and Commercial Workers Western States Council
United Way Santa Cruz County
The Unity Council
Voices for Progress
WDN Action
Women's March Foundation
Thousands of individuals

**OPPOSITION:** (Verified  8/21/25)

*Please see comment #2 for more details about support and opposition.*

Alliance San Diego
California Business Roundtable
California Common Cause
California Consumer Advocates for Affordability and Safety
California Hispanic Chamber of Commerce
California Manufacturers and Technology Association
CalTax
Greater High Desert Chamber of Commerce
Govern for California
Greater San Fernando Valley Chamber of Commerce
Independent Voter Education
Independent Voter Project
NFIB
Protect the Voters FIRST Act
Simi Valley Chamber of Commerce

Docusign Envelope ID: 462616FF-8FD6-4A32-A990-025BFCA12385

The Two Hundred for Homeownership
United Latinos Action
Unity Party of California
Thousands of individuals

ASSEMBLY FLOOR:  75-1, 4/1/25
AYES:  Addis, Aguiar-Curry, Ahrens, Alanis, Arambula, Ávila Farías, Bains,
   Bauer-Kahan, Berman, Boerner, Bonta, Bryan, Calderon, Caloza, Carrillo,
   Castillo, Chen, Connolly, Dixon, Elhawary, Ellis, Essayli, Flora, Fong, Gabriel,
   Gallagher, Garcia, Gipson, Jeff Gonzalez, Mark González, Hadwick, Haney,
   Harabedian, Hart, Hoover, Irwin, Jackson, Kalra, Krell, Lackey, Lee,
   Lowenthal, Macedo, McKinnor, Muratsuchi, Nguyen, Ortega, Pacheco, Papan,
   Patel, Patterson, Pellerin, Petrie-Norris, Quirk-Silva, Ramos, Ransom, Celeste
   Rodriguez, Michelle Rodriguez, Rogers, Blanca Rubio, Sanchez, Schiavo,
   Schultz, Sharp-Collins, Solache, Soria, Stefani, Ta, Tangipa, Valencia, Wallis,
   Ward, Wilson, Zbur, Rivas
NOES:  DeMaio
NO VOTE RECORDED:  Alvarez, Bennett, Davies, Wicks

Prepared by:  Carrie Cornwell / E. & C.A. / (916) 651-4106
8/21/25 9:52:28

**\*\*\*\* END \*\*\*\***

Elections and Constitutional
Amendments

AB 604 (Aguiar-Curry)
Oppose

**Vote requirement: 27 (Urgency)**
Version Date: 08/18/2025

## Summary

Replaces for the next 3 elections cycles (2026, 2028, 2030), as long as the voters approve ACA 8, the existing congressional district map established in 2021 by the non-partisan California Citizens Redistricting Commission (CRC) with a highly partisan gerrymandered congressional district map drawn to eliminate 5 Republican congressional seats while making numerous Democrat seats far less competitive (see: https://selc.senate.ca.gov/proposed-congressional-map)

*Note: This measure is part of a 3 bill package intended to implement the Governor, Legislative Democrats and Congressional Democrats' unfair, unjustified, unconstitutional, highly-partisan, power grab intended to overturn the will of the people and eliminate up to 5 Republican congressional seats while making several existing Democrat even less competitive.*

*Other bills in the package include: 1) ACA 8 (Rivas and McGuire), which would ask the voters to approve Governor Newsom, Legislative Democrats and Congressional Democrats' plan to set aside the existing congressional district map established in 2021 by the non-partisan California Citizens Redistricting Commission (CRC) in favor of a highly partisan gerrymandered congressional district map drawn to eliminate 5 Republican congressional seats while making numerous Democrat seats far less competitive.; and, 2) SB 280 (Cervantes), which would call the special election for November 4,2025 and place the ACA 8 as Proposition 50 before the voters while also waiving numerous Election Code requirements relative to elections administrative timelines and partially funding the special election.*

## Vote History

**Senate Appropriations Committee: 5-2 (08/20/2025)**
(NO: Dahle, Seyarto)
**Senate Elections and Constitutional Amendments: 4-1 (08/19/2025)**
(NO: Choi)
**Senate Appropriations: 5-2 (08/20/2025)**
(NO: Seyarto, Dahle)

## Support & Opposition Received

<u>Support</u>: AFSCME California; Battleground California; Borderlands for Equity; California Federation of Labor Unions, AFL-CIO; California Nurses Association; California Professional Firefighters; California Teachers Association; El Concilio California; Imperial Valley Equity & Justice Coalition; Lieutenant Governor Eleni Kounalakis; Planned Parenthood Affiliates of California; San Diego County Board of Supervisors Chair, Terra Lawson-remer; SEIU California; South Asian Network; Teamsters California; UDW/AFSCME Local 3930; UFCW - Western States Council.

<u>Opposition</u>: Alliance San Diego; California Business Roundtable, CalTax.

---

**<u>Fiscal Effect</u>**

**VERY MAJOR STATE COSTS**

This bill is one of three bills included in the Governor's and Democrats' gerrymandering redistricting package. Considering all three bills together, the package would result in state costs in the range of $240 million General Fund or more. Below is the fiscal estimate for each of three bills included in the package.

**AB 604: Requires Use of New Maps.**Unknown, but potentially significant state costs within the Secretary of State for administrative activities. The bill could also result in unknown, but potentially major state reimbursable mandate costs if the Commission on State Mandates determines that the bill requires a higher level of service from local election officials.

**SB 280: Implements the Special Election.**Appropriates unspecified amounts, to be determined by the Director of Finance (i.e., the Newsom Administration), to the Secretary of State and to the Controller to fund counties for the election costs. If the election follows the typical course, staff estimates the bill would result in very major state costs of more than $30 million for the Secretary of State to administer the election. Costs for local election officials to administer are likely to reach $235 million or higher, including staffing, outreach, equipment, vote center management, and ballot costs.

This estimate is based on the costs of the 2021 gubernatorial special election, which cost $200 million, including $174 million for county administration and $26 million for the Secretary of State. Costs for a new special election are likely to be higher due to nearly 16 percent general California inflation since 2021, an increase in postage costs, and an increase in the number of registered voters.

**ACA 8: Amends the State Constitution.**The Secretary of State would incur significant state costs in the range of $738,000 to $984,000 General Fund for printing and mailing costs to place the measure on the ballot in a statewide election. The SOS indicates the printing and mailing costs associated with placing a measure on the statewide ballot are approximately $123,000 per page, depending on the length of the

> ballot.
>
> Fiscal Consultant: *Chantele Denny, Kirk Feely*

## Arguments in Support

Help Undermine Trump Presidency: The Governor, Legislative Democrats and Congressional Democrats all claim publicly that this package of bills is intended to counter a President Trump led effort to protect the House of Representative Republican Majority in 2026. They claim they are just "fighting fire with fire." However, by "fighting fire with fire" what they are really doing is attempting to improve the chances for Democrats to take the House of Representatives Majority in 2026 from the Republicans. This would enable them to stall President Trump's agenda by paralyzing his administration with investigations and impeachments much like House Democrats did in his first administration. While this may be bad for Californians and the rest of the nation, the Governor, Legislative Democrats and Congressional Democrats hate President Trump and will stop at nothing to "get Trump." ACA 8, if approved by the voters, would be a conduit for this, which for them would be a good thing.

## Arguments in Opposition

Disenfranchises Republican Voters with A Hyper-Partisan Gerrymandered Map Intended to Eliminate 5 California Republican Congressional Districts: The Congressional map in AB 604 is an unfair, unjustified, unconstitutional, highly-partisan, power grab intended to overturn the will of all of the people and eliminate up to 5 Republican congressional seats while making several existing Democrat even less competitive. If ACA 8 is approved by the voters and the map in AB 604 is adopted, congressional districts (CDs) CD 1, (Congressman LaMalfa), CD 3 (Congressman Kiley), CD 22 (Congressman Valadao), CD 41 (Congressman Calvert) and CD 48 (Congressman Issa) will all become Democrat districts. This will potentially drop California's current Republican Congressional Delegation from 9 to 4 out of 52 seats. (see: https://selc.senate.ca.gov/proposed-congressional-map)

Democrats could potentially hold 48 of California's 52 congressional seats (92%), but won only 58% of the 2024 presidential vote (Harris 58%, Trump 38%). Further, the most recent statewide voter registration numbers indicate that Republicans represent 25% of the state's total registered voters, but under the Governor's redistricting plan Republicans would only be represented by 7% of the California congressional delegation.

Finally, 15.4% of registered Republican voters in California reside in the five congressional districts targeted for flipping to Democratic control under the proposed maps. These districts have been redrawn to disenfranchise Republican voters by diluting their electoral influence and reducing GOP representation.

<u>Drafted without Constitutional Safeguards Intended to Promote Fair and Representative
District Maps</u>: The Democrats' mid-cycle redistricting plan in California undermines the
state's constitution by seeking a voter-approved amendment that would temporarily
waive key provisions of Article XXI, allowing politicians to redraw lines for partisan gain
rather than adhering to established democratic principles.

First, the plan ignores Article XXI, Section 1's mandate that redistricting occur only "in
the year following the year in which the national census is taken under the direction of
Congress at the beginning of each decade." By pushing for changes mid-decade—
outside the post-census window—this proposal disrupts the decennial rhythm designed
to ensure districts reflect accurate, updated population data, opening the door to
arbitrary manipulations whenever political winds shift.

Second, it waives the rigorous criteria outlined in Article XXI, Section 2(d), which
prioritize geographical and social considerations to promote fairness. These include
requiring districts to be geographically contiguous (criterion 3), respecting the integrity of
cities, counties, neighborhoods, and "communities of interest" by minimizing their
division (criterion 4), and ensuring compactness where practicable (criterion 5). The
legislature's secretive, rushed map-drawing process discards these standards,
potentially fracturing cohesive communities and creating convoluted districts that
prioritize electoral outcomes over logical boundaries.

Finally, the plan flouts Article XXI, Section 2(e)'s explicit prohibition against partisan
gerrymandering, which states that districts "shall not be drawn to favor or discriminate
against an incumbent, political candidate, or political party." By suspending the
independent Citizens Redistricting Commission and empowering a Democrat-
dominated legislature to redraw maps explicitly to counter Republican gains elsewhere,
this scheme invites blatant favoritism, eroding the impartiality voters enshrined to
prevent self-serving power grabs.

According to Congressman Doug LaMalfa representing the 1st Congressional District,
one of the 5 districts gerrymandered under the Democrat redistricting plan, *"If you want
to know what's wrong with these maps – just take a look at them. How on earth does
Modoc County on the Nevada and Oregon Border have any common interest with Marin
County and the Golden Gate Bridge? Voters took this power from Sacramento for just
this reason. This is naked politics at its worst. This action by the state will set off a
series of retaliation in other states across the country with Florida, Missouri and Indiana
looking to push back against California. Mid-Decade redistricting is wrong, no matter
where it's being done. Defying the voters voice is wrong. We should be listening to
Californians who have said in multiple statewide elections that politicians shouldn't be
the ones doing the redistricting. California is already in a huge budget deficit, we don't
need to spend another $235 million or more to learn voters still hate the idea."*

<u>Drafted with Zero Transparency or Public Input:</u> The California Citizens Redistricting
Commission's process for establishing the current congressional maps after the 2020

census arguably exemplified transparency and public engagement, standing in stark contrast to the Democrats' secretive, rushed plan for mid-cycle redistricting in 2025.

The independent commission, created by voter-approved Propositions 11 (2008) and 20 (2010), conducted a months-long, open process with extensive public input. It held 196 public meetings, gathered 3,870 verbal comments, and collected 32,410 written submissions from Californians before finalizing the maps in December 2021. This ensured diverse stakeholder voices shaped fair districts, with deliberations publicly accessible and maps iteratively refined based on feedback.

In sharp contrast, Democrats' 2025 plan under Governor Gavin Newsom involves maps drafted behind closed doors by politicians, political consultants, and party insiders, with no initial public involvement or transparency in the drawing phase. Proposed maps were released on August 15, 2025, just days before anticipated legislative votes, providing only about five days for public notice and input on pre-decided districts—with no plans for modifications based on feedback. Democrat Legislators aim to approve these maps quickly, then place a constitutional amendment on a special November 4, 2025, ballot to temporarily suspend the commission and implement the changes for 2026-2030 elections. This "ram-through" process discards the commission's voter-mandated transparency in favor of partisan opacity, undermining public trust and the democratic safeguards Californians established to prevent such power grabs.


## Other Issues

<u>Just Few of Many Issues with the Dem Gerrymander:</u> Minutes after the Dem Congressional gerrymander was leaked, Matt Rexroad, a respected redistricting expert, tweeted the following (note the text in parentheses are musings of the consultant who drafted this analysis not Mr. Rexroad): 1) District 1 map included Marin with Modoc. (What do the two populations have in common? It is placing the State of Jefferson with wealthy Bay Area Leftist) It also doesn't touch the northern border of California (This appears to be a violation of Redistricting 101); 2) Newport is divided into two districts with the north part of the city being drawn into a congressional district with Long Beach. (Not a lot in common here); 3) Mission Viejo is divided into 3 separate congressional districts (Severely breaking up a community of interest); and 4) District 3 includes West Sacramento with Roseville (Two cities whose geography and population have little in common). The district also looks like a elephant head (This could show personal animosity and might be a big middle finger to Congressman Kiley and Republicans in general) (see: https://selc.senate.ca.gov/proposed-congressional-map).


## Digest

Replaces for the next 3 elections cycles (2026, 2028, 2030), as long as the voters approve ACA 8, the existing congressional district map established in 2021 by the non-partisan California Citizens Redistricting Commission (CRC) with a highly partisan

gerrymandered congressional district map drawn to eliminate 5 Republican
congressional seats while making numerous Democrat seats far less competitive (see:
https://selc.senate.ca.gov/proposed-congressional-map).

## Background

Existing law: California's existing redistricting law, enshrined in Article XXI of the state
Constitution, establishes the Citizens Redistricting Commission—a 14-member
independent body selected through a rigorous, nonpartisan process—to draw state
legislative and congressional districts **every decade** based on census data, **prioritizing
equal population, geographic contiguity, and respect for communities of interest
while prohibiting partisan favoritism**. Mid-decade changes are generally barred to
prevent abuse.

**Proposition 11 (2008):** Authored via voter initiative and backed by then-Gov. Arnold
Schwarzenegger, this measure created the Citizens Redistricting Commission to handle
state legislative districts, passing with 50.9% approval to end legislative
gerrymandering.

**Proposition 20 (2010):** Also a voter initiative supported by Schwarzenegger and reform
groups, it expanded the commission's authority to congressional districts, passing with
61.3% support to further insulate map-drawing from partisan influence.

2021 Congressional Maps: The current Congressional Redistricting Maps were
established by the California Citizens Redistricting Commission in 2021. Under this map
Republicans currently hold 9 of the 52 congressional seats spanning the state from
Northern California to Southern California. These district include CDs 1, 3, 5, 20, 22, 23,
40, 41, and 48

## Related Legislation

ACA 8 (Rivas and McGuire) This Constitutional Amendment would ask the voters to
approve Governor Newsom, Legislative Democrats and Congressional Democrats' plan
to set aside the existing congressional district map established in 2021 by the non-
partisan California Citizens Redistricting Commission (CRC) in favor of a highly partisan
gerrymandered congressional district map drawn to eliminate 5 Republican
congressional seats while making numerous Democrat seats far less competitive.
Currently pending in the Assembly Elections Committee.

SB 280 (Cervantes and Pellerin) calls a special election for November 4, 2025, requires
the Secretary of State to submit ACA 8 to the voters at that election as Proposition 50,
and provides for the conduct of that election. Currently pending in the Assembly
Elections Committee.

Senate Republican Policy Office/*Cory Botts*