1  MICHAEL A. COLUMBO (SBN: 271283)
   SHAWN COWLES (SBN: 1613826)
2  MARK P. MEUSER (SBN: 231335)
   **DHILLON LAW GROUP INC.**
3  4675 MacArthur Court, Suite 1410
   Newport Beach, CA 92660
4  Telephone: (415) 433-1700
   Fax: (415) 520-6593
5
6  *Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAVID TANGIPA,** *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> **GAVIN NEWSOM**, in his official capacity as the Governor of California, *et al.*; <br><br> Defendants. | CASE NO. 2:25-cv-10616 JLS (KESx) <br><br> **DECLARATION OF ASSEMBLYMEMBER DAVID TANGIPA (D-08) IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> Assigned to Hon. Josephine L. Staton <br><br> Action Filed: November 5, 2025 |



**DECLARATION OF ASSEMBLYMEMBER DAVID TANGIPA (D-08)**

I, David Tangipa, declare as follows:

1. I am over the age of 18, and a United States citizen. I know the following facts of my own personal knowledge, and if called upon as a witness, I could and would testify competently thereto.

2. I am a duly elected Member of the California State Assembly, representing Assembly District 08, which covers over 450,000 residents and over 250,000 registered voters in 7 counties: Calaveras, Fresno, Inyo, Madera, Mariposa, Mono, and Tuolumne.

3. I am the first legislator elected in California's history of Polynesian decent, the smallest and least represented minority group in the state and my district is a majority white district.

4. I serve on the Assembly Committee on Elections. I make this declaration of my own personal knowledge to describe what information was, and was not, provided to me when the Legislature considered measures placing what has been described as "Proposition 50" on the ballot.

5. I have personal knowledge of the facts stated herein and, if called, could and would testify competently to them.

6. This declaration concerns the Legislature's consideration and passage of three measures related to placing Proposition 50 on the November 4, 2025, ballot: ACA 8 (Rivas/McGuire), AB 604 (Aguiar-Curry/Gonzalez), and SB 280 (Cervantes) (collectively, the "Measures"). On information and belief, these Measures addressed congressional maps and procedures in ways that were justified publicly by references to the VRA and to so-called "VRA districts," including a proposed additional Latino VRA district.

7. I have learned, that when a State invokes the federal Voting Rights Act (VRA) as a reason to use race in drawing district lines, it must have district-specific evidence, before acting, showing that, absent the use of race, the State would likely face liability under Section 2. As a legislator, I therefore look for concrete analytical materials, not general assurances.

8. On Friday, August 15, 2025, the preliminary maps and press release regarding Proposition 50 was released to the public by the press online for public comment.

9. Sometime either late August 15, 2025, or early Saturday, August 16, 2025, I became aware of this release of information in a press release from social media. No official communication,



1

DECLARATION OF ASSEMBLYMEMBER DAVID TANGIPA (D-08)

analysis, or other documents were forwarded to me from leadership or legislative staff.

10. I took advantage of the remainder of the weekend to prepare for what was to come that week. I drafted committee questions, read the bills, and looked at the proposed map lines.

11. No additional information was given to Republican members of the Assembly more than what was released to the public at any point in the process to pass the Measures.

12. On Monday, August 18, 2025, at 2:30 PM, the Assembly Committee on Elections noticed a hearing for Tuesday, August 19, 2025, online. I received less than twenty-four hours' notice and no additional official communications regarding this meeting other than what was available to the public online.

13. During the Hearing ACA 8 and SB 280 were acted upon and AB 604 was noticed for informational discussion.

14. In the few hours before the Hearing and during the Hearing, I was unable to ascertain any basic information regarding who drew the maps, as the bill language falsely stated that members of the Assembly Elections Committee drew the lines, let alone information required by the VRA to determine if VRA districts were necessary.

15. As of the morning of the August 19 hearing, I had not been provided any of the district-by-district technical materials I would expect to see if the Legislature were relying on the VRA to justify race-conscious line-drawing of the original maps released on Friday August 15, 2025. Specifically, I did not receive: (a) any racially polarized voting (RPV) analysis; (b) any expert report (or draft) addressing the *Gingles* preconditions; (c) any functional performance analysis (including candidate-of-choice results, turnout differentials, or assessments using citizen voting-age population (CVAP)); (d) any compactness metrics for any proposed "VRA district"; or (e) any side-by-side race-neutral alternatives with an explanation of why those alternatives would not avoid a Section 2 problem.

16. On the morning of the Elections Committee, just minutes before the Committee gaveled in, I was informed by Caucus staff the map lines had been changed late the night before.

17. During the committee hearing, I was going through the new map while I was on the dais



2

**DECLARATION OF ASSEMBLYMEMBER DAVID TANGIPA (D-08)**

as my questions and preparation from the weekend were no longer relevant for the new lines.

18. For example, the City of Clovis was divided in different ways between the two map versions. Additionally, the new map did not keep as many communities whole.

19. During the committee, I asked basic process questions: who changed the lines, when those changes occurred, the nature and extent of the changes, and the reasons for them. I did not receive substantive answers.

20. In addition to the lack of substantive answers regarding the new lines, I did not receive any analysis or explanation of the lines or how the racial drawn VRA districts were determined.

21. During the committee hearing, there was no discussion regarding why VRA districts were necessary or why an additional VRA district for Latinos was warranted.

22. At the Hearing, I received no racially polarized voting study, no expert report, no functional analysis of minority electoral performance (including CVAP thresholds or turnout-adjusted metrics), and no materials asserting, much less substantiating, that any Latino VRA districts were necessary, nor an additional Latino VRA district was legally required.

23. During questioning, Members from both parties commented that the maps had been changed late the prior evening. The lack of knowledge of the late-night changes to the maps was apparent for both Republican and Democratic members of the committee during the hearing.

24. The Elections Committee Chairwoman was not aware the lines were changed, until during the Hearing itself, let alone made aware of any district-by-district analysis of the VRA districts lines or the justification for why they were drawn.

25. At one point, the Committee Chairwoman stated the maps had not been changed; a staff member then leaned over and advised the Chairwoman that the lines had in fact been changed the night before.

26. Many of my Democrat colleagues' comments and talking points during the hearing were no longer relevant to the new map due to the last-minute changes.

27. Based on these event and statements by my colleagues made on the record in the hearing, to my knowledge, no district-by-district VRA analysis or written justification of the new map lines was



3

DECLARATION OF ASSEMBLYMEMBER DAVID TANGIPA (D-08)

presented to members of any party at or before that hearing and voting on the map lines.

28. On August 20, 2025, the Assembly Appropriations Committee met briefly to hear the fiscal impacts of the Measures.

29. Again, there was no discussion of the analysis or background of how the map lines came to be.

30. On August 21, 2025, the Assembly considered the Measures on the floor. Before those votes, I again was not provided any district-specific VRA materials, no expert report, no RPV study, no election-performance simulations, no CVAP tables, and no analysis of alternatives. In any of the few materials provided to me, I did not see any statement identifying a particular district as legally required by Section 2, nor any explanation of how such a conclusion had been reached. To my knowledge, no member speaking in favor identified district-specific evidence of a VRA need.

31. To my knowledge, no such materials exist in the legislative process. To my knowledge, and after reasonable diligence on my part, I still have not seen district-specific RPV findings, expert submissions, or race-neutral alternatives that were available to members before their votes on the Measures. If such materials existed, they were not provided to me.

32. Throughout the entire process, no member of the Democratic Party spoke to Republican members regarding the process or what was happening. The information that my colleagues and I had was gathered primarily from press and public information. There were no communications from leadership, committee staff, no summaries of the bills, committee documents from testimony, where sufficient analysis was provided. Republican members of the Assembly Elections Committee did not even get the bill language or the basic committee analysis of the Measures until 2:32 PM the day before 10:30AM the next morning was the hearing.

33. No sort of district-specific evidence justifying race-based line drawing creating or maintaining "VRA districts," or adding a new Latino VRA district was ever considered or provided.

34. The only information I recall receiving in connection with the Measures were the online public notices of the hearings and Caucus staff communication indicating that the map lines had been changed without any accompanying explanation or evidentiary support the morning of the Election



4

DECLARATION OF ASSEMBLYMEMBER DAVID TANGIPA (D-08)

Committee hearing.

35. If any race-based analyses, expert reports, map simulations, alternative race-neutral plans, or other evidentiary submissions existed in support of these Measures, they were not provided to me before my participation in the August 19, 2025, committee proceedings or the August 21, 2025, floor votes.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed on November 7, 2025, at \_\_\_\_4:17\_\_\_\_, California.

*David Tangipa*
_____
David Tangipa
Member, California State Assembly (D-08)



---

5
**DECLARATION OF ASSEMBLYMEMBER DAVID TANGIPA (D-08)**