Lalitha D. Madduri (CA Bar No. 301236)
lmadduri@elias.law
Christopher D. Dodge* (DC Bar No. 90011587)
cdodge@elias.law
Max Accardi* (DC Bar No. 90021259)
maccardi@elias.law
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4652
F: (202) 968-4498

Abha Khanna* (WA Bar No. 42612)
akhanna@elias.law
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180

Omar Qureshi (CA Bar No. 323493)
omar@qureshi.law
Max Schoening (CA Bar No. 324643)
max@qureshi.law
**QURESHI LAW PC**
700 Flower Street, Suite 1000
Los Angeles, CA 90017
T: (213) 786-3478
F: (213) 277-8989

*Counsel for Proposed Intervenor-Defendant DCCC*

*\* Pro hac vice application forthcoming*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

DAVID TANGIPA; ERIC CHING; SAUL AYON; PETER HERNANDEZ; ROXANNE HOGE; JOEL GUITERREZ CAMPOS; SOLOMON VERDUZCO; PAUL RAMIREZ; JANE ORTIZ-WILSON; VERNON COSTA; RACHEL GUNTHER; DOUG BUCHANAN; SAYRS MORRIS; MIKE NETTER; CHRISTINA RAUGHTON; KRISTI HAYS; JAMES REID; MICHAEL TARDIF; ALEX GALICIA; and CALIFORNIA REPUBLICAN PARTY,

      Plaintiffs,

      v.

GAVIN NEWSOM, in his official capacity as the Governor of California; SHIRLEY WEBER, in her official capacity as California Secretary of State,

      Defendants.

Case No:  2:25-cv-10616

**DCCC'S NOTICE OF MOTION AND UNOPPOSED MOTION TO INTERVENE AS DEFENDANT; MEMORANDUM OF POINTS AND AUTHORITIES**

Hearing Date: November 14, 2025

Time: 10:30 a.m.

Courtroom: 8A

ii

## <u>NOTICE OF MOTION AND UNOPPOSED MOTION TO INTERVENE</u>

The Democratic Congressional Campaign Committee ("DCCC") respectfully requests that this Court grant it leave to intervene as a defendant in this case as a matter of right under Federal Rule of Civil Procedure 24(a)(2) or, alternatively, grant it leave to intervene on a permissive basis under Federal Rule of Civil Procedure 24(b). No party opposes this request.

In support of its Motion, DCCC submits and incorporates the below Memorandum of Points and Authorities, a declaration by Julie Merz on behalf of DCCC (Exhibit A), a Proposed Answer submitted pursuant to Rule 24(c) (Exhibit B), and a Proposed Order (Exhibit C).[1]

Pursuant to Local Rule 7-3, counsel for DCCC conferred by with counsel for the existing parties on November 7, 2025. Counsel for Plaintiffs stated that Plaintiffs take no position on the Motion. Counsel for Defendants stated that Defendants do not oppose the Motion.

Because the Motion is not opposed, DCCC respectfully submits that no hearing on the motion is necessary and requests that the Court grant the motion without any hearing. Alternatively, given the time-sensitive nature of this election-law case, DCCC respectfully requests that the Court set a hearing for this Motion (if necessary) as soon as practicable and no later than November 14, 2025.

---

[1] While DCCC submits a Proposed Answer as required by Rule 24(c), it reserves the right to file a Rule 12(b) motion in accordance with any schedule set by the Court or agreed to be the existing parties.

iii

1   Dated: November 10, 2025                    Respectfully submitted,

2                                               */s/ Lalitha D. Madduri*

3                                               Lalitha D. Madduri (CA Bar No. 301236)

4                                               Christopher D. Dodge* (DC Bar No. 90010127)

5                                               Max Accardi* (DC Bar No. 90021259)

6                                               ELIAS LAW GROUP LLP

7                                               250 Massachusetts Ave. NW, Suite 400
                                                Washington, DC 20001

8                                               T: (202) 968-4652
                                                F: (202) 968-4498

9                                               lmadduri@elias.law
                                                cdodge@elias.law

10                                              maccardi@elias.law

11

12                                              Abha Khanna* (WA Bar No. 42612)
                                                ELIAS LAW GROUP LLP 1700 Seventh

13                                              Avenue, Suite 2100
                                                Seattle, WA 98101

14                                              T: (206) 656-0177

15                                              akhanna@elias.law

16
                                                Omar Qureshi (CA Bar No. 323493)
17                                              Max Schoening (CA Bar No. 324643)

18                                              QURESHI LAW PC
                                                700 Flower Street, Suite 1000

19                                              Los Angeles, CA 90017

20                                              T: (213) 786-3478
                                                omar@qureshi.law

21                                              max@qureshi.law

22
                                                *Counsel for Proposed Intervenor-*
23                                              *Defendant DCCC*

24
                                                *\* Pro hac vice application forthcoming*
25

26

27

28                                        iv

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ vi

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 3

LEGAL STANDARD ............................................................................................. 4

ARGUMENT .......................................................................................................... 5

    I.     DCCC is entitled to intervene as a matter of right. ..................................... 5

        A.    This motion is timely. ........................................................................ 5

        B.    DCCC has substantial, protectable interests that are threatened
             by the relief Plaintiffs seek. ............................................................... 6

        C.    The existing parties do not adequately represent DCCC .................. 9

    II.    DCCC should, alternatively, be granted permissive intervention. ............ 12

CONCLUSION ..................................................................................................... 14

CERTIFICATE OF COMPLIANCE ...................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

**Cases:**

*Arakaki v. Cayetano*,

    324 F.3d 1078 (9th Cir. 2003) ....................................................................4, 5

*Ariz. All. for Retired Ams. v. Hobbs*,

    No. CV-22-0137, 2022 WL 4448320 (D. Ariz. Sep. 23, 2022) .....................14

*Barke v. Banks*,

    No. 8:20-cv-00358, 2020 WL 2315857 (C.D. Cal. May 7, 2020).................11

*Bellitto v. Snipes*,

    No. 16-cv-61474, 2016 WL 5118568 (S.D. Fla. Sep. 21, 2016)....................11

*Berger v. N.C. State Conf. of the NAACP*,

    597 U.S. 179 (2022)................................................................................10, 12

*Brumfield v. Dodd*,

    749 F.3d 339 (5th Cir. 2014)............................................................................7

*California ex rel. Lockyer v. United States*,

    450 F.3d 436 (9th Cir. 2006)............................................................................7

*Callahan v. Brookdale Senior Living Cmtys., Inc.*,

    42 F.4th 1013 (9th Cir. 2022) ..................................................................13, 14

*Chiles v. Thornburgh*,

    865 F.2d 1197 (11th Cir. 1989) .......................................................................7

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,

    647 F.3d 893 (9th Cir. 2011)..........................................................5, 7, 10, 11

*Democratic Party of Va. v. Brink*,

    2022 No. 3:21-CV-756-HEH, 2022 WL 330183 (2022)...............................14

*DNC v. Bostelmann*,

    No. 20-CV-249-WMC, 2020 WL 1505640 (2020) ..................................14, 14

vi

*Forest Conservation Council v. U.S. Forest Serv.*,
   66 F.3d 1489 (9th Cir. 1995).................................................................4

*Freedom from Religion Found. v. Geithner*,
   644 F.3d 836 (9th Cir. 2011)................................................................5

*Fund for Animals, Inc. v. Norton*,
   322 F.3d 728 (D.C. Cir. 2003) ...........................................................10

*GHP Mgmt. Corp. v. City of Los Angeles*,
   339 F.R.D. 621 (C.D. Cal. 2021) .......................................................11

*Hoopa Valley Tribe v. U.S. Bureau of Reclamation*,
   648 F. Supp. 3d 1196 (E.D. Cal. 2022)..............................................10

*Issa v. Newsom*,
   1044, 2020 WL 3074351 (E.D. Cal. June 10, 2020) ..............6, 8, 11

*Kleissler v. U.S. Forest Serv.*,
   157 F.3d 964 (3d Cir. 1998)...............................................................11

*La Union del Pueblo Entero v. Abbott*,
   29 F.4th 299 (5th Cir. 2022) ..............................................................11

*Loyd v. United States*,
   No. EDCV 23-00381-CJC (SSCx),
   2024 WL 3009014 (C.D. Cal. Jan. 3, 2024) ......................................6

*Meese v. Keene*,
   481 U.S. 465 (1987)...........................................................................12

*N.C. Green Party v. N.C. State Bd. of Elections*,
   619 F. Supp. 3d 547 (E.D.N.C. 2022)...........................................9, 12

*New Cingular Wireless PCS, LLC v. Kootenai County*,
   No. 2:23-cv-0124, 2023 WL 7283153 (2023) .....................................9

*Nielsen v. DeSantis*,
   No. 4:20CV236-RH-MJF, 2020 WL 6589656 (N.D. Fla. May 28, 2020) ......14

*Nw. Forest Res. Council v. Glickman*,

  82 F.3d 825 (9th Cir. 1996)......................................................................6

*Or. Nat. Desert Ass'n v. McDaniel*,

  405 F. App'x 197 (9th Cir. 2010) .........................................................6

*Or. Nat. Desert Ass'n v. Shuford*,

  2006 No. 06-cv-242, 2006 WL 2601073 (2006) ...............................6

*Owen v. Mulligan*,

  640 F.2d 1130 (9th Cir. 1981) ...............................................................8

*Paher v. Cegavske*,

  No. 3:20-cv-0243, 2020 WL 2042365 (D. Nev. Apr. 28, 2020) ...............8, 14

*Prete v. Bradbury*,

  438 F.3d 949 (9th Cir. 2006)...................................................................8

*S.J. Mercury News, Inc. v. U.S. Dist. Ct.*,

  187 F.3d 1096 (9th Cir. 1999) ...............................................................5

*Sagebrush Rebellion Inc. v. Watt*,

  713 F.2d 525 (9th Cir. 1983)................................................................10

*Sierra Club v. EPA*,

  995 F.2d 1478 (9th Cir. 1993) ...............................................................7

*Smith v. L.A. Unified Sch. Dist.*,

  830 F.3d 843 (9th Cir. 2016)...................................................................6

*Soltysik v. Padilla*,

  No. 15-7916, 2015 WL 13819001 (C.D. Cal. Dec. 11, 2015)........................9

*Spangler v. Pasadena City Bd. of Educ.*,

  552 F.2d 1326 (9th Cir. 1977) .............................................................14

*Sw. Ctr. for Biological Diversity v. Berg*,

  268 F.3d 810 (9th Cir. 2001)...........................................................4, 11

*Thomas v. Andino*,

    335 F.R.D. 364 (D.S.C. 2020) ...........................................................................14

*Trbovich v. United Mine Workers*,

    404 U.S. 528 (1972) ...............................................................................10, 12

*United Guar. Residential Ins. Co. v. Phila. Sav. Fund Soc'y*,

    819 F.2d 473 (4th Cir. 1987)...............................................................................12

*United States v. City of Los Angeles*,

    288 F.3d 391 (9th Cir. 2002)...................................................................................4

*W. States Trucking Ass'n v. Becerra*,

    No. 5:19-cv-02447, 2020 WL 1032348 (C.D. Cal. Mar. 2, 2020) ...................6

*W. Watersheds Project v. Haaland*,

    22 F.4th 828 (9th Cir. 2022) ...........................................................................5, 6

*WildEarth Guardians v. U.S. Forest Serv.*,

    573 F.3d 992 (10th Cir. 2009) ...........................................................................11

*Wilderness Soc'y v. U.S. Forest Serv.*,

    630 F.3d 1173 (9th Cir. 2011) .......................................................................7, 7

*Yniguez v. Arizona*,

    939 F.2d 727 (9th Cir. 1991)...............................................................................8

**Rules:**

Fed. R. Civ. P. 24 ............................................................................4, 5, 7, 13

**Other Authorities:**

Giselle Ewing, *Trump on Texas Redistricting: "We Are Entitled to 5 More Seats,"*

    Politico (Aug. 5, 2025, 10:18 ET),

    https://www.politico.com/news/2025/08/05/trump-texas-redistr ...................1

Letter from Gavin Newsom, Governor of Cal., to Donald J. Trump, President of the

    U.S. (Aug. 11, 2025), https://htv-prod-media.s3.amazonaws.com/files/newsom-

    trump-letter-689a0a50d88e9.pdf .......................................................................1

# **INTRODUCTION**

This summer, in an attempt to predetermine the outcome of the 2026 midterm elections, President Trump began a far-ranging campaign pressuring Republican-led states into redrawing their congressional maps to eliminate Democratic-held seats, claiming Republicans were "entitled" to those seats.[1] Many Republican-led states answered the President's call, starting with Texas. Over public protests and the vehement opposition of Democratic lawmakers, the Texas Legislature called a special session to muscle through a mid-decade redraw of Texas's congressional map, systematically dismantling Democratic-held seats in major urban areas and South Texas. Missouri and North Carolina followed suit, and several other states are poised to join their ranks. The result of these efforts is hugely consequential: While Republicans currently have a razor-thin majority in the House of Representatives, these recent gerrymanders may well net them at least half a dozen more seats. President Trump's desire is clear—to ensure that, no matter what voters want, there will be a permanent Republican majority in Congress.

In response to these unprecedented mid-decade redraws, California's elected leaders refused to stand idly by. Governor Newsom called on President Trump and Republican governors to halt redistricting efforts, indicating that, if they persisted, California would have no choice but to respond in kind.[2] Although Governor Newsom made clear that California would happily abandon mid-decade redistricting efforts if other states reciprocated, several states bowed to President Trump's demands and redrew their maps. In response, the California Legislature enacted a package of legislation to permit mid-decade redistricting. Unlike other states' efforts, however, the Legislature did

---

[1] Giselle Ewing, *Trump on Texas Redistricting: "We Are Entitled to 5 More Seats,"* Politico (Aug. 5, 2025, 10:18 ET), https://www.politico.com/news/2025/08/05/trump-texas-redistricting-00493624?utm.

[2] Letter from Gavin Newsom, Governor of Cal., to Donald J. Trump, President of the U.S. (Aug. 11, 2025), https://htv-prod-media.s3.amazonaws.com/files/newsom-trump-letter-689a0a50d88e9.pdf.

1

not move forward unilaterally. Instead, California placed this proposal before the voters as Proposition 50—and in the elections held last Tuesday, voters overwhelmingly backed the measure by a nearly 2:1 margin.

California Republicans have now sued to block California's new congressional map, notwithstanding the endorsement of California's new map by over five-and-a-half million California voters—or the nuclear approach to aggressive mid-cycle redistricting being actively taken by Republicans in other states. Plaintiffs' lawsuit directly threatens the interests of DCCC, which is the national congressional campaign committee for the Democratic Party, responsible for promoting the electoral prospects of Democratic congressional candidates in California and across the country. Proposition 50 bears directly on DCCC's ability to elect Democratic candidates in California's congressional districts and achieve a majority in the House of Representatives. The organization's interests in this case are therefore both of paramount importance and self-evident. Indeed, Plaintiffs expressly recognize DCCC's interests here through their misleading allegations of DCCC's involvement in the Proposition 50 map. The threat this lawsuit poses to DCCC's interests is thus beyond dispute.

DCCC also easily meets the other elements to be entitled to intervene as a matter of right under Rule 24(a)(2). It has unquestionably moved in a timely manner, seeking admittance to this suit mere days after it was filed. It has clear and significant interests at stake—the preservation of Proposition 50—that will be impaired by the relief Plaintiffs seek. And it cannot be assured of adequate representation by the existing Defendants who, as public officers sued in their official capacities, lack DCCC's partisan, competitive, and reputational interests. In any event, the requirements for permissive intervention under Rule 24(b) are also clearly met because DCCC has moved promptly, will defend the suit based on common issues of fact and law as to the existing parties, and its involvement will not cause prejudice. In fact, DCCC will aid resolution by responding to factual allegations made against it in the Complaint and lending a partisan

2

counterbalance to the California Republican Party on the Plaintiffs' side. The Court should therefore grant the motion to intervene.

## BACKGROUND

Proposed Intervenor DCCC is the national congressional campaign committee for the Democratic Party. *See* Merz Decl. ¶ 3. DCCC's mission is to promote the success of the Democratic Party in congressional elections and ultimately to secure a majority for the Democratic Party in the U.S. House of Representatives. *See id.* ¶¶ 3–4. It pursues this mission by, among other things, recruiting candidates, raising funds to support candidates, and helping candidates achieve electoral success by offering strategic guidance and bringing organizational resources to bear on the campaign trail. *Id.* ¶ 3. DCCC engages in this work throughout California, where it strives to help Democratic Party candidates win office and contribute towards a Democratic Party majority in the House of Representatives. *Id.*

As part of its mission, DCCC naturally has an interest in redistricting efforts throughout the country. *Id.* ¶ 4. The aggressive redistricting efforts that have taken place in Texas and other Republican-controlled states at the President's direction threaten to frustrate DCCC's goal of promoting the electoral success of Democratic Party candidates and the ability of the Democratic Party to obtain a House majority. *See id.* ¶ 9. Accordingly, when DCCC became aware that elected leaders in California were considering a potential redistricting plan that could benefit Democratic Party candidates and were soliciting public input, it responded by submitting a proposed congressional district map to the California Legislature. *Id.* ¶ 5.

The Complaint refers to DCCC's role in Proposition 50, though it misstates the facts. The Complaint alleges that DCCC "paid Redistricting Partners to draw the map" that was approved by the voters in Proposition 50. Compl. ¶¶ 50–51, 70. In fact, DCCC learned about Mr. Mitchell and Redistricting Partners' map-drawing effort only after an initial map was drawn. Merz Decl. *Id.* ¶ 5. DCCC proposed certain revisions to that initial

3

map to increase Democratic performance in various districts, then decided to pay Redistricting Partners to obtain a copy of a revised map that DCCC then submitted to the California Legislature through the public input process. *Id.* The revised map was then incorporated, in whole or in part, into Proposition 50, which Californians overwhelmingly approved at the ballot box on November 4. *Id.* ¶ 6.

The map approved by California voters thus reflects DCCC's goals of improving the electoral prospects of Democratic congressional candidates in California and combatting the redistricting efforts undertaken by Texas and other Republican-led states at the behest of President Trump. *See id.* ¶¶ 7, 9. Consistent with these interests, DCCC's chair issued a statement the day after the election commending California's voters for helping to create a "path to the Democratic majority." *Id.* ¶ 7.

## **LEGAL STANDARD**

Under Rule 24, a party may intervene either as a matter of right or with permission of the Court. *See* Fed. R. Civ. P. 24. "Rule 24 traditionally receives liberal construction in favor of applicants for intervention." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). "A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *United States v. City of Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002) (quoting *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 n.8 (9th Cir. 1995)). When reviewing a motion to intervene, courts must "take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

Under Rule 24(a)(2), an applicant has a right to intervene if it satisfies four requirements:

> (1) the applicant must timely move to intervene; (2) the applicant must have
> a significantly protectable interest relating to the property or transaction that

4

is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties.

*Arakaki*, 324 F.3d at 1083 (discussing intervention under Fed. R. Civ. P. 24(a)(2)). The Ninth Circuit has adopted a policy of "interpret[ing] these requirements broadly in favor of intervention," guided by "practical considerations, not technical distinctions." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022) (quoting *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011)). An applicant that satisfies each of these requirements must be granted intervention. *Arakaki*, 324 F.3d at 1083.

Federal courts also may grant permissive intervention under Rule 24(b); such motions are "directed to the sound discretion of the district court." *S.J. Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1100 (9th Cir. 1999). Only two factors must be satisfied where, as here, the intervening party does not intend to assert additional "new claims" for relief: (1) the motion must be timely and (2) the applicant's claim or defense must have a question of law or fact in common with the main action. *Freedom from Religion Found. v. Geithner*, 644 F.3d 836, 843–44 (9th Cir. 2011).[3]

<u>**ARGUMENT**</u>

**I.    DCCC is entitled to intervene as a matter of right.**

    **A.    This motion is timely.**

DCCC's motion is indisputably timely. To make this determination, courts in this Circuit must consider the totality of the circumstances, including "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties;

---

[3] DCCC submits a Proposed Answer as required by Rule 24(c), *see* Ex. B, but reserves the right to file a Rule 12 motion by the deadline set by the Court or the Federal Rules of Civil Procedure.

and (3) the reason for and length of [any] delay." *W. Watersheds Project*, 22 F.4th at 835–36 (quoting *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016)). Those factors all support a finding of timeliness here. DCCC's motion comes a mere five days after this case was filed and before any "substantive proceedings have occurred." *Issa v. Newsom*, No. 22-CV-1044, 2020 WL 3074351, at *2 (E.D. Cal. June 10, 2020) (permitting DCCC to intervene in election-law challenge brought by Republicans); *see also W. States Trucking Ass'n v. Becerra*, No. 5:19-cv-02447, 2020 WL 1032348, at *2 (C.D. Cal. Mar. 2, 2020) (noting that a "motion to intervene is generally considered timely if it is filed soon after a complaint, prior to any substantive proceedings" (citing *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996))). DCCC's intervention would also not require the Court to amend any scheduling order because no such order has been entered. *See Loyd v. United States*, No. EDCV 23-00381-CJC (SSCx), 2024 WL 3009014, at *1 (C.D. Cal. Jan. 3, 2024) ("A scheduling order has not yet issued, so Plaintiff's motion is timely."). In sum, these proceedings remain at the earliest stage, there has been no delay on DCCC's part, and there is no risk of prejudice to the existing parties.

Finally, DCCC agrees to abide by any future deadlines set by the Court or agreed to by the existing parties, including as to any preliminary injunction briefing. That commitment further eliminates any conceivable prospect of prejudice. *E.g.*, *Or. Nat. Desert Ass'n v. Shuford*, No. 06-cv-242, 2006 WL 2601073, at *2 (D. Or. Sep. 8, 2006) (finding no prejudice where intervenors moved promptly and agreed "to comply with the court's discovery and pretrial scheduling order"), *aff'd sub nom. Or. Nat. Desert Ass'n v. McDaniel*, 405 F. App'x 197 (9th Cir. 2010).

## B. DCCC has substantial, protectable interests that are threatened by the relief Plaintiffs seek.

DCCC also satisfies the "closely related" second and third requirements for intervention because it has significant protectable interests in this lawsuit, and the relief

Plaintiffs seek threatens to impair those interests. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). As the Ninth Circuit has explained, under Rule 24(a)(2), "a prospective intervenor 'has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation.'" *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)). Consistent with this liberal standard, "Rule 24(a)(2) does not require a specific legal or equitable interest," and "it is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (alteration omitted) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993)). Furthermore, "[t]he interest requirement may be judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (quoting Moore's Federal Practice § 24.03[2][c] (3d ed. 2008)).

Once a movant has shown some protectible interest, courts generally "have little difficulty concluding that the disposition of [a] case may, as a practical matter, affect" the intervenor's interests. *Lockyer*, 450 F.3d at 442. The intervenor need not show that impairment is a "certainty," only that "disposition of the action 'may' practically impair a party's ability to protect their interest in the subject matter of the litigation." *Citizens for Balanced Use*, 647 F.3d at 900 (quoting Fed. R. Civ. P. 24(a)(2)). In other words, "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Wilderness Soc'y*, 630 F.3d at 1179 (citation omitted).

DCCC has at least three significant interests that are at risk of impairment from the relief Plaintiffs seek. *First*, DCCC is an organization dedicated to advancing the electoral prospects of Democratic Party congressional candidates, so it naturally has an interest in the validity of a congressional map that aids the electoral prospects of

7

Democrats. *See* Merz Decl. ¶ 9. Other courts have considered this precise interest in evaluating motions to intervene filed by DCCC, and concluded that DCCC's interest in promoting the electoral success of Democratic congressional candidates warrants intervention as of right. *E.g.*, *Issa*, 2020 WL 3074351, at *3 (holding DCCC could intervene as of right under Rule 24(a)(2) in a challenge to a California executive order concerning mail-in voting, in part because of the DCCC's interest in "advancing [the Democrats'] overall electoral prospects"); *Paher v. Cegavske*, No. 3:20-cv-0243, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020) (similarly granting a motion to intervene by DCCC in a suit concerning election rules based on DCCC's interest in "ensur[ing] the election of Democratic Party candidates"). Indeed, the Ninth Circuit has long recognized that winning elections is a judicially cognizable interest in the context of Article III standing. *See Owen v. Mulligan*, 640 F.2d 1130, 1132–33 (9th Cir. 1981) (holding that "the potential loss of an election" is a sufficient injury to give rise to Article III standing). Accordingly, DCCC has an interest in this case that not only satisfies Rule 24, but also the "more stringent" requirements of Article III standing. *Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991) (observing that satisfying Article III standing "compels the conclusion" that a party also satisfies Rule 24). The relief Plaintiffs seek would directly impair DCCC's interest in promoting Democrats' electoral prospects by invalidating a congressional map that favors Democratic Party candidates.

*Second*, DCCC supported the efforts of Proposition 50, including by submitting a congressional map to the California Legislature—which the California Legislature approved, in whole or in part, and which California voters ultimately endorsed. *See* Merz Decl. ¶¶ 5–6, 10. That alone warrants intervention under Ninth Circuit law. As the court explained in *Prete v. Bradbury*, "a public interest group that has supported a measure . . . has a 'significant protectable interest' in defending the legality of the measure." 438 F.3d 949, 954 (9th Cir. 2006). The same logic applies here: DCCC supported and continues to support Proposition 50, and "an adverse judgment might

impede or impair" DCCC's interest in Proposition 50's legality. *Id.* at 955; *see also Soltysik v. Padilla*, No. 15-7916, 2015 WL 13819001, at *2 (C.D. Cal. Dec. 11, 2015) (finding a group that advocated for a proposition concerning open primaries had a "significant protectable interest" in defending the proposition's legality in litigation); *New Cingular Wireless PCS, LLC v. Kootenai County*, No. 2:23-cv-0124, 2023 WL 7283153, at * 4 (D. Idaho Nov. 2, 2023) (finding a group which "played an important role" in advocating for a measure had a "significant protectable interest" in an action challenging that measure).

*Third*, DCCC also has an interest in rebutting the false allegations Plaintiffs make about it in the Complaint, which explicitly accuses DCCC of paying Paul Mitchell and Redistricting Partners to develop unconstitutional "racial gerrymanders." Compl. ¶¶ 50–51, 70. Not only is this characterization untrue, *see* Merz Decl. ¶¶ 5–6, 10, it wrongly implicates DCCC in "unlawful, intentional discrimination based on race." Compl. ¶ 33. These false allegations independently supply DCCC with another significant protectable interest in this litigation. *See, e.g.*, *N.C. Green Party v. N.C. State Bd. of Elections*, 619 F. Supp. 3d 547, 562 (E.D.N.C. 2022) (holding that a party could intervene as of right, in part because there were "numerous allegations in plaintiffs' amended complaint concerning the intervenor[]" to which it was entitled to respond).

In sum, DCCC has a strong interest in promoting the electoral prospects of Democratic candidates for the House of Representatives; defending the legality of the congressional map that it helped propose; and rebutting the Complaint's misleading characterization of DCCC's activities. An adverse judgment in this litigation would jeopardize each of these interests. DCCC therefore readily meets the second and third requirements for intervention as of right.

## C.    The existing parties do not adequately represent DCCC.

DCCC cannot be assured adequate representation of its distinct interests at stake in this matter if it is denied intervention. The Ninth Circuit "stress[es] that intervention

9

of right does not require an absolute certainty . . . that existing parties will not adequately represent [an intervenor's] interests." *Citizens for Balanced Use*, 647 F.3d at 900. Accordingly, "the burden of making this showing is minimal" and is "satisfied if the applicant shows that representation of its interests may be inadequate." *Hoopa Valley Tribe v. U.S. Bureau of Reclamation*, 648 F. Supp. 3d 1196, 1204 (E.D. Cal. 2022) (quoting *Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)); *see also Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). Courts are also "liberal in finding" this requirement satisfied, recognizing that "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests." 7C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1909 (3d ed. 2024).

Here, DCCC has unique partisan, competitive, and reputational interests that may not be adequately represented by Defendants, who are sued as governmental officers responsible for impartially enforcing federal and California law.[4] *See* Merz Decl. ¶¶ 9–10. DCCC's core interest is in preserving a congressional map that maximizes the electoral prospects for Democratic congressional candidates and increases the likelihood of Democrats retaking control of the House of Representatives—full stop. In contrast, as the Complaint acknowledges, Governor Newsom and Secretary Webster are responsible for implementing Proposition 50 as part of their official duties. *See* Compl. ¶¶ 28–29.

This mismatch between a private litigant's parochial interests and a governmental party's public interests and duties is well-recognized. Federal courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003) (Garland, J.). This is because a government-official defendant's interests are "necessarily

---

[4] There is also no dispute that Plaintiffs—who seek relief setting aside a congressional map that DCCC supports—will not adequately represent DCCC's interests.

colored by [their] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (explaining that the burden in these circumstances is "comparatively light"). Simply put, "the government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" *Citizens for Balanced Use*, 647 F.3d at 899 (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)); *see also GHP Mgmt. Corp. v. City of Los Angeles*, 339 F.R.D. 621, 624 (C.D. Cal. 2021) (explaining courts "have permitted intervention on the government's side in recognition that the intervenors' interests are narrower than that of the government and therefore may not be adequately represented"); *Barke v. Banks*, No. 8:20-cv-00358, 2020 WL 2315857, at *3 (C.D. Cal. May 7, 2020) (collecting cases).

That divergence is particularly stark in election-law cases, where political groups like DCCC are singularly focused on preserving their own partisan advantage. As another district court in California explained, in election disputes like this one "Defendants' arguments turn on their inherent authority as state executives and their responsibility to properly administer election laws," while groups like DCCC are "concerned with . . . advancing [their] overall electoral prospects." *Issa*, 2020 WL 3074351, at * 3 (granting DCCC intervention). The Fifth Circuit has similarly reasoned that governmental defendants are not likely to adequately represent political committees because the latter have "private interests different in kind from the public interests of the State or its officials." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 309 (5th Cir. 2022); *see also Berg*, 268 F.3d at 823 (explaining any presumption of adequate representation is rebutted when parties "do not have sufficiently congruent interests"); *Bellitto v. Snipes*, No. 16-cv-61474, 2016 WL 5118568, at *2 (S.D. Fla. Sep. 21, 2016) (concluding adequate representation not guaranteed where existing defendant was "an elected official" with "interests" that "may not be aligned" with an intervenor's).

11

The Supreme Court recently emphasized this point, explaining that public officials must "bear in mind broader public-policy implications," whereas private litigants—like DCCC—seek to vindicate their own rights "full stop." *Berger*, 597 U.S. at 195–96 (citing *Trbovich*, 404 U.S. at 538–39). Thus, the Supreme Court cautioned that courts should not conduct the adequacy of representation analysis at too "high [a] level of abstraction," and reaffirmed that, even where the parties' interests "seem[] closely aligned," the burden to demonstrate inadequate representation remains "minimal" unless those interests are "identical." *Id.* at 196 (citation omitted); *cf. United Guar. Residential Ins. Co. v. Phila. Sav. Fund Soc'y*, 819 F.2d 473, 475 (4th Cir. 1987) (explaining that, under *Trbovich*, "when a party to an existing suit is obligated to serve two distinct interests, which, although related, are not identical, another with one of those interests should be entitled to intervene"). In other words, even if Governor Newsom and Secretary Weber oppose the relief that Plaintiffs seek at a high level of abstraction, it does not follow that they share the same interests as a private political organization committed to improving its electoral chances. *See Berger*, 597 U.S. at 196.

Finally, unlike the existing Defendants, DCCC has discrete reputational interests at stake based on accusations against it in the Complaint. *Cf. N.C. Green Party*, 619 F. Supp. 3d at 562 (recognizing an intervenor's interest in responding to allegations against it); *Meese v. Keene*, 481 U.S. 465, 480 (1987) (recognizing risk of reputational harm as concrete legal interest). There is no reason to believe the existing Defendants will adequately defend that interest, which does not implicate them.

At bottom, the governmental defendants do not stand in the same shoes as DCCC and thus do not adequately represent their interests, which plainly are at stake in this case.

## II.    DCCC should, alternatively, be granted permissive intervention.

This Court should alternatively exercise its discretion to grant permissive intervention. The terms of Rule 24(b) are readily satisfied: DCCC asserts a "defense that shares with the main action a common question of law or fact," and granting intervention

would not "unduly delay or prejudice the adjudication" of the matter in view of DCCC's timely motion. Fed. R. Civ. P. 24(b). DCCC has moved promptly, *see supra* Argument § I.A, and agrees to abide by any schedule set by the Court or agreed to by the original parties, meaning there will be no delay or prejudice. And DCCC's defense requires resolution of the same factual and legal issues raised in the underlying lawsuit. *See* Ex. B (Proposed Answer).

The Ninth Circuit has also identified additional considerations the Court can weigh in evaluating permissive intervention requests. *See Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022). Those considerations—including the proposed intervenors' interests, the inadequacy of the representation of those interests, and the intervenors' contribution to the factual and legal issues, *see id.*—buttress the case for intervention here.

*First*, DCCC has enormous interests at stake. It seeks to defend legislation that is not merely helpful to DCCC, but which DCCC participated in by submitting a map through the public submission process. *See* Merz Decl. ¶¶ 5–6. Separately, Plaintiffs themselves have conceded DCCC's interests here by naming it in the Complaint and making (inaccurate) allegations that place DCCC at the center of this dispute. *See id.* ¶¶ 5–6, 10. These considerations give DCCC an uncommonly strong and acute interest in this suit.

*Second*, DCCC's parochial interests are not identical to the public interests of the existing, governmental defendants, and may not be fully advanced without their intervention. *See supra* Argument § I.C. Indeed, the existing Defendants may be hesitant to advance the openly partisan arguments that DCCC will present in support of California's effort to combat President Trump's unprecedented effort to rig the 2026 midterm elections through mid-decade redistricting.

*Finally*, DCCC will contribute to the "full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions

presented." *Callahan*, 42 F.4th at 1022 (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)). Again, Plaintiffs have effectively conceded this consideration by making factual allegations to which DCCC is uniquely well-suited to respond. *See* Compl. ¶¶ 50–51, 70. Moreover, DCCC's distinct perspective and involvement in the advancement of Proposition 50 will aid the Court in fully fleshing out the factual and legal issues at bar.

"Courts often allow the permissive intervention of political parties in actions challenging voting laws for exactly th[ese] reason[s]." *Democratic Party of Va. v. Brink*, No. 3:21-CV-756-HEH, 2022 WL 330183, at *2 & n.5 (E.D. Va. Feb. 3, 2022) (collecting cases); *see also Ariz. All. for Retired Ams. v. Hobbs*, No. CV-22-01374-PHX-GMS, 2022 WL 4448320, at *3 (D. Ariz. Sep. 23, 2022) (collecting cases); *Nielsen v. DeSantis*, No. 4:20CV236-RH-MJF, 2020 WL 6589656, at *1 (N.D. Fla. May 28, 2020) (granting permissive intervention to Republican-affiliated organizations "with experienced attorneys who might well bring perspective that others miss or choose not to provide"); *Thomas v. Andino*, 335 F.R.D. 364, 371 (D.S.C. 2020) (similar); *Paher*, 2020 WL 2042365, at *2 (similar). Finally, permissive intervention is particularly warranted since Plaintiffs include a political organization—the California Republican Party—with "mirror-image" interests of DCCC. *DNC v. Bostelmann*, No. 20-CV-249-WMC, 2020 WL 1505640, at *5 (W.D. Wis. Mar. 28, 2020) (explaining permissive intervention is warranted where organizations share "mirror-image" interests).

In short, because Rule 24 must be liberally construed to protect DCCC's rights and interests, and because DCCC's participation will assist rather than prejudice efficient development and resolution of this case, the Court should grant permissive intervention if it does not find that DCCC may intervene as a matter of right.

## **CONCLUSION**

DCCC respectfully requests that this Court grant its motion to intervene as a matter of right—or, in the alternative, grant permissive intervention.

14

Dated: November 10, 2025

Respectfully submitted,

*/s/ Lalitha D. Madduri*
Lalitha D. Madduri (CA Bar No. 301236)
Christopher D. Dodge* (DC Bar No. 90011587)
Max Accardi* (DC Bar No. 90021259)
ELIAS LAW GROUP LLP
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4652
F: (202) 968-4498
lmadduri@elias.law
cdodge@elias.law
maccardi@elias.law

Abha Khanna* (WA Bar No. 42612)
ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
akhanna@elias.law

Omar Qureshi (CA Bar No. 323493)
Max Schoening (CA Bar No. 324643)
QURESHI LAW PC
700 Flower Street, Suite 1000
Los Angeles, CA 90017
T: (213) 786-3478
omar@qureshi.law
max@qureshi.law

*Counsel for Proposed Intervenor-Defendant DCCC*

* *Pro hac vice application forthcoming*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Proposed Intervenor-Defendant DCCC, certifies that this brief contains 4,561 words, which complies with the word limit of Local Rule 11-6.1.

Dated: November 10, 2025          */s/ Lalitha D. Madduri*
                                 Lalitha D. Madduri

16