**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

DAVID TANGIPA, *et al.*,

            *Plaintiffs*,

   and

UNITED STATES OF AMERICA,

            *Plaintiff-Intervenor*,

   v.

GAVIN NEWSOM, in his official capacity as the Governor of California, *et al.*,

            *Defendants*,

Case No.   2:25-cv-10616-JLS-KES
Three-Judge Court

**DECLARATION OF MAUREEN RIORDAN IN SUPPORT OF UNITED STATES' MOTION FOR A PRELIMINARY INJUNCTION**

Honorable Josephine L. Staton
United States District Judge

1    I, Maureen Riordan, do hereby declare and state as follows.

2    1.    I am the Acting Chief of the Voting Section at the Department of Justice Civil

3    Rights Division.

4    2.    This Declaration is being submitted in support of the United States' Motion for a

5    Preliminary Injunction in the above-captioned matter.

6    3.    The statements made in this Declaration are based on the knowledge acquired by

7    me in the performance of my official duties and in conjunction with factual and legal

8    research conducted by other attorneys and staff at the Department of Justice.

9    4.    In 2011, the State of California sought preclearance under Section 5 of the Voting

10   Rights Act from the Department of Justice for maps reflecting reapportioned boundaries

11   for its congressional districts.  Attached hereto as Exhibit 1 is a true and correct copy of

12   California's Preclearance Submission of the 2011 Redistricting Plan.

13   5.    Attached hereto as Exhibit 2 is a true and correct copy of a January 17, 2012, letter

14   from the Department of Justice to California Attorney General Kamala Harris regarding

15   the Preclearance Submission.

16       Having reviewed this Declaration, I declare, under penalty of perjury and pursuant

17   to 28 U.S.C. § 1746, that the foregoing is true and correct.

18

19       Executed on November 13, 2025, in Washington, D.C.

20

21       Respectfully submitted,

22

23                                      */s/ Maureen Riordan*
                                        Maureen Riordan
24                                      Acting Chief, Voting Rights Section

25

26

27

28

1

# EXHIBIT 1

**GIBSON DUNN**

**SECTION 5 SUBMISSION**

NO. *2011·4844*

Gibson, Dunn & Crutcher LLP

1881 Page Mill Road
Palo Alto, CA 94304-1211
Tel 650.849.5300
www.gibsondunn.com

George H. Brown
Direct: +1 650.849.5339
Fax: +1 650.849.5039
GBrown@gibsondunn.com

Client: 20470-00002

November 15, 2011

VIA FEDERAL EXPRESS

Chief, Voting Rights Section
Civil Rights Divsion
United States Department of Justice
Room 7254 - NWB
Department of Justice
1800 G St., N.W.
Washington, DC 20006

Re:    Section 5 Preclearance for Kings, Monterey, Merced, and Yuba Counties

Enclosed please find the Preclearance Submission of the 2011 Redistricting Plan for the Counties of Kings, Merced, Monterey and Yuba by the State of California under 42 U.S.C. § 1973c.

If you need any assistance or have any questions, please feel free to contact me at 650.849.5339, or my colleague, Sarah Brown Hadjimarkos, at 650.849.5395.

Sincerely,

George H. Brown

GHB/sab

101184064.1

Brussels · Century City · Dallas · Denver · Dubai · Hong Kong · London · Los Angeles · Munich · New York
Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

**4**

OFFICE OF THE ATTORNEY GENERAL
CALIFORNIA DEPARTMENT OF JUSTICE
Kamala D. Harris, Attorney General
Rochelle East, Chief Deputy Attorney General
Brian Nelson, Special Assistant Attorney General
P.O. Box 944255
Sacramento, California 94244-2550

CALIFORNIA CITIZENS REDISTRICTING COMMISSION
901 P Street
Suite 154-A
Sacramento, California 95814

## BEFORE THE UNITED STATES DEPARTMENT OF JUSTICE

**PRECLEARANCE SUBMISSION OF THE 2011 REDISTRICTING PLAN FOR THE
COUNTIES OF KINGS, MERCED, MONTEREY AND YUBA
BY THE STATE OF CALIFORNIA UNDER 42 U.S.C. § 1973c**

**Expedited Consideration Requested**

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................... 1

I. LEGAL STANDARD .................................................................................................. 2

II. EXPLANATION OF DISTRICT CHANGES 28 C.F.R. §§ 51.27(a)-(c), (m), (n), and 51.28(a) and (b)............................................................................................................ 3

    A.    State Assembly Districts 3, 21, 29, 30, and 32 ....................................................... 4

        1.    Summary of Assembly Districts ................................................................. 4

        2.    Yuba County – Assembly District 3 ............................................................ 6

        3.    Merced County – Assembly District 21....................................................... 7

        4.    Monterey County – Assembly District 29 .................................................. 8

        5.    Monterey County – Assembly District 30 .................................................. 9

        6.    Kings County – Assembly District 32 ...................................................... 10

    B.    State Senate Districts 4, 12, 14, and 17................................................................ 11

        1.    Summary of State Senate Districts ........................................................... 11

        2.    Yuba County – Senate District 4 .............................................................. 12

        3.    Merced and Monterey Counties – Senate District 12 ............................... 13

        4.    Kings County – Senate District 14............................................................. 14

        5.    Monterey County – Senate District 17....................................................... 15

    C.    Congressional Districts 3, 16, 20, and 21 ............................................................ 16

        1.    Summary of Congressional Districts ........................................................ 16

        2.    Yuba County – Congressional District 3 .................................................. 18

        3.    Merced County – Congressional District 16.............................................. 19

        4.    Monterey County – Congressional District 20 .......................................... 20

        5.    Kings County – Congressional District 21 ................................................ 21

    D.    Board of Equalization Districts 1 and 2 ................................................................ 22

        1.    Summary of Board of Equalization Districts............................................. 22

        2.    Kings, Merced, and Yuba Counties – District 1 ........................................ 22

        3.    Monterey County – District 2 ................................................................... 23

III. USE OF ESTIMATES 28 C.F.R. § 51.26(b) ......................................................... 24

IV. RESPONSIBILITY FOR REDISTRICTING 28 C.F.R. § 51.27(g)-(l) ............................ 25

i

V. STATEMENT OF PAST OR PENDING LITIGATION  28 C.F.R. § 51.27(o) ..................... 30

VI. PRECLEARANCE OF PRIOR PRACTICE  28 C.F.R. § 51.27(p) ...................................... 31

VII. PUBLICITY AND PARTICIPATION  28 C.F.R. § 51.28(f) ........................................... 31

VIII. AVAILABILITY OF THE SUBMISSION  28 C.F.R. § 51.28(g) .................................. 34

IX. MINORITY GROUP CONTACTS  28 C.F.R. § 51.28(h) ................................................. 35

X. NAME OF SUBMITTING AUTHORITY AND CONTACT  28 C.F.R. § 51.27(d) and (e) 41

XI. SUPPLEMENTAL MATERIALS....................................................................................... 42

CONCLUSION........................................................................................................................... 44

## TABLE OF AUTHORITIES

Page

### Cases

*Beer v. United States*, 425 U.S. 130, 141 (1976) ...................................................................... 2, 3, 4

*Georgia v. Ashcroft*, 539 U.S. 461, 477 (2003) ............................................................................ 2, 3

*League of United Latin Am. Citizens v. Perry*, 548 U.S. 399 (2006) ............................................. 2

*Riley v. Kennedy*, 553 U.S. 406 (2008) ........................................................................................... 2

### Statutes

42 U.S.C. § 1973b(b) ......................................................................................................................... 1

42 U.S.C. § 1973c(b) ......................................................................................................................... 2

42 U.S.C. § 1973c(c) ......................................................................................................................... 2

Cal. Gov. Code, § 8253(a)(7) .......................................................................................................... 28

### Other Authorities

CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING
(Aug. 15, 2011) ..................................................................................................................... passim

Diane S. Lauderdale & Bert Kestenbaum, "Asian American ethic identification by surname," 19
Population Research and Policy Review 283 (2000) ................................................................. 25

Kenneth F. McCue, Creating California's Official Redistricting Database (August 2011) ... 24, 25

Kenneth F. McCue, The Statistical Foundations of the EI Method, 55 (2) THE AMERICAN
STATISTICIAN 106 (2001) ......................................................................................................... 25

Passel-Word (PW) Spanish surname list ...................................................................................... 24

### Regulations

28 C.F.R. § 51.23(a) (2001) .............................................................................................................. 1

28 C.F.R. § 51.27(d) and (e) ........................................................................................................... 41

28 C.F.R. § 51.27(g)-(l) .................................................................................................................. 25

28 C.F.R. § 51.27(o) ........................................................................................................................ 30

28 C.F.R. § 51.27(p) ........................................................................................................................ 31

28 C.F.R. § 51.28 ............................................................................................................................. 42

28 C.F.R. § 51.28(a)(4)-(5) ............................................................................................................... 4

28 C.F.R. § 51.28(f) ......................................................................................................................... 31

28 C.F.R. § 51.28(g) ........................................................................................................................ 34

28 C.F.R. § 51.28(h) ........................................................................................................................ 35

i

28 C.F.R. §§ 51.26(b) .................................................................................................................... 24

36 Fed. Reg. 5809 ............................................................................................................................ 1

40 Fed. Reg. 43746 .......................................................................................................................... 1

41 Fed. Reg. 784 .............................................................................................................................. 1

**Constitutional Provisions**

Cal. Const. Art. XXI § 2(i) ............................................................................................................. 1

Cal. Const., art. XXI, § 1 .............................................................................................................. 26

Cal. Const., art. XXI, § 2(b)............................................................................................... 26, 31, 32

Cal. Const., art. XXI, § 2(d)........................................................................................................... 27

Cal. Const., art. XXI, § 2(e)........................................................................................................... 28

Cal. Const., art. XXI, § 2(f) ........................................................................................................... 28

## INTRODUCTION

The State of California[1] submits its 2011 maps reflecting reapportioned boundaries for

California's Assembly, Senate, Board of Equalization, and Congressional Districts (collectively,

the "Maps") to the United States Department of Justice for preclearance under Section 5 of the

Voting Rights Act.[2]  Specifically, California seeks preclearance of Assembly Districts (AD) 3,

21, 29, 30, and 32; Senate Districts (SD) 4, 12, 14, and 17; Congressional Districts (CD) 3, 16,

20, and 21; and Board of Equalization Districts (BOE) 1 and 2.  Kings, Merced, Monterey and

Yuba Counties are covered jurisdictions under Section 5 of the Voting Rights Act of 1965,[3] and

each of these districts includes all or part of one of these counties.

The California Citizens Redistricting Commission ("Commission") drew each one of

these districts to comply with Section 5 of the Voting Rights Act.  As demonstrated herein, the

Commission maintained or increased the Latino Voting Age Population in each district, so as not

to dilute minority populations' ability to elect their preferred candidates of choice.  Because the

Commission complied with the requirements of Section 5 and drew the new districts without any

discriminatory purpose, preclearance should be granted.

---

[1] This submission was prepared by counsel for the California Citizens Redistricting Commission and is being joined by the California Attorney General.

[2] The Maps became law under Article XXI of the California Constitution on August 15, 2011 when the California Citizen's Redistricting Commission delivered its final certified maps to the California Secretary of State.  Cal. Const., art. XXI § 2(i).

[3] Section 5 applies only to changes made in certain counties; specifically, those which imposed a test or device as a prerequisite to voting and in which fewer than half of the residents of voting age were registered to vote, or voted in the presidential elections of 1964, 1968, or 1972.  *See* 42 U.S.C. § 1973b(b).  Kings and Merced counties were designated covered jurisdictions subject to preclearance requirements on September 23, 1975.  40 Fed. Reg. 43746. Monterey and Yuba Counties were designated covered jurisdictions on March 27, 1971.  36 Fed. Reg. 5809.  Yuba County was re-designated a covered jurisdiction on January 5, 1976.  41 Fed. Reg. 784.  The State of California makes this submission on behalf of these covered counties pursuant to authority set forth in 28 C.F.R. § 51.23(a) (2001).

1

# I.
# LEGAL STANDARD

Section 5 of the Voting Rights Act requires covered jurisdictions to show that new boundary lines do not have the "purpose" or "effect" of "diminishing the ability of any citizens of the United States on account of race or color or [membership in a language minority] to elect their preferred candidates of choice . . . ." 42 U.S.C. § 1973c(b). Redistricting plans drawn with "any discriminatory purpose" are prohibited. 42 U.S.C. § 1973c(c). Further, under Section 5, redistricting plans have the "effect" of "denying or abridging the right to vote" if they "lead to a retrogression in the position of racial [or language] minorities with respect to their effective exercise of the electoral franchise." *Beer v. United States*, 425 U.S. 130 (1976); *Georgia v. Ashcroft*, 539 U.S. 461, 477 (2003) (prohibiting changes to voting procedures "that would lead to a retrogression in the position of racial minorities with respect to their effective exercise of the electoral franchise"); *Riley v. Kennedy*, 553 U.S. 406, 412 (2008) (quoting *Beer*). "In other words, . . . covered jurisdictions may not 'leave minority voters with less chance to be effective in electing preferred candidates than they were' under the prior districting plan." *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 478 (2006) (citing *Georgia v. Ashcroft*, 539 U.S. at 494).

Newly drawn districts that improve the voting rights and voting power of minority groups satisfy Section 5. As the Supreme Court explained in *Beer v. United States*, a "reapportionment that enhances the position of racial minorities with respect to their effective exercise of the electoral franchise can hardly have the 'effect' of diluting or abridging the right to vote on account of race within the meaning of [Section] 5." 425 U.S. 130, 141 (1976). Plainly stated, "a

2

plan that is not retrogressive should be precleared under § 5." *Georgia v. Ashcroft*, 539 U.S. 461, 477 (2003).

California's 2011 redistricting plans do not violate Section 5 because no newly drawn district was drawn with a discriminatory purpose, nor does any newly drawn district in a covered jurisdiction diminish the ability of any minority group to elect their candidate of choice. In fact, each district maintains or improves the position of racial minorities. As such, preclearance should be granted because the redistricting plans do not lead to the retrogression of any racial or language minorities' ability to effectively exercise their right to vote. *Beer*, 425 U.S. at 141.

## II.
## EXPLANATION OF DISTRICT CHANGES
## 28 C.F.R. §§ 51.27(a)-(c), (m), (n), and 51.28(a) and (b)

The voting power of minorities[4] in each of California's covered counties is preserved or improved in the 2011 redistricting plan. A copy of the certified maps of the California State

---

[4] Because the Latino population is the largest minority population in California and the population with the strongest voting power, this submission focuses primarily on changes to the Latino population's voting power. Latinos are the only minority group of sufficient size to determine or influence election outcomes in any of California's covered counties. According to the 2010 U.S. Census, Latinos comprise 50.90% of Kings County (77,866 of 152,982), 54.92% of Merced County (140,485 of 255,793), 55.41% of Monterey County (230,003 of 415,057), and 25.02% of Yuba County (18,051 of 72,155).

The African American and Asian populations are the second and third largest minority populations in California. *See, generally*, county stats w 10 data.xls [App. K]. In each of the covered counties, these populations account for less than 10% of the total population of these counties:

- YUBA COUNTY: AFRICAN AMERICAN POPULATION IS 3.65% (2,634 OF 72,155) AND ASIAN POPULATION IS 7.38% (5,326 OF 72,155).

- KINGS COUNTY: AFRICAN AMERICAN POPULATION IS 7.23% (11,061 OF 152,982) AND ASIAN POPULATION IS 4.23% (6,471 OF 152,982).

- MERCED COUNTY: AFRICAN AMERICAN POPULATION IS 3.78% (9,669 OF 255,793) AND ASIAN POPULATION IS 7.57% (19,353 OF 255,793).

- MONTEREY COUNTY: AFRICAN AMERICAN POPULATION IS 3.02% (12,554 OF 415,057) AND ASIAN POPULATION IS 6.64% (27,556 OF 415,057).

*See* county stats w 10 data.xls [App. K].

3

Assembly Districts, State Senate Districts, Congressional Districts, and Board of Equalization Districts, which set forth the new boundaries of each affected district, are provided in Appendices C - F. Prior maps of the affected districts are provided in Appendices G - J. Detailed demographic statistics for each affected district under both the 2001 and newly-drawn district lines are set forth in Appendices K and L.[5]

**A.     State Assembly Districts 3, 21, 29, 30, and 32**

    **1.     <u>Summary of Assembly Districts</u>**

The new Assembly Districts in Yuba, Kings, Merced, and Monterey Counties maintain or increase the voting power of Latinos. No county will experience any decrease in the Latino Voting Age Population (VAP). Consequently, the new Assembly Districts do not diminish the ability of the minority groups to elect candidates of their choice and are not retrogressive. *See Beer*, 425 U.S. at 141.

Assembly District 30 (formerly Assembly District 28) is currently held by Latino incumbent Luis Alejo. Under the new lines, this district will experience an increase in Latino VAP. Therefore, AD 30 will continue to be one in which Latinos are able to heavily influence or determine the election outcomes, and a cohesive Latino population could elect the candidate of their choice.

The new boundaries of Assembly District 21 (formerly Assembly District 17) and Assembly District 32 also increase Latino VAP in those districts. Under the new lines, Latinos are nearly one-half of the voting age population in AD 21 (48.47%), and more than one-half in AD

---

[5] Demographic data is provided pursuant to 28 C.F.R. § 51.28(a)(4)-(5). The data was generated by the Maptitude for Redistricting program using 2010 census data and voter registration from the California Statewide Database.

32 (63.64%). These increases in VAP result in a greater opportunity for a cohesive Latino electorate to influence elections in these districts.

Under the new lines in the remaining Assembly Districts that include Section 5 counties – Assembly District 3 (Yuba) and Assembly District 29 (coastal Monterey, formerly Assembly District 27) – the Latino population, Latino VAP, and registration numbers increase. The demographics and population trends in these areas suggest the population has not increased to the level that Latino voters will influence election outcomes. Even with increases in the VAP, the population's voting influence remains under 20%.

Overall, the new lines not only preserve but increase the voting power of Latinos in the covered jurisdictions. As is discussed below, they do so in a manner and by a process that was open, fair, and guided by traditional districting criteria and governing legal standards.[6] The adoption of these new districts does not have the purpose, nor will it have the effect of diminishing the ability of Latinos to elect candidates of their choice and is not retrogressive.

Below, we briefly review the most pertinent statistics and provide a description of the composition of each district that contains a covered county.

---

[6] Several community organizations and groups submitted proposed statewide maps and/or regional maps concerning districts in the Section 5 counties. Their maps are included in Appendix Q, submitted herewith. The Commission took into account all of the various submissions in drawing the final lines.

5

2. **Yuba County – Assembly District 3**

|  | 2001[7] | 2011 | Difference |
|---|---|---|---|
| Total Latino Population | 14.09%[8] | 22.20%[9] | +8.11% |
| Latino VAP | 11.72%[10] | 18.30%[11] | +6.58% |
| Latino Registration | 6.26%[12] | 9.96%[13] | +3.70% |

Assembly District 3 consists of the whole counties of Tehama, Glenn, Yuba, and Sutter, as well as northern Colusa and western Butte Counties. This district is characterized by inland agricultural crops, such as rice and almonds, and includes a large Sikh community, as well as Hmong farming communities. Colusa and Butte counties were split to achieve population equality and to group similar agricultural interests. The Yuba City-Marysville area, which sits on the Yuba-Sutter border, is kept whole.

The new boundaries for AD 3 resulted in increases in the Latino VAP. The adoption of AD 3 does not have the purpose, or the effect, of diminishing the ability of any racial or language minority to elect candidates of their choice and is not retrogressive.

---

[7] Data in this column is based on 2010 population within the districts established in 2001.

[8] Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[9] Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011), Appendix 3, Table 2, "Total Population – U.S. Census Bureau 2010 PL94, Table 2. DOJ Tabulation." [App. B].

[10] Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[11] Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011), Appendix 3, Table 3, "Total Voting Age Population – U.S. Census Bureau 2010 PL94, Table 4. DOJ Tabulation." [App. B].

[12] Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[13] Source: 2011_district_g10reg_latinosurname.xls [App. K].

6

3. **Merced County – Assembly District 21**

|  | 2001 (17th Dist.)[14] | 2011 | Difference |
|---|---|---|---|
| Total Latino Population | 51.95%[15] | 54.25%[16] | +2.30% |
| Latino VAP | 47.03%[17] | 48.47%[18] | +1.44% |
| Latino Registration | 33.72%[19] | 33.92%[20] | +0.20% |

Assembly District 21 (formerly Assembly District 17) includes all of Merced County and the western portion of Stanislaus County, west of Highway 99. Cities included within Stanislaus County are Patterson and Ceres, which include similar farmworker communities, and part of Modesto, which was divided to meet the requirements for Merced County under Section 5.

The new boundaries for AD 21 resulted in increases in the Latino VAP. The adoption of AD 21 does not have the purpose, or the effect, of diminishing the ability of any racial or language minority to elect candidates of their choice and is not retrogressive.

---

[14] Data in this column is based on 2010 population within the districts established in 2001.

[15] Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[16] Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011), Appendix 3, Table 2, "Total Population – U.S. Census Bureau 2010 PL94, Table 2. DOJ Tabulation." [App. B].

[17] Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[18] Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011), Appendix 3, Table 3, "Total Voting Age Population – U.S. Census Bureau 2010 PL94, Table 4. DOJ Tabulation." [App. B].

[19] Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[20] Source: 2011_district_g10reg_latinosurname.xls [App. K].

7

4.    **Monterey County – Assembly District 29**

|  | 2001 (Dist. 27)[21] | 2011 | Difference |
|---|---|---|---|
| Total Latino Population | 23.53%[22] | 23.48%[23] | -0.5% |
| Latino VAP | 19.86%[24] | 19.88%[25] | +0.02% |
| Latino Registration | 10.86%[26] | 11.26%[27] | +0.40% |

Assembly District 29 (formerly Assembly District 27) is one of two districts including

Monterey County. AD 29 contains major portions of Monterey and Santa Cruz Counties. Cities

included in the district are Santa Cruz, Seaside, Monterey, Marina, Pacific Grove, Scotts Valley,

Capitola, and Carmel-by-the-Sea. A small portion of San Jose was also included in the district to

achieve population equality. The district contains a range of smaller cities and unincorporated

areas, as well as several state and county parks. The Monterey Bay coastline (part of the

Monterey Bay National Marine Sanctuary) is fully contained within the district.

The new boundaries for AD 29 resulted in increases in the Latino VAP. The adoption of

AD 29 does not have the purpose, or the effect, of diminishing the ability of any racial or language

minority to elect candidates of their choice and is not retrogressive.

---

[21]  Data in this column is based on 2010 population within the districts established in 2001.

[22]  Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[23]  Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011),
Appendix 3, Table 2, "Total Population – U.S. Census Bureau 2010 PL94, Table 2. DOJ Tabulation." [App. B].

[24]  Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[25]  Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011),
Appendix 3, Table 3, "Total Voting Age Population – U.S. Census Bureau 2010 PL94, Table 4. DOJ Tabulation."
[App. B].

[26]  Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[27]  Source: 2011_district_g10reg_latinosurname.xls  [App. K].

8

5.   **Monterey County – Assembly District 30**

|  | 2001 (Dist. 28)[28] | 2011 | Difference |
|---|---|---|---|
| Total Latino Population | 65.77%[29] | 66.30%[30] | +0.3% |
| Latino VAP | 60.93%[31] | 61.20%[32] | +0.27% |
| Latino Registration | 44.93%[33] | 43.43%[34] | -1.5% |

Assembly District 30 (formerly Assembly District 28) is the second district that includes Monterey County. AD 30 contains San Benito County, as well as portions of Monterey, Santa Clara, and Santa Cruz Counties. Cities included in the district are Salinas, Watsonville, Gilroy, Morgan Hill, Hollister, Soledad, Greenfield, King City, Gonzales, and San Juan Bautista. The district contains several smaller cities that share common social and economic interests, including core agricultural interests.

The new boundaries for AD 30 resulted in increases in the Latino voting age population. The adoption of AD 30 does not have the purpose, or the effect, of diminishing the ability of any racial or language minority to elect candidates of their choice and is not retrogressive.

---

[28] Data in this column is based on 2010 population within the districts established in 2001.

[29] Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[30] Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011), Appendix 3, Table 2, "Total Population – U.S. Census Bureau 2010 PL94, Table 2. DOJ Tabulation." [App. B].

Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[32] Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011), Appendix 3, Table 3, "Total Voting Age Population – U.S. Census Bureau 2010 PL94, Table 4. DOJ Tabulation." [App. B].

[33] Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[34] Source: 2011_district_g10reg_latinosurname.xls [App. K].

9

6. __Kings County – Assembly District 32__

|  | 2001 (30th Dist.)[35] | 2011 | Difference |
|---|---|---|---|
| Total Latino Population | 68.79%[36] | 68.89%[37] | +0.10% |
| Latino VAP | 63.39%[38] | 63.64%[39] | +0.25% |
| Latino Registration | 48.15%[40] | 49.66%[41] | +1.51% |

Assembly District 32 (formerly Assembly District 30) includes all of Kings County and a portion of Kern County. The district's boundaries are similar to those of the prior benchmark district, but a slight change was made to the portion of Kern County around the City of Bakersfield by circling a portion of Bakersfield to the south and west to reach the city of Arvin. The City of Bakersfield was split to comply with Section 5. The Kern County communities included in AD 32 are those in the western portion of the county along the I-5 corridor (Lost Hills and Buttonwillow), northern Kern County along the Highway 99 corridor (Shafter and McFarland), and south of Bakersfield, including Arvin, Weedpatch, and Lamont. All of these areas have common agricultural interests.

The new boundaries for AD 32 resulted in increases in the Latino voting age population.

[35] Data in this column is based on 2010 population within the districts established in 2001.

[36] Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[37] Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011), Appendix 3, Table 2, "Total Population – U.S. Census Bureau 2010 PL94, Table 2. DOJ Tabulation." [App. B].

[38] Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[39] Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011), Appendix 3, Table 3, "Total Voting Age Population – U.S. Census Bureau 2010 PL94, Table 4. DOJ Tabulation." [App. B].

[40] Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[41] Source: 2011_district_g10reg_latinosurname.xls [App. K].

10

The adoption of AD 32 does not have the purpose, or the effect, of diminishing the ability of any racial or language minority to elect candidates of their choice and is not retrogressive.

**B.    State Senate Districts 4, 12, 14, and 17**

    **1.    <u>Summary of State Senate Districts</u>**

As with the new Assembly Districts, the new State Senate Districts in Yuba, Kings, Merced, and Monterey Counties maintain or increase the voting power of Latinos. No county will experience any decrease in the Latino VAP.

Senate District 14 (formerly Senate District 16) is currently held by Latino incumbent Michael J. Rubio. Under the new lines, this district will experience an increase in Latino VAP. Therefore, the district will continue to be one in which Latinos are able to heavily influence or determine the election outcomes, and in which it is clear that under the new lines a cohesive Latino population could elect the candidate of their choice.

The new boundaries of Senate District 12, which includes Merced and Monterey Counties, also increase Latino VAP in that district. Under the new lines, Latinos comprise more than half of the voting age population in the district (59.14%), resulting in a greater opportunity for a cohesive Latino electorate to influence elections.

Senate District 4 in Yuba County and Senate District 17 in Monterey County do not have Latino populations sufficient in size to substantially influence election outcomes. Under the new lines, the Latino populations, VAP, and registration numbers increase. The demographics and population trends in these areas suggest the population has not increased to the level that Latino voters will influence election outcomes. Even with increases in the SD's VAP, the population's voting influence remains under 30%.

11

Overall, the new lines not only preserve but increase the voting power of Latinos in the covered jurisdictions. As is discussed below, they do so in a manner and by a process that was open, fair, and guided by traditional districting criteria and governing legal standards. The adoption of these new districts does not have the purpose, nor will it have the effect of diminishing the ability of Latinos to elect candidates of their choice and is not retrogressive.

Below, we briefly review the most pertinent statistics and provide a description of the composition of each district that contains a covered county.

## 2. **Yuba County – Senate District 4**

|  | 2001[42] | 2011 | Difference |
|---|---|---|---|
| Total Latino Population | 16.37%[43] | 19.73%[44] | +3.36% |
| Latino VAP | 13.41%[45] | 16.37%[46] | +2.96% |
| Latino Registration | 7.31%[47] | 9.31%[48] | +2.0% |

The new boundaries of Senate District 4 resulted from nesting Assembly Districts 3 and 8. SD 4 includes Tehama, Butte, Glenn, Colusa, Yuba, and Sutter Counties in their entireties, as

---

[42] Data in this column is based on 2010 population within the districts established in 2001.

[43] Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[44] Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011), Appendix 3, Table 2, "Total Population – U.S. Census Bureau 2010 PL94, Table 2. DOJ Tabulation [App. B].

[45] Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[46] Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011), Appendix 3, Table 3, "Total Voting Age Population – U.S. Census Bureau 2010 PL94, Table 4. DOJ Tabulation." [App. B].

[47] Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[48] Source: 2011_district_g10reg_latinosurname.xls [App. K].

12

21

well as a portion of northeast Sacramento County, including Roseville, which was added to achieve population equality. The blending of AD 3 and AD 8 allows the mostly agricultural and northern Central Valley communities to be reunited in a district without crossing into the mountains to the east. The newly drawn SD 4 also reflects interests in a Central Valley district that are primarily agricultural and rural.

The new boundaries for SD 4 resulted in increases in the Latino voting age population. The adoption of SD 4 does not have the purpose, or the effect, of diminishing the ability of any racial or language minority to elect candidates of their choice and is not retrogressive.

**3.    Merced and Monterey Counties – Senate District 12**

|  | 2001 (Dist. 12)[49] | 2011 | Difference |
|---|---|---|---|
| Total Latino Population | 59.14%[50] | 64.48%[51] | +5.34% |
| Latino VAP | 53.48%[52] | 59.14%[53] | +5.66% |
| Latino Registration | 37.80%[54] | 42.73%[55] | +4.93% |

[49]  Data in this column is based on 2010 population within the districts established in 2001.

[50]  Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[51]  Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011), Appendix 3, Table 2, "Total Population – U.S. Census Bureau 2010 PL94, Table 2. DOJ Tabulation."  [App. B].

[52]  Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[53]  Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011), Appendix 3, Table 3, "Total Voting Age Population – U.S. Census Bureau 2010 PL94, Table 4. DOJ Tabulation." [App. B].

[54]  Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[55]  Source: 2011_district_g10reg_latinosurname.xls  [App. K].

13

The new boundaries of Senate District 12 resulted from nesting Assembly Districts 21 and 30.  Senate District 12 contains Merced and San Benito Counties in their entireties, as well as parts of Fresno, Madera, Monterey, and Stanislaus Counties, including a portion of the city of Modesto, which was added to comply with Section 5.  Although this district crosses a coastal mountain range between the San Joaquin Valley and the west, this district is able to maintain a predominantly agricultural base on both sides of the mountains, thus linking the two areas together in a common interest.  In addition, many of the cities in this district run along the main transportation routes of I-5 and Highway 99.

The new boundaries for SD 12 resulted in increases in the Latino voting age population.  The adoption of SD 12 does not have the purpose, or the effect, of diminishing the ability of any racial or language minority to elect candidates of their choice and is not retrogressive.

### 4.    Kings County – Senate District 14

|  | 2001 (16th Dist.)[56] | 2011 | Difference |
|---|---|---|---|
| Total Latino Population | 70.88%[57] | 71.16%[58] | +0.28% |
| Latino VAP | 66.19%[59] | 66.27%[60] | +0.08% |
| Latino Registration | 51.51%[61] | 50.63%[62] | -0.88% |

[56] Data in this column is based on 2010 population within the districts established in 2001.

[57] Source: "vra mm stats 01 districts w 10 data.xls  [App. L].

[58] Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011), Appendix 3, Table 2, "Total Population – U.S. Census Bureau 2010 PL94, Table 2. DOJ Tabulation."  [App. B].

[59] Source: "vra mm stats 01 districts w 10 data.xls  [App. L].

[60] Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011), Appendix 3, Table 3, "Total Voting Age Population – U.S. Census Bureau 2010 PL94, Table 4. DOJ Tabulation." [App. B].

14

The new boundaries of Senate District 14 (formerly Senate District 16) resulted from nesting Assembly Districts 31 and 32. SD 14 contains all of Kings County, as well as parts of Fresno, Kern, and Tulare Counties. SD 14 contains the cities of Porterville, Hanford, Delano, Wasco, Corcoran, Lemoore, Sanger, Reedley, Selma, and Dinuba, all of which are located along the I-5 and Highway 99 transportation corridor. In addition, portions of the cities of Bakersfield and Fresno are included in order to satisfy Section 5.

The new boundaries for SD 14 resulted in increases in the Latino voting age population. The adoption of SD 14 does not have the purpose, or the effect, of diminishing the ability of any racial or language minority to elect candidates of their choice and is not retrogressive.

### 5.    Monterey County – Senate District 17

|  | 2001 (Dist. 15)[63] | 2011 | Difference |
|---|---|---|---|
| Total Latino Population | 30.85%[64] | 30.95%[65] | +0.01% |
| Latino VAP | 26.22%[66] | 26.28%[67] | +0.06% |
| Latino Registration | 13.79%[68] | 14.69%[69] | +0.9% |

---

[61]  Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[62]  Source: 2011_district_g10reg_latinosurname.xls  [App. K].

[63]  Data in this column is based on 2010 population within the districts established in 2001.

[64]  Source: "vra mm stats 01 districts w 10 data.xls  [App. L].

[65]  Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011), Appendix 3, Table 2, "Total Population – U.S. Census Bureau 2010 PL94, Table 2. DOJ Tabulation." [App. B].

[66]  Source: "vra mm stats 01 districts w 10 data.xls  [App. L].

[67]  Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011), Appendix 3, Table 3, "Total Voting Age Population – U.S. Census Bureau 2010 PL94, Table 4. DOJ Tabulation." [App. B].

[68]  Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

Senate District 17 (formerly Senate District 15) is the second of two districts containing

portions of Monterey County. SD 17 contains Santa Cruz and San Luis Obispo Counties in their

entireties, as well as portions of Monterey and Santa Clara Counties. The cities in SD 17 include

Santa Cruz, Watsonville, Gilroy, San Luis Obispo, Morgan Hill, Seaside, Paso Robles,

Atascadero, Monterey, and several other smaller cities. A small portion of San Jose was also

included to achieve population equality. The district links the western portion of Monterey

County with areas to the south in a primarily coastal district. Strongly shared interests within the

district include regional agricultural economies, coastal and open space preservation, and

environmental protection. The Monterey Bay coastline is fully contained within the district.

Additionally, the southern portion of the district includes a major portion of the Monterey Bay

National Marine Sanctuary, which extends to Cambria in San Luis Obispo County.

The new boundaries for SD 17 resulted in increases in the Latino voting age population.

The adoption of SD 17 does not have the purpose, or the effect, of diminishing the ability of any

racial or language minority to elect candidates of their choice and is not retrogressive.

**C.    Congressional Districts 3, 16, 20, and 21**

    **1.    <u>Summary of Congressional Districts</u>**

Under the Commission's redistricting plan, the Congressional Districts in Yuba, Kings,

Merced, and Monterey Counties maintain or increase the voting power of Latinos. No county

will experience any decrease in the Latino VAP.

---

[69] Source: 2011_district_g10reg_latinosurname.xls [App. K].

16

The new boundaries of Congressional District 16 (formerly Congressional District 18) increase Latino VAP from 47% to almost 53%. Therefore, Latinos will be able to heavily influence or determine election outcomes in this district.

The new boundaries of Congressional District 21 (formerly Congressional District 20) also increase Latino VAP in that district. Under the new lines, Latinos now comprise almost two-thirds of the voting age population in the district (65.85%), resulting in an even greater opportunity for a cohesive Latino electorate to influence elections than under the previous boundaries.

Under the new lines, the Latino population, Latino VAP, and Latino registration numbers also increase in the remaining Congressional Districts that include Section 5 counties: Congressional District 20 (Monterey coastline) and District 3 (Yuba County).

Overall, the new lines not only preserve but increase the voting power of Latinos in the covered jurisdictions. As is discussed below, they do so in a manner and by a process that was open, fair, and guided by traditional districting criteria and governing legal standards. The adoption of these new districts does not have the purpose, nor will it have the effect of diminishing the ability of Latinos to elect candidates of their choice and is not retrogressive.

Below, we briefly review the most pertinent statistics and provide a description of the composition of each district that contains a covered county.

17

2. **Yuba County – Congressional District 3**

|  | 2001 (Dist. 2)[70] | 2011 | Difference |
|---|---|---|---|
| Total Latino Population | 18.96%[71] | 27.78%[72] | +8.82% |
| Latino VAP | 15.48%[73] | 23.61%[74] | +8.13% |
| Latino Registration | 8.36%[75] | 14.59%[76] | +6.23% |

Congressional District 3 (formerly Congressional District 2) includes Sutter, Yuba, and Colusa Counties in their entireties, as well as large portions of Yolo, Solano, and Lake Counties. CD 3's primary economic community of interest is agriculture. Economically, it is also united by development along the I-80 corridor to the southwest and the transportation corridor along I-5 to the north. Significant communities of interest concerning the provision of public services exist between a number of cities within the district.

The new boundaries for CD 3 resulted in increases in the Latino voting age population. The adoption of CD 3 does not have the purpose, or the effect, of diminishing the ability of any racial or language minority to elect candidates of their choice and is not retrogressive.

---

[70] Data in this column is based on 2010 population within the districts established in 2001.

[71] Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[72] Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011), Appendix 3, Table 2, "Total Population – U.S. Census Bureau 2010 PL94, Table 2. DOJ Tabulation." [App. B].

[73] Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[74] Source: 2011_district_g10reg_latinosurname.xls [App. K].

[75] Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[76] Source: 2011_district_g10reg_latinosurname.xls [App. K].

18

### 3.    Merced County – Congressional District 16

|  | 2001 (18th Dist.)[77] | 2011 | Difference |
|---|---|---|---|
| Total Latino Population | 52.66%[78] | 58.10%[79] | +5.44% |
| Latino VAP | 47.23%[80] | 52.85%[81] | +5.62% |
| Latino Registration | 33.86%[82] | 38.41%[83] | +4.55% |

Congressional District 16 (formerly Congressional District 18) includes Merced County

and portions of Madera and Fresno Counties.  The western valley portion of Madera County is

included in this district, as well as many of the Highway 99 communities from Merced County

into the city of Fresno, such as Livingston, Atwater, Chowchilla, and the city of Madera.

Communities in this district share the common links of agriculture, water, and air issues, along

with serving as the main transportation routes connecting northern and southern California.  The

city of Fresno was split to achieve population equality and in consideration of Section 5.

The new boundaries for CD 16 resulted in increases in the Latino voting age population.

The adoption of CD 16 does not have the purpose, or the effect, of diminishing the ability of any

racial or language minority to elect candidates of their choice and is not retrogressive.

---

[77]  Data in this column is based on 2010 population within the districts established in 2001.

[78]  Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[79]  Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011),
Appendix 3, Table 2, "Total Population – U.S. Census Bureau 2010 PL94, Table 2. DOJ Tabulation."  [App. B].

[80]  Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[81]  Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011),
Appendix 3, Table 3, "Total Voting Age Population – U.S. Census Bureau 2010 PL94, Table 4. DOJ Tabulation."
[App. B].

[82]  Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[83]  Source: 2011_district_g10reg_latinosurname.xls  [App. K].

19

4.    **Monterey County – Congressional District 20**

|  | 2001 (17th Dist.)[84] | 2011 | Difference |
|---|---|---|---|
| Total Latino Population | 50.43%[85] | 50.65%[86] | +0.22% |
| Latino VAP | 44.16%[87] | 44.38%[88] | +0.22% |
| Latino Registration | 27.52%[89] | 27.53%[90] | +0.01% |

Congressional District 20 (formerly Congressional District 17) contains Monterey

County and San Benito County, as well as portions of Santa Cruz and Santa Clara Counties. The

cities in CD 20 include Salinas, Santa Cruz, Watsonville, Hollister, Seaside, Monterey, Soledad,

and several smaller cities. A small portion of the city of Gilroy was also included to achieve

population equality and fulfill the requirements of Section 5. The city of Santa Cruz is

maintained whole, except for an unpopulated area that is contained in CD 18. The district is

marked by several shared interests, including reliance on agriculture-based economies, interests

in open space and coastal preservation, and regional environmental concerns. The Monterey Bay

coastline (including part of the Monterey Bay National Marine Sanctuary) is fully contained in

CD 20.

---

[84] Data in this column is based on 2010 population within the districts established in 2001.

[85] Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[86] Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011), Appendix 3, Table 2, "Total Population – U.S. Census Bureau 2010 PL94, Table 2. DOJ Tabulation." [App. B].

[87] Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[88] Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011), Appendix 3, Table 3, "Total Voting Age Population – U.S. Census Bureau 2010 PL94, Table 4. DOJ Tabulation." [App. B].

[89] Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[90] Source: 2011_district_g10reg_latinosurname.xls [App. K].

20

The new boundaries for CD 20 resulted in increases in the Latino voting age population. The adoption of CD 20 does not have the purpose, or the effect, of diminishing the ability of any racial or language minority to elect candidates of their choice and is not retrogressive.

5.    **Kings County – Congressional District 21**

|  | 2001 (20th Dist.)[91] | 2011 | Difference |
|---|---|---|---|
| Total Latino Population | 70.36%[92] | 70.96%[93] | +0.60% |
| Latino VAP | 65.72%[94] | 65.85%[95] | +0.13% |
| Latino Registration | 51.90%[96] | 50.68%[97] | -1.22% |

Congressional District 21 (formerly Congressional District 20) includes all of Kings County and portions of Kern, Tulare, and Fresno Counties. The city of Bakersfield is split to achieve population equality and to meet Section 5 requirements. Cities along I-5 from Fresno County through Kern County are maintained along with many communities east of Highway 99. Communities in CD 21 share the common links of agriculture, water and air issues, along with containing a large portion of the main transportation routes connecting northern and southern California.

---

[91] Data in this column is based on 2010 population within the districts established in 2001.

[92] Source: *2001_districts_2010pl94_cvap_g10reg_latinosurname.xls* [App. L].

[93] Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011), Appendix 3, Table 2, "Total Population – U.S. Census Bureau 2010 PL94, Table 2. DOJ Tabulation." [App. B].

[94] Source: *2001_districts_2010pl94_cvap_g10reg_latinosurname.xls* [App. L].

[95] Source: *2011_district_g10reg_latinosurname.xls* [App. K].

[96] Source: *2001_districts_2010pl94_cvap_g10reg_latinosurname.xls* [App. L].

[97] Source: Q2 document, *20110727_q2_congressional_final_draft_stats_final.xls*. [App. K].

21

The new boundaries for CD 21 resulted in increases in the Latino voting age population. The adoption of CD 21 does not have the purpose, or the effect, of diminishing the ability of any racial or language minority to elect candidates of their choice and is not retrogressive.

**D.    Board of Equalization Districts 1 and 2**

    **1.    <u>Summary of Board of Equalization Districts</u>**

Under the Commission's redistricting plan, the Board of Equalization Districts that contain Yuba, Kings, Merced, and Monterey Counties maintain or increase the minority voting power.

Set forth below are the statistics most pertinent to Section 5 preclearance:

    **2.    <u>Kings, Merced, and Yuba Counties – District 1</u>**

|  | 2001[98] (District 2) | 2011 | Difference |
|---|---|---|---|
| Total Latino Population | 39.22%[99] | 39.16%[100] | -0.06% |
| Latino VAP | 34.34%[101] | 34.37%[102] | +0.03% |
| Latino Registration | 21.70%[103] | 21.82%[104] | +0.12% |

---

[98] Data in this column is based on 2010 population within the districts established in 2001.

[99] Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[100] Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011), Appendix 3, "Board of Equalization Districts" [App. B].

[101] Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[102] Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011), Appendix 3, "Board of Equalization Districts" [App. B].

[103] Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[104] Source: 2011_district_g10reg_latinosurname.xls [App. K].

22

Board of Equalization District 1 (formerly BOE District 2) is based on nesting SD 1, SD 4, SD 5, SD 6, SD 8, SD 12, SD 14, SD 16, SD 18, and SD 21 and consists of 28 whole inland counties from the Oregon border south, including Yuba, Merced, and Kings Counties. It also includes portions of Los Angeles County, including the Antelope, Santa Clarita, and East San Fernando Valleys, and most of San Bernardino County, including Victor and Pomona Valleys, Big Bear Mountain, and other sparsely populated areas that are included to achieve population equality.

The new boundaries for BOE District 1 resulted in increases in the Latino voting age population. BOE District 1 does not have the purpose, or the effect, of diminishing the ability of any racial or language minority to elect candidates of their choice and is not retrogressive.

3.    **Monterey County – District 2**

|  | 2001 (District 1) | 2011 | Difference |
|---|---|---|---|
| Total Latino Population | 26.05%[105] | 26.16%[106] | +0.11% |
| Latino VAP | 22.60%[107] | 22.68%[108] | +0.08% |
| Latino Registration | 13.69%[109] | 13.69%[110] | +/- 0.0% |

---

[105] Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[106] Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011), Appendix 3, "Board of Equalization Districts" [App. B].

[107] Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[108] Source: CITIZENS REDISTRICTING COMMISSION FINAL REPORT ON 2011 REDISTRICTING (Aug. 15, 2011), Appendix 3, "Board of Equalization Districts" [App. B].

[109] Source: 2001_districts_2010pl94_cvap_g10reg_latinosurname.xls [App. L].

[110] Source: 2011_district_g10reg_latinosurname.xls [App. K].

23

Board of Equalization District 2 (formerly BOE District 1) is based on nesting SD 2, SD

3, SD 7, SD 9, SD 10, SD 11, SD 13, SD 15, SD 17, and SD 19, and is a coastal district

composed of 23 whole counties from Del Norte to Santa Barbara, including Monterey County.

The new boundaries for BOE District 2 resulted in increases in the Latino voting age

population. BOE District 2 does not have the purpose, or the effect, of diminishing the ability of

any racial or language minority to elect candidates of their choice.

### III.
### USE OF ESTIMATES
### 28 C.F.R. § 51.26(b)

Estimates for voter registration data were obtained from the Statewide Database, the

redistricting database for the State of California, which is housed at Berkeley Law at the

University of California, Berkeley.[111] The Statewide Database was established in 1993 when the

California Legislature voted to permanently locate it in a nonpartisan environment.[112]

The redistricting database includes data on Latino registration and Asian registration that

are compiled by surname matching California's voter registration data.[113] The Spanish-surname

dictionary is published by the United States Census Bureau.[114] The Asian-surname dictionary is

---

[111] *See* Information about the Statewide Database, *available at* http://swdb.berkeley.edu/about.html (last visited Aug. 18, 2011).

[112] *See id.* The California Legislature selected the Institute of Governmental Studies for various reasons. "One reason is that Professor Bruce Cain, Director of the Institute and an expert on redistricting in California, was willing to handle the project as Principal Investigator. Secondly, the Institute's library is well known for its extensive collection of research materials on California policy and politics, and additionally is a repository for old redistricting maps and resources. Thirdly, the location at the University of California assures open access to the public, and places the database in an environment that welcomes academic input, which in turn is a benefit to the project." *Id.*

[113] *See* Kenneth F. McCue, Creating California's Official Redistricting Database (August 2011), available at http://swdb.berkeley.edu/d10/Creating%20CA%20Official%20Redistricting%20Database.pdf (last visited Sept. 14, 2011).

[114] *See* Passel-Word (PW) Spanish surname list (documented at http://www.census.gov/population/www/documentation/twps0004.html).

24

the product of research conducted and published by Diane S. Lauderdale, a researcher at the

Department of Health Studies at the University of Chicago, and Bert Kestenbaum, a researcher

with the United States Social Security Administration.[115] The Asian-surname list is based upon

Social Security Administration records that include country of birth, and was verified using an

independent file of census records.[116] Unlike Southern states, where voter registrants self-

identify by race, California voter registration does not include racial or ethnic identification. The

redistricting database also contains block-level registration data that were created by geo-coding

California's individual level registration file to Census blocks.[117]

## IV.
## RESPONSIBILITY FOR REDISTRICTING
## 28 C.F.R. § 51.27(g)-(l)

In November 2008, California voters approved Proposition 11 and enacted the Voters

First Act (the "Act") to shift the responsibility for drawing Assembly, Senate, and Board of

Equalization districts to an independent Commission. In November 2010, the voters approved

Proposition 20 and amended the Act to include Congressional redistricting within the

Commission's mandates. The Act amended article XXI of the California Constitution to set out

the Commission's duties and the criteria it is required to use in drawing electoral districts.

---

[115] *See* Diane S. Lauderdale & Bert Kestenbaum, "Asian American ethic identification by surname," 19 Population Research and Policy Review 283 (2000).

[116] *Id.*

[117] *See, generally*, Kenneth F. McCue, Creating California's Official Redistricting Database (*available at* http://swdb.berkeley.edu/d10/Creating%20CA%20Official%20Redistricting%20Database.pdf). Dr. McCue is a research scientist at the California Institute of Technology and President of PacTech Data and Research. He holds a Ph.D from the California Institute of Technology, a Master's degree in Mathematics with an emphasis in Statistics from the University of Kansas, and has published articles in statistical journals on aggregate voting analysis. *See, e.g.*, Kenneth F. McCue, The Statistical Foundations of the EI Method, 55 (2) THE AMERICAN STATISTICIAN 106 (2001).

25

Article XXI, section 1, provides that in the year following the year in which the national Census is taken, the Commission "shall adjust the boundary lines of the congressional, State Senatorial, Assembly and Board of Equalization districts (also known as 'redistricting') in conformance with the standards and process set forth in Section 2." Cal. Const., art. XXI, § 1.[118]

Section 2 of Article XXI, in turn, provides that the Commission shall "(1) conduct an open and transparent process enabling full public consideration of and comment on the drawing of district lines; (2) draw district lines according to the redistricting criteria specified in this article; and (3) conduct themselves with integrity and fairness." Cal. Const., art. XXI, § 2(b).

Section 2 of Article XXI also establishes six specific criteria that the Commission must consider in drawing the new district maps. Specifically, subdivision (d) provides as follows:

The commission shall establish single-member districts for the Senate, Assembly, Congress, and State Board of Equalization pursuant to a mapping process using the following criteria as set forth in the following order of priority:

(1)    Districts shall comply with the United States Constitution. Congressional districts shall achieve population equality as nearly as is practicable, and Senatorial, Assembly, and State Board of Equalization districts shall have reasonably equal population with other districts for the same office, except where deviation is required to comply with the federal Voting Rights Act or allowable by law.

(2)    Districts shall comply with the federal Voting Rights Act . . . .

(3)    Districts shall be geographically contiguous.

---

[118] A copy of relevant portions of the California Constitution is provided in Appendix A to this Submission.

(4)     The geographic integrity of any city, county, city and county, local

neighborhood, or local community of interest shall be respected in a manner that

minimizes their division to the extent possible without violating the requirements

of any of the preceding subdivisions.  A community of interest is a contiguous

population which shares common social and economic interests that should be

included within a single district for purposes of its effective and fair

representation.  Examples of such shared interests are those common to an urban

area, a rural area, an industrial area, or an agricultural area, and those common to

areas in which the people share similar living standards, use the same

transportation facilities, have similar work opportunities, or have access to the

same media of communication relevant to the election process. Communities of

interest shall not include relationships with political parties, incumbents, or

political candidates.

(5)     To the extent practicable, and where this does not conflict with the

criteria above, districts shall be drawn to encourage geographical compactness

such that nearby areas of population are not bypassed for more distant population.

(6)     To the extent practicable, and where this does not conflict with the

criteria above, each Senate district shall be comprised of two whole, complete,

and adjacent Assembly districts, and each Board of Equalization district shall be

comprised of 10 whole, complete, and adjacent Senate districts.

Cal. Const., art. XXI, § 2(d).

Article XXI further states that the "place of residence of any incumbent or political

candidate shall not be considered in the creation of a map.  Districts shall not be drawn for the

27

**36**

purpose of favoring or discriminating against an incumbent, political candidate, or political

party." Cal. Const., art. XXI, § 2(e).

Finally, Article XXI provides that "[d]istricts for the Congress, Senate, Assembly, and

State Board of Equalization shall be numbered consecutively commencing at the northern

boundary of the State and ending at the southern boundary." Cal. Const., art. XXI, § 2(f).

The Act amended article XXI section 2(b) of the California Constitution to provide that

the Commission "conduct an open and transparent process enabling full public consideration of

and comment on the drawing of district lines." In addition, the Act required the Commission to

"establish and implement an open hearing process for public input and deliberation" and to

conduct an "outreach program to solicit broad public participation in the redistricting public

review process." Cal. Gov. Code § 8253(a)(7).

To fulfill these requirements, the Commission did the following:

- The Commission solicited testimony through significant public outreach that included
  mainstream and ethnic media, the Commission's website, social media, and through
  organizations such as the California Chamber of Commerce, Common Cause, the League
  of Women Voters, the Mexican American Legal Defense and Educational Fund, the
  National Association of Latino Elected and Appointed Officials, the Asian Pacific
  American Legal Center, California Forward, the Greenlining Institute and the National
  Association for the Advancement of Colored People. The Commission also distributed
  its educational materials in English and six other languages (Spanish, Chinese, Japanese,
  Korean, Tagalog, and Vietnamese), and accepted testimony in any form or language in
  which the information was submitted. This included information over the telephone, by
  e-mail, fax, petitions, hand-drawn maps, and in-person public testimony.

- During the course of the redistricting process, which began after the full Commission was
  sworn in during the month of January 2011, the Commission held more than 70 business

28

37

meetings and 34 public input hearings that were scheduled throughout California. The Commission held meetings in 32 cities, in 23 counties. Meetings were carefully designed to be at times and locations that were convenient for average citizens to participate.

- At each business meeting, the Commission regularly allowed an opportunity for public input and comment.

- More than 2,700 speakers appeared at the public input hearings and presented testimony about their communities and regions.

- Ultimately, the Commission received more than 2,000 written submissions containing testimony and maps reflecting proposed statewide, regional, or other districts. Some private individuals and organized groups submitted detailed electronic data files along with their proposed maps at input hearings and business meetings.

- The Commission's staff also received written comments from more than 20,000 individuals and groups containing information about their communities, shared interests, backgrounds, histories, and suggested guidelines for district boundaries, as well as recommendations to the Commission on the overall process of redistricting.

- The Commission held 23 public input hearings around the state before it issued a set of draft maps on June 10, 2011. Following a five-day public review period, the Commission held 11 more public input hearings around the state to collect reactions and comments about the initial draft maps.

- Beginning in June 2011, the Commission's meetings were held at the University of the Pacific McGeorge School of Law in Sacramento. The Commission held six meetings in June and 16 meetings during July at this location, and continued to receive extensive public input via written submissions, e-mail, and live public comment. At each of its meetings the Commission allowed for public participation and comment. During the

29

June and July meetings more than 276 people appeared and offered public comments to the Commission, various groups regularly attended and monitored the deliberations, and individuals and groups continued to offer written comments, maps, and suggestions.

- All of the Commission's public meetings were live-streamed over the Internet, captured on video, and placed on the Commission's website for public viewing at any time. Stenographers were present at the Commission business meetings and meetings where instructions were provided to Q2 Data & Research, LLC, the company retained to implement the Commission's directions and to draw the draft districts and final maps. Transcripts of the meetings were also placed on the Commission's website. Finally, all of the completed documents prepared by the Commission and its staff, along with all documents presented to the Commission by the public and suitable for posting were posted to the Commission's website for public review.

On August 15, 2011, the final Maps were approved and certified to the California Secretary of State. *See* Appendix B [State of California Citizens Redistricting Commission Final Report on 2011 Redistricting]. The new boundaries have not yet been enforced or administered. The new boundaries will first be used in the June 5, 2012 statewide primary election.

## V.
## STATEMENT OF PAST OR PENDING LITIGATION
### 28 C.F.R. § 51.27(o)

On September 15, 2011, a petition captioned *Vandermost v. Bowen* (case no. S196493) was filed in the California Supreme Court. Petitioner Julie Vandermost challenged the 2011 redistricting plans for the California State Senate.

30

On September 29, 2011, a petition captioned *Radanovich, et al. v. Bowen* (case no.

S196852) was filed in the California Supreme Court. Petitioners Radanovich, Patrick, Navarro,

and Phan challenged the 2011 redistricting plans for Congressional districts.

On October 26, 2011, the California Supreme Court summarily denied both the

*Vandermost* and *Radanovich* petitions, and both cases have been closed. Other than *Vandermost*

*v. Bowen* and *Radanovich, et al. v. Bowen*, as of the date of this submission, there is no other past

or pending litigation concerning the 2011 redistricting plans for the California Assembly, State

Senate, United States Congress, or the Board of Equalization.

## VI.
## PRECLEARANCE OF PRIOR PRACTICE
## 28 C.F.R. § 51.27(p)

On November 30, 2001, the Department of Justice announced that it had no objection to

California's 2001 redistricting plans for the California Senate, Assembly, Board of Equalization

and United States Congress, which are currently in effect.

Since 2001, the voters in California have changed the procedure for establishing

redistricting plans, as explained in Sections I and IV of this submission.

## VII.
## PUBLICITY AND PARTICIPATION
## 28 C.F.R. § 51.28(f)

In November 2008, California voters approved Proposition 11, the Voters First Act,

which amends article XXI section 2(b) of the California Constitution and authorizes the creation

of the new 14-member Citizens Redistricting Commission. The Voters First Act, which

amended article XXI section 2(b) of the California Constitution to authorize the creation of the

Commission, requires that the Commission "conduct an open and transparent process enabling

31

**40**

full public consideration of and comment on the drawing of the district lines." Cal. Const., art. XXI, § 2(b). In addition, the Act required the Commission to "establish and implement an open hearing process for public input and deliberation" and to conduct an "outreach program to solicit broad public participation in the redistricting public review process." Cal. Gov. Code § 8253, subd. (a)(7). The Commission took this obligation seriously, and made considerable efforts to ensure compliance by creating an open and extensive public hearing and input process.

The Commission solicited testimony through significant public outreach that included mainstream and ethnic media, the Commission's website, social media, and through various organizations. Materials were distributed in English, Spanish, Chinese, Japanese, Korean, Tagalog and Vietnamese. Testimony was accepted in any form or language, including information provided over the telephone, by e-mail, through petitions, and in-person public testimony.

From January of 2011, the Commission held more than 70 business meetings and 34 public input hearings that were scheduled throughout the state of California. The Commission held meetings in 32 cities in 23 counties in the state. Meetings were carefully designed to be at times and locations that were convenient for average citizens to participate: most meetings were held during the early evening hours, usually at a government or school location in the center of a community. The Commission frequently extended the hours of its input hearings, allowing many meetings to go several hours beyond the scheduled adjournment where venues permitted. Furthermore, at each business meeting, the Commission regularly allowed for an opportunity for public input and comment.

32

**41**

More than 2,700 different individuals spoke at the public input hearings and presented testimony about their communities and regions. For example, during an April 28, 2011 meeting in Los Angeles, over 180 individuals attended and offered input. At a meeting in Culver City, more than 250 people attended. That meeting was held open until 11:15 p.m. to allow as many speakers as possible to participate.

The Commission received more than 2,000 written submissions containing testimony and maps reflecting proposed statewide, regional or other district lines. Some private individuals and organized groups submitted detailed electronic data files along with their proposed maps. Representative groups that submitted testimony and/or proposed maps are listed in Section XI of this submission. The Commission's staff received over 20,000 written comments from individuals and groups, input and suggestions about their communities, shared interests, backgrounds, histories and suggested guidelines for district boundaries.

The Commission held 23 public input hearings around the state before it issued a set of draft maps on June 10, 2011. Following a five-day public review period, the Commission held an additional 11 public input hearings around the state to collect reactions and comments about the initial draft maps. A calendar indicating the dates and locations of each of these meetings is attached as Appendix O.

Beginning in June of 2011, the Commission's meetings were held at the University of the Pacific McGeorge School of Law in Sacramento. The Commission held six meetings in June and 16 meetings in July at this location, and continued to receive extensive public input via written submissions, e-mail and live public comment. At each meeting, the Commission allowed

33

**42**

for public participation and comment. More than 276 individuals appeared and offered public

comments to the Commission. Various groups regularly attended and monitored the

deliberations, and individuals and groups continued to offer written comments, maps and

suggestions.

Finally, for those who were unable to attend meetings in person, the Commission

broadcast every public meeting over the Internet, and then posted recordings of the meetings on

the Commission's website. Stenographers were present at the Commission's business meetings

and any meetings where instructions were provided to Q2 Data & Research, LLC, the company

retained to implement the Commission's directions and to draw the draft districts and final maps.

Transcripts of these meetings were placed on the Commission's website. Every completed

document prepared by the Commission and its staff, along with every document presented to the

Commission by the public and suitable for posting were posted to the Commission's website for

public review.

## VIII.
## AVAILABILITY OF THE SUBMISSION
## 28 C.F.R. § 51.28(g)

A duplicate copy of this submission (including all appendices and the electronic data) is

being made available in each covered jurisdiction at the following offices of the respective

county's elections department:

Kings
Office of the County Clerk/Recorder
1400 W. Lacey Boulevard
Hanford, California 93230

Merced
Office of the Clerk/Registrar of Voters
2222 M Street, Room 14
Merced, California 95340

34

Monterey
Monterey County Elections Department
1370 B South Main Street
Salinas, California 93902

Yuba
Yuba County Clerk/Recorder
915 8th Street, Suite 107
Marysville, California 95901

The public notice announcing the submission of the redistricting plan to the United States

Attorney General, informing the public that a duplicate copy is being made available for inspection

at the county election offices listed above, providing that electronic data may be copied, and

inviting comment to the United States Attorney General is included as Appendix S. This notice is

being mailed for posting in public libraries, post offices and city halls throughout each of the

covered counties. The public notice and this submission are also being posted on the

Commission's website.

## IX.
## MINORITY GROUP CONTACTS
## 28 C.F.R. § 51.28(h)

Various minority groups testified at the public hearings and provided written submissions

to the Committee. The separately bound volumes with materials relating to publicity and public

participation include copies of business cards from many of these individuals and organizations.

The following provides contact information for individuals from those minority group

organizations in or near the covered counties who testified at the public hearings. It also

provides contact information for groups that offered statewide testimony regarding minority

group concerns.

**African American Redistricting Coalition**
Contact: Erica Teasley
8101 South Vermont Ave.
Los Angeles, CA 90044
323-629-3505
aarc@cocosouthla.org
http://www.cocosouthla.org

35

**Armenian National Committee of America: Western Region**
Contact: Garen Yegparian
104 N Belmont, Suite 200
Glendale, CA 91206
818-500-1918
admin@ancawr.org
http://www.anca.org

**Asian Pacific Americal Legal Center**
Contact: Eugene Lee
Elee@apalc.org
1145 Wilshire Blvd, 2nd Floor
Los Angeles, CA 90017

**Black Farmers and Agriculturalist Association**
Contact: William Boyer, Boyer and Associates
5400 San Francisco Boulevard
Sacramento, CA 95820
916-454-6061

Contact: Helen Hewitt, Project Manager
916-798-3646

P.O. Box 61
Tillery, NC 27887
252-826-2800
252-826-3244 (Fax)
info@bfaa-us.org
http://www.bfaa-us.org

**California Conservative Action Group**
Contact: David Salaverry
P.O. Box 9404
Albany, CA 94706
david@fairthelines.org
http://www.fairthelines.org

36

**California League of Conservation Voters**
Contact: H. Eric Shockman, Ph.D
6310 San Vincent Blvd, Suite 425
Los Angeles, CA  90048
323-939-6790
323-939-6791 (Fax)
310-403-2775 (Cell)

350 Frank H. Ogawa Plaza, Suite 1100
Oakland, CA  94612
510-271-0900
510-271-0901 (Fax)

http://www.ecovote.org

**Central Coastal Alliance United for a Sustainable Economy**
Contact: Maricela Morales, Deputy Executive Director
2021 Sperry Ave. #18
Ventura, CA  93003
805-658-0810
805-658-0820 (Fax)
maricela@coastalalliance.com
http://www.coastalalliance.com

**Chinese American Citizens Alliance**
Contact: John Y. Wong, Grand Vice President
1044 Stockton Street
San Francisco, CA  94108
323-222-2200
info@cacanational.org
http://www.cacanational.org

**Coalition of Asian Pacific Americans for Fair Redistricting**
Contact: Eugene Lee
1145 Wilshire Boulevard
Los Angeles, CA  90017
213-977-7500
Elee@apalc.org
http://www.capafr.org

37

**Coalition of Suburban Communities for Fair Representation**
Contact: Scott Thomas Wilk
Anchoring Consulting, LLC
5101 Cherokee Avenue
Alexandria, VA 22312
661-964-7905 (cell)
661-263-8943 (direct)
703-333-6013 (office)
swilk@anchor-consult.com
information@suburbancommunities.org
http://www.suburbancommunities.org

**Council of Black Political Organizations**
Contact: Dr. Valerie H. Little
vhlittle@gmail.com
213-819-1808
DrHorne@COBPO.ORG
http://www.cobpo.org

**East San Fernando Valley Redistricting Coalition**
Contact: Ruben Rodriquez
1024 N. MaClay Ave., M-13
San Fernando, CA 91340

5121 Van Nuys Blvd, Suite 203
Sherman Oaks, CA 91403
818-817-0545
http://redistrictingpartners.com/wearesfv

**Equality California**
Contact: Mario Guerrero, Government Affairs Director
Capitol Office
1127 11th St., Suite 208
Sacramento, CA 95814
916-554-7681 (office)
916-471-8100 (cell)

2370 Market Street, 2nd Floor
San Francisco, CA 94114
415-581-0005
415-581-0805 (Fax)
http://www.eqca.org

38

**Latino Policy Forum**
Contact: Antonio Amador
2062 Henderson Way
Lodi, CA 95242
209-662-3800

Contact: Tim Snipes
timjsnipes@gmail.com

180 North Michigan Avenue, Suite 1250
Chicago, IL 60601
312-376-1766
312-376-1760 (Fax)
info@latinopolicyforum.org
http://www.latinopolicyforum.org

**League of Women Voters**
Contact: Trudy Schafer, Senior Director for Program
1107 Ninth Street, suite 300
Sacramento, CA 95814
916-442-7215
916-442-7362 (Fax)
916-705-1090 (cell)
tschafer@lwvc.org
lwvc@lwvc.org
http://ca.lwv.org

**Mexican American Legal Defense and Educational Fund**
Contact: Steven A. Ochoa, National Redistricting Coordinator
634 S. Spring Street
Los Angeles, CA 90014
213-629-2512 ext. 130
http://www.maldef.org

39

**National Association for the Advancement of Colored People**
Contact: Samuel Walton
916-201-1383
Notlaw2999@aol.com

4805 Mt. Hope Drive
Baltimore, MD 21215
410-580-5777
http://www.naacp.org

Sacramento Branch:
P.O. Box 188231
Sacramento, CA 95818
916-447-8629
http://www.sacnaacp.org

**People's Advocate**
Contact: Tim Snipes
3407 Arden Way
Sacramento, CA 95825
916-482-6175
916-482-2045 (Fax)
timjsnipes@gmail.com
http://www.peoplesadvocate.org

**Sierra Club**
Contact: Linda Zablotny Hurst, Deputy Director
801 K Street, Suite 2700
Sacramento, CA 95814
916-557-1100, ext. 120
916-557-9669 (Fax)
Linda.Zablotny-Hurst@SierraClub.org
http://sierraclubcalifornia.org

**Silicon Valley Leadership Group**
Contact: Brian Brennan, Senior Director-Member Services
408-453-4752
BBrennan@svlg.org
2001 Gateway Place, Suite 101E
San Jose, CA 95110
408-501-7864
408-501-7861 (Fax)
http://svlg.org

40

**United Latinos Vote**
Contact: Robert J. Apodaca
1111 Broadway, Floor 24
Oakland, CA 94607
510-708-4400
Robert.apodaca@gmail.com

**Valley Industry and Commerce Association**
Contact: Stuart Waldman, Esq., President
5121 Van Nuys Blvd, Suite 203
Sherman Oaks, CA 91403
818-817-0545
818-907-7934 (Fax)
stuart@vica.com
http://www.vica.com

**WARD Economic Development Corp.**
Contact: Jacquelyn Dupont-Walker, President
P.O. Box 7391
Los Angeles, CA 90007
213-747-1188
213-747-1975 (Fax)
jdupontw@aol.com
http://www.ward-edc.org

## X.
## NAME OF SUBMITTING AUTHORITY AND CONTACT
## 28 C.F.R. § 51.27(d) and (e)

This submission is made by the California Attorney General, the chief legal officer of the State and Kirk E. Miller, Chief Counsel for the Citizens Redistricting Commission. The submission was prepared by Gibson, Dunn & Crutcher LLP, counsel to the Citizens Redistricting Commission. Inquiries may be directed to the following:

George H. Brown or Sarah B. Hadjimarkos
Gibson, Dunn & Crutcher LLP
1881 Page Mill Road
Palo Alto, CA 94304
(650) 849-5300 (telephone)
(650) 849-5333 (fax)
gbrown@gibsondunn.com
shadjimarkos@gibsondunn.com

41

Kirk E. Miller
Chief Counsel California Citizens' Redistricting Commission
901 P Street, Suite 154-A
Sacramento, CA 95814
fax: (916) 651-5711
email: kirk.miller@crc.ca.gov

# XI.
## SUPPLEMENTAL MATERIALS

Pursuant to 28 C.F.R. § 51.27 and § 51.28, the following Appendices of supplemental

materials have been included as part of this submission:

| APPENDIX | MATERIALS | APPLICABLE REGULATION |
|---|---|---|
| A | Statutory Authority for Redistricting Process [Calif. Const. art. XXI, §§ 1-2 (amended 2008).] | 28 C.F.R. § 51.27(a) |
| B | Citizens Redistricting Report on 2011 Redistricting | 28 C.F.R. § 51.28(b) |
| C | 2011 Certified Maps of California Assembly Districts | 28 C.F.R. § 51.28(b) |
| D | 2011 Certified Maps of California State Senate Districts | 28 C.F.R. § 51.28(b) |
| E | 2011 Certified Maps of California Congressional Districts | 28 C.F.R. § 51.28(b) |
| F | 2011 Certified Maps of California Board of Equalization Districts | 28 C.F.R. § 51.28(b) |
| G | 2001 Maps of California Assembly Districts | 28 C.F.R. § 51.28(b) |
| H | 2001 Maps of California State Senate Districts | 28 C.F.R. § 51.28(b) |
| I | 2001 Maps of California Congressional Districts | 28 C.F.R. § 51.28(b) |
| J | 2001 Maps of California Board of Equalization Districts | 28 C.F.R. § 51.28(b) |
| K | Demographic Information for 2011 Certified Maps of California Assembly Districts, California State Senate Districts, California Congressional Districts, and California Board of Equalization Districts<br><br>Includes:<br>county stats w 10 data.xls<br>20110727_q2_assembly_final_draft_stats_final.xls<br>20110727_q2_senate_final_draft_stats_final.xls<br>20110727_q2_congressional_final_draft_stats_final.xls<br>20110727_q2_boe_final_draft_stats_final.xls<br><br>*All data in these files derived from 2010 PL94 data.* | 28 C.F.R. § 51.28(a) |

42

| L | Demographic Information for 2001 Maps of California Assembly Districts, California State Senate Districts, California Congressional Districts, and California Board of Equalization Districts<br><br>Includes:<br>2001_districts_2010pl94_cvap_g10reg_latinosurname.xls<br><br>*All data in these files derived from 2010 PL94 data.* | 28 C.F.R. § 51.28(a) |
|---|---|---|
| M | Copies of newspaper articles discussing the proposed change | 28 C.F.R. § 51.28(f)(1) |
| N | Copies of public notices describing proposals and inviting public comment | 28 C.F.R. § 51.28(f)(2) |
| O | Calendar of dates and locations of each Commission meeting | 28 C.F.R. § 51.28(f)(2) |
| P | Minutes and transcripts of public hearings | 28 C.F.R. § 51.28(f)(3) |
| Q | Statements, speeches and other public communications concerning the proposed changes, including submissions by individuals and groups.<br><br>The documents are organized chronologically by month. In some instances, the months are subdivided by Region. The Commission divided the state into 9 regions, the most relevant of which are Region 6 (Kings County and Merced County), Region 7 (Monterey County), and Region 9 (Yuba County).<br><br>To the extent public speeches were recorded only by video, those speeches are available on the Commission's website at http://wedrawthelines.ca.gov/viewer.html. | 28 C.F.R. § 51.28(f)(4),(5) |
| R | Public notice of availability of Preclearance Submission | 28 C.F.R. § 51.28(g) |

43

## CONCLUSION

The Assembly, Senate, Congressional and Board of Equalization Districts enacted as set out in the Commission's Report comport with all of the requirements of Section 5 of the Voting Rights Act. Preclearance should therefore be granted as soon as possible.

Dated: 11/15/11

Respectfully submitted,

OFFICE OF THE ATTORNEY GENERAL
CALIFORNIA DEPARTMENT OF JUSTICE
Kamala D. Harris, Attorney General
Rochelle East, Chief Deputy Attorney General
Brian Nelson, Special Assistant Attorney General

_____
Brian Nelson

CITIZENS REDISTRICTING COMMISSION
Stanley Forbes, Chairperson

_____
Stanley Forbes

CITIZENS REDISTRICTING COMMISSION
Kirk E. Miller, Chief Counsel

_____
Kirk E. Miller

44

Page 1 of 1

From: (650) 849-5347   Origin ID: PAOA
Monean Sawyier
Gibson Dunn & Crutcher LLP
1881 Page Mill Road
Palo Alto, CA 94304





J112011080050225

Ship Date: 15NOV11
ActWgt: 0.5 LB
CAD: 2885272/INET3210

Delivery Address Bar Code

Ref #    20470-00002
Invoice #
PO #
Dept #

SHIP TO: (800) 253-3931   BILL SENDER
**Chief, Voting Section**
**Department of Justice**
**1800 G ST NW**
**CIVIL RIGHTS DIVISION - RM 7254-NWB**
**WASHINGTON, DC 20006**

**WED - 16 NOV  A1**
PRIORITY OVERNIGHT

TRK#  **7954 1142 0022**
0201

**XC BZSA**

**20006**
DC-US

**DCA**



50FG1/8C50/F5F4

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic valueof the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

https://www.fedex.com/shipping/html/en//PrintIFrame.html     11/15/2011

# EXHIBIT 2



**U. S. Department of Justice**

Civil Rights Division

---

*Office of the Assistant Attorney General*                    *Washington, D.C. 20530*

JAN 1 7 2012

The Honorable Kamala D. Harris
Attorney General
P.O. Box 944255
Sacramento, California  94244-2550

George H. Brown, Esq.
Gibson, Dunn & Crutcher
1881 Page Mill Road
Palo Alto, California  94304-1211

Dear Attorney General Harris and Mr. Brown:

    This refers to the 2011 redistricting plans for the California congressional delegation, Senate, Assembly and Board of Equalization, for the State of California, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act of 1965, 42 U.S.C. 1973c. We received your submission on November 16, 2011; additional information was received through December 30, 2011.

    The Attorney General does not interpose any objection to the specified changes. However, we note that Section 5 expressly provides that the failure of the Attorney General to object does not bar subsequent litigation to enjoin the enforcement of the changes.  Procedures for the Administration of Section 5 of the Voting Rights Act of 1965, 28 C.F.R. 51.41.

                    Sincerely

                    Thomas E. Perez
                    Assistant Attorney General