**ARNOLD & PORTER KAYE SCHOLER LLP**
SEAN O. MORRIS (SBN 200368)
Sean.Morris@arnoldporter.com
777 South Figueroa Street
44th Floor
Los Angeles, CA  90017
T: (213) 243-4000
F: (213) 243-4199

JOHN A. FREEDMAN*
John.Freedman@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC  20001
T: (202) 942-5000
F: (202) 942-5999

**DEMOCRACY DEFENDERS ACTION**
NORMAN L. EISEN*
TIANNA MAYS*
SOFIA FERNANDEZ GOLD*
JACOB KOVACS-GOODMAN*
norman@democracydefenders.org
tianna@democracydefenders.org
sofia@democracydefenders.org
jacob@democracydefenders.org
600 Pennsylvania Ave SE, Unit 15180
Washington, DC 20003
T: (202) 594-9958

**JUSTICE LEGAL STRATEGIES PLLC**
JON M. GREENBAUM (SBN 166733)
jgreenbaum@justicels.com
P.O. Box 27015
Washington, DC 20038
T: (202) 601-8678

*Counsel for Proposed Intervenor-Defendant*
*League of United Latin American Citizens*

*Application for admission pro hac vice forthcoming*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID TANGIPA. *et al*.,<br><br>Plaintiffs,<br><br><br>v.<br><br><br>GAVIN NEWSOM, *et al*.,<br><br><br>Defendants,<br>and<br>LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC),<br><br>Intervenor-Defendant. | Case No. 2:25-cv-10616-JLS-WLH-KKL<br><br>**MEMORANDUM AND POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT-INTERVENOR LEAGUE OF UNITED LATIN AMERICAN CITIZENS RULE 24 MOTION TO INTERVENE**<br><br>Hon. Josephine L. Staton<br>Hon. Wesley L. Hsu<br>Hon. Kenneth K. Lee<br><br>Hearing Date:  December 3, 2025<br>Time:          TBD<br>Courtroom:      TBD |

# TABLE OF CONTENTS

**Page**

DESCRIPTION OF APPLICANT FOR INTERVENTION.........................................4

ARGUMENT ..........................................................................................................5

I.      The Court Should Grant Intervention as of Right under Rule 24(a)(2) ..............5

        a.      Applicant's Motion is Timely ......................................................6

        b.      Applicant Has a Significantly Protectable Interest in the Underlying
                Litigation ......................................................................................8

        c.      The Disposition of this Action Could Impair Applicant's Interests .......11

        d.      The Existing Parties Do Not Adequately Represent the Interests of
                Applicant .....................................................................................12

II.     Alternatively, the Court Should Grant Permissive Intervention under Rule
        24(b)(1)(B)...........................................................................................15

CONCLUSION......................................................................................................16

MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT-INTERVENOR LULAC IN SUPPORT OF
RULE 24 MOTION TO INTERVENE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Perez*,
  585 U.S. 579 (2018)....................................................................................1

*Anderson v. Celebrezze*,
  460 U.S. 780 (1983).................................................................................11

*Arakaki v. Cayetano*,
  324 F.3d 1078 (9th Cir.2003) .................................................................13

*Bellitto v. Snipes*,
  No. 0:16-cv-61474, 2016 WL 5118568 (S.D. Fla. Sep. 21, 2016) ......9

*Busbee v. Smith*,
  549 F. Supp. 494 (D.D.C. 1982)...............................................................9

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*,
  152 F.3d 1184 (9th Cir. 1998) ................................................................14

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
  647 F.3d 893 (9th Cir. 2011) ...........................................8, 11, 13, 14

*City of Lockhart v. United States*,
  460 U.S. 125 (1983)....................................................................................9

*City of Petersburg, Va. v. United States*,
  354 F. Supp. 1021 (D.D.C. 1972)............................................................9

*City of Port Arthur, Texas v. United States*,
  517 F. Supp. 987 (D.D.C. 1981)...............................................................9

*Commonwealth of Va. v. United States*,
  386 F. Supp. 1319 (D.D.C. 1974).............................................................9

*Donnelly v. Glickman*,
  159 F.3d 405 (9th Cir. 1998) ...................................................................8

*Forrest Conservation Council v. U.S. Forrest Serv.*,
  66 F.3d 1489 (9th Cir. 1995) ..................................................................13

MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT-INTERVENOR LULAC IN SUPPORT OF
RULE 24 MOTION TO INTERVENE

*Georgia v. Ashcroft,*
    539 U.S. 461 (2003) ........................................................................... 8

*Higginson v. Becerra,*
    726 Fed. Appx. 640 (9th Cir. 2018) ................................................ 1

*Higginson v. Becerra,*
    733 Fed. Appx. 402 (Mem.) (9th Cir. 2008) ................................ 9

*Idaho Farm Bureau Fed'n v. Babbitt,*
    58 F.3d 1392 (9th Cir. 1995) ........................................................... 8

*Johnson v. Mortham,*
    915 F. Supp. 1529 (N.D. Fla. 1995) .............................................. 9

*Johnson v. San Francisco Unified School District,*
    500 F.2d 349 (9th Cir. 1974) .................................................. 13, 14

*King v. Ill. State Bd. of Elections,*
    410 F.3d 404 (7th Cir. 2005) ........................................................... 9

*Kobach v U.S. Election Assistance Comm'n,*
    2013 WL 6511874 (D. Kan. Dec. 12, 2013) ................................ 9

*LULAC Council No. 4434 v. Clements,*
    999 F.2d 831 (5th Cir. 1993) ........................................................... 1

*LULAC of Texas v. Texas Democratic Party,*
    651 F. Supp. 2d 700 (W.D. Tex. 2009) ........................................ 4

*LULAC v. Perry,*
    548 U.S. 399 (2006) ........................................................................... 1

*Miller v. Johnson,*
    515 U.S. 900 (1995) ........................................................................... 2

*Miller v. Silbermann,*
    832 F. Supp. 663 (S.D.N.Y. 1993) .............................................. 16

*N.Y. State v. United States,*
    65 F.R.D. 10 (D.D.C. 1974) ............................................................ 9

*Nuesse v. Camp,*
    385 F.2d 694 (D.C. Cir. 1967) ...................................................... 13

- iii -

*Nw. Austin Mun. Util. Dist. v. Mukasey*,
    573 F. Supp. 2d 221 (D.D.C. 2008).......................................................9

*Perez v. Perry*,
    2017 WL 962686 (W.D. Tex. Mar. 10, 2017)........................................9

*Shaw v. Hunt*,
    861 F. Supp. 408 (E.D.N.C. 1994) .......................................................9

*Smith v. Los Angeles Unified Sch. Dist.*,
    830 F.3d 843 (9th Cir. 2016) .............................................................6, 7

*Smith v. Marsh*,
    194 F.3d 1045 (9th Cir. 1999) ..............................................................6

*Smith v. Pangilinan*,
    651 F.2d 1320 (9th Cir. 1981) ..............................................................8

*Southwest Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) ........................................................*passim*

*Texas v. United States*,
    798 F.3d 1108 (D.C. Cir. 2015)............................................................9

*Trbovich v. United Mine Workers*,
    404 U.S. 528 (1972)............................................................................14

*United States v. City of Los Angeles*,
    288 F.3d 391 (9th Cir. 2002) ..............................................................16

*United States v. Oregon*,
    745 F.2d 550 (9th Cir. 1984) ................................................................6

*United States v. Sprint Comm'ns, Inc.*,
    855 F.3d 985 (9th Cir. 2017) ............................................................5, 8

*W. Watersheds Project v. Haaland*,
    22 F.4th 828 (9th Cir. 2022) .................................................................6

**Statutes**

52 U.S.C. § 20501(a)(1).............................................................................11

MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT-INTERVENOR LULAC IN SUPPORT OF
RULE 24 MOTION TO INTERVENE

**Court Rules**

Fed. R. Civ. P. 24.................................................................................................12

Fed. R. Civ. P. 24(a)(2)..............................................................................1, 5, 11

Fed. R. Civ. P. 24(b)(1)(B)...........................................................................1, 15

Fed. R. Civ. P. 24(b)(3) .....................................................................................16

**Other Authorities**

*LaRoque v. Holder*, No. 1:10-cv-00561 (D.D.C. Aug. 25, 2010, Doc. 24) ..............9

*Shelby Cnty., Ala. v. Holder*, No. 1:10-cv-00651 (D.D.C. Aug. 25, 2010,
Doc. 29) ...........................................................................................................9

*Veasey v. Abbott*, No. 2:13-cv-00193 (S.D. Tex. Sep. 19, 2013, Doc. 29) ..............9

*Washington State Democratic Party v. Reed*, No. 3:00-cv-5419 (W.D.
Wash. February 16, 2001, Doc. 143)...................................................................8

# INTRODUCTION

The League of United Latin American Citizens ("LULAC" or "Applicant"), by and through the undersigned counsel, respectfully submits this memorandum in support of its motion to intervene as a defendant in this action. Applicant seeks to intervene as of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure or, in the alternative, permissively under Rule 24(b)(1)(B), in order to contest Plaintiffs' claim that Proposition 50 is a racial gerrymander designed to benefit the Latino communities LULAC represents, when the evidence makes clear it is a partisan gerrymander.

Established in 1929, LULAC is the largest and oldest Latino civil rights organization in the United States. It has more than 400 councils (local chapters) and over 500,000 members nationally, including 28 councils and more than 40,000 members in California. LULAC's mission is to improve the lives of the Latino community throughout the United States, including by protecting and advancing civil rights for the Latino community. Through this work, LULAC has participated in numerous voting rights cases on behalf of the Latino community, including cases concerning redistricting and alleged gerrymandering, like *Abbott v. Perez*, 585 U.S. 579 (2018), *LULAC v. Perry*, 548 U.S. 399 (2006), and *LULAC Council No. 4434 v. Clements*, 999 F.2d 831 (5th Cir. 1993) (en banc). In *Higginson v. Becerra*, 726 Fed. Appx. 640, 641 (9th Cir. 2018), California LULAC successfully intervened in defending the constitutionality of the California Voting Rights Act, with the Ninth Circuit holding that California LULAC met all four requirements for intervention as of right under Federal Rule of Civil Procedure 24.

It cannot seriously be disputed that the congressional redistricting plan enacted by the California Legislature and passed by California voters in Proposition 50 is a partisan gerrymander favoring Democrats, designed to serve as a counterweight to Republican gerrymandering in Texas and other states. But here, Plaintiffs, who include the California Republican Party and Republican elected officials, claim that

Proposition 50 is a racial gerrymander because, as they allege in the opening paragraph of their Complaint, it "favor[s] Hispanic voters," Dkt. 1 ¶ 1, since "Proposition 50's map creates sixteen Congressional districts where the Hispanic population makes up more than 50% of the voters in the Congressional district," Dkt. 16-1 at 11, and because Proposition 50 slightly increased the Hispanic citizen age voting population in Congressional District 13. *Id.* at 13-14.

Plaintiffs' claims are flatly contrary to law: each of the challenged districts is reasonably configured, neither Plaintiffs nor their experts identify any traditional redistricting principles that were subordinated, and there is nothing unconstitutional about a clearly partisan gerrymander that marginally increases Latino voting strength where there are longstanding communities of interest. Plaintiffs' bizarre theory would effectively impose a presumption of unconstitutionality any time a districting plan creates majority-Latino districts—even when the map is drawn for reasons having nothing to do with race. That position weaponizes the very "stereotypes that treat individuals as the product of their race" that Plaintiffs claim to have brought this suit to protect, and would trample the constitutional rights of Latino voters. *Miller v. Johnson*, 515 U.S. 900, 912 (1995); *see* Dkt. 1 ¶ 2 (quoting *Miller*, 515 U.S. at 912).

Plaintiffs' attempt to detract focus from what is clearly a partisan gerrymander by targeting Latino voters is an affront to LULAC, its members, and the Latino communities who have had to fight tooth and nail to secure their right to vote and to have an equal opportunity to elect their candidates of choice. It is *Plaintiffs* who are expressly targeting communities based on their race, including longstanding, established, and compact Latino neighborhoods and communities in areas such as metropolitan Los Angeles and the Central Valley. To grant the relief Plaintiffs request would violate the very constitutional prohibitions Plaintiffs are pretending to vindicate.

As a leading nonpartisan, nonprofit, community-based organization, Applicant has a mission and purpose of fighting manipulative tactics like those of Plaintiffs in

MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT-INTERVENOR LULAC IN SUPPORT OF
RULE 24 MOTION TO INTERVENE

order to ensure that Latinos are fairly represented and Latino communities are treated fairly in the political and redistricting processes. As set forth below, Applicant meets the standards for both intervention as of right and permissive intervention.

Applicant, its members, and the Latino communities it serves would be directly and adversely impacted by the aggressive and legally baseless relief Plaintiffs seek. Plaintiffs request a broad injunction and declaration that the entire enacted congressional map violates the Constitution because it contains sixteen districts that are majority-Latino. *See* Dkt. 1 at 24 (Prayer for Relief a, b). The logic behind their requested relief imperils the drawing of majority-Latino districts, even where such districts do not subordinate traditional districting principles such as compactness, contiguity, and preservation of communities of interest. *Id.* at c. This is directly contrary to interests Applicant has been vindicating for almost a century. Applicant has a substantial interest in protecting Latino communities' fair representation in the federal government and preventing Plaintiffs' efforts to target Latino communities for electoral diminishment.

As a strong advocate for Latino communities throughout both the nation and the State of California, Applicant has a unique interest in defending the districts adopted through Proposition 50 in order to oppose Plaintiffs' attempted imposition of a constitutional rule that would subordinate the right of Latino voters to form political majorities that elect representatives who are responsive to the needs of political coalitions that happen to be majority-Latino. Plaintiffs' injection of supposed racial discrimination into a dispute over partisan gerrymandering profoundly impacts LULAC's interests, which may not be adequately represented by Defendants. Defendants, governmental officials charged with representing not only the Hispanic community but indeed all Californians, could be subject to political winds that pressure them to resolve this case in a manner adverse to Applicant's interests. For the same reason, the governmental Defendants cannot adequately represent the voices and

- 3 -

MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT-INTERVENOR LULAC IN SUPPORT OF
RULE 24 MOTION TO INTERVENE

interests of the communities and voters that Applicant works to specifically empower both in California and around the country. Similarly, Applicant's interests may not be adequately represented by the other Intervenor-Defendant, the DCCC. The DCCC is an organ of the Democratic party, a partisan organization whose interests can diverge from those of Latino communities (which include those of many political parties), evident from the fact that LULAC has had to sue the Democratic Party in the past. *See LULAC of Texas v. Texas Democratic Party*, 651 F. Supp. 2d 700 (W.D. Tex. 2009). Applicant therefore requests that its motion to intervene be granted as of right under Rule 24(a) or, alternatively, by permission under Rule 24(b).

Plaintiffs oppose this motion. Defendants do not oppose this motion. Intervenors DCCC and United States take no position on this motion.

## DESCRIPTION OF APPLICANT FOR INTERVENTION

LULAC is a 501(c)(4) civil rights organization headquartered in Washington, D.C. Founded in 1929, LULAC is the largest and oldest Latino civil rights organization in the United States. LULAC advances the economic condition, educational attainment, political influence, housing, health, and civil rights of the Latino community through community-based programs. Ex. B, Decl. of Juan Proaño ("Proaño Decl.") ¶¶ 3, 5.

Historically, LULAC has focused heavily on the civil rights, education, health, and employment of the Latino community. LULAC programs include voter registration drives that seek to empower the Latino community at the local, state and national level. Proaño Decl. ¶ 5.

LULAC has 28 councils in California, stretching from Sacramento to San Diego, and across the state. LULAC serves its more than 40,000 members throughout California, including many registered and eligible voters. Ex. C, Decl. of Diego Jacob Sandoval ("Sandoval Decl.") ¶ 3.

LULAC's local councils in California are dedicated to empowering communities through education and resources, and to that end their programming includes voter

registration and voter education efforts to engage voters. Proaño Decl. ¶ 7; Sandoval Decl. ¶ 7. Every ten years, LULAC's councils in California often participate in state or county redistricting hearings and submit proposed maps to ensure Hispanic and Latino voters are fairly represented in lines drawn at the state and local level. Sandoval Decl. ¶ 8. In 2021 and 2022, for example, LULAC councils participated in the California independent redistricting commission's redistricting hearings, and members also testifyied in favor of maps that would not dilute the Hispanic and Latino vote in Riverside County, Los Angeles County, Orange County, and San Benito County, to advocate for keeping Hispanic communities together and whole wherever possible. Sandoval Decl. ¶¶ 8–9. LULAC has councils and members who reside in several of the challenged districts, including three councils located in Congressional District 13. Sandoval Decl. ¶ 3. LULAC's fights for political representation are a critical part of its work to vindicate the civil rights of the Latino community and protect the fundamental political gains of its members. Proaño Decl. ¶ 9; Sandoval Decl. ¶¶ 10–11.

## ARGUMENT

## I.    The Court Should Grant Intervention as of Right under Rule 24(a)(2)

The Ninth Circuit has established a four-part test for when a court must allow intervention as of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure:

> (1) the application for intervention must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit.

*United States v. Sprint Comm'ns, Inc.*, 855 F.3d 985, 991 (9th Cir. 2017) (quoting *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001)). Rule 24(a) must be construed "liberally in favor of potential intervenors," and, in addition to this "broad construction," eschews "technical distinctions" in favor of

- 5 -

"practical considerations" in reviewing intervention applications. *Southwest*, 268 F.3d at 818 (citations omitted). The Ninth Circuit has held that "these requirements" must be "interpret[ed] . . . broadly in favor of intervention," guided by "practical considerations, not technical distinctions." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022). In addition, courts must "take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Southwest*, 268 F.3d at 820.

Applicant satisfies each part of the Ninth Circuit's four-part test for intervention as of right, particularly when considered under the Ninth Circuit's liberal construction in favor of intervention. Consequently, this Court should permit Applicant's intervention as of right.

### a. Applicant's Motion is Timely

The Ninth Circuit directs courts to focus on three primary factors in assessing timeliness: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016). Moreover, "[t]imeliness is determined by the totality of the circumstances facing would-be intervenors." *Id.* The "crucial date" in the timeliness inquiry is "when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Id.* (quoting *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999)). Yet the "mere lapse of time alone is not determinative." *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984) (citation omitted).

This case is in its infancy, and the application here is timely under the "totality of the circumstances." Plaintiffs filed their complaint on November 5, 2025, and this motion comes just 10 days later—before Defendants have even answered or responded to the motion for preliminary injunction. Applicant files this motion just two days after

the United States moved to intervene on Plaintiffs' behalf, making clear for the first time in this litigation that the United States would not be advocating for the interests of Latino voters, as it has often done in the past. Applicant is seeking to intervene before any discovery has taken place, before any substantive hearings or rulings, and well before the pre-trial conference and trial dates set by the Court. Applicant has also attached a proposed answer, *see* Ex. A., in the event this motion is granted. Intervention would not interfere with any pending issues before the Court or upset the resolution of issues already adjudicated. Moreover, because Applicant does not request any extension of existing deadlines, granting intervention will not result in a delay in hearing and resolving dispositive motions or adjudicating this case after a trial. Accordingly, intervention will not impose undue burdens on the parties or the Court.

Applicant agrees to abide by the deadlines set by the Court on November 14, 2025, including as to the preliminary injunction briefing and hearing. Dkt. 38. Applicant is prepared to meet this schedule (or any adjustment the Court sees fit to impose). To that end, Applicant has retained counsel with significant experience in racial gerrymandering and with the ability to litigate this matter in California. In short, Applicant's participation in this case will not delay proceedings.

Nor would intervention prejudice the existing parties. Prejudice cannot be established by a current litigant—such as the Plaintiffs here—complaining "that including another party in the case might make resolution more 'difficult[ ].'" *Smith*, 830 F.3d at 857. Rather, the Ninth Circuit has explained that the only potential prejudice "that is relevant under this factor is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented." *Id.*

As for delay, Applicant acted expeditiously—just ten days after the Complaint was filed and within time to fully participate in the motion for preliminary injunction briefing and hearing.

Given the totality of the circumstances, including the fact that Applicant seeks to intervene "at a very early stage, before any hearings or rulings on substantive matters," granting intervention here would be consistent with Ninth Circuit precedent and in keeping with the liberal spirit of Rule 24 intervention. *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995); *see also id.* (finding intervention appropriate where motion was filed four months after action commenced and *after* motion for preliminary injunction was filed); *Washington State Democratic Party v. Reed*, No. 3:00-cv-5419 (W.D. Wash. February 16, 2001, Doc. 143) (permitting intervention by defendant-intervenor where motion was filed more than six months after complaint was filed).

### b.    Applicant Has a Significantly Protectable Interest in the Underlying Litigation

An Applicant's right to intervene is conditioned on having a "significantly protectable interest relating to the property or transaction that is the subject of the action." *Sprint*, 855 F.3d at 991. As the Ninth Circuit has explained, such an interest exists where "(1) [the applicant] asserts an interest that is protected under some law, and (2) there is a 'relationship' between [the applicant's] legally protected interest and the plaintiff's claims." *Id.* (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). An intervenor is not required to show it has "a legal or equitable interest in jeopardy." *Smith v. Pangilinan*, 651 F.2d 1320, 1324 (9th Cir. 1981). Moreover, determining whether an applicant has a sufficient interest is a "practical, threshold inquiry, and no specific legal or equitable interest need be established." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (citation and internal quotation marks omitted).

Intervention in voting rights cases is favored, and courts have routinely allowed it, holding that intervention is proper for parties seeking to protect their interests in political access cases. *See Georgia v. Ashcroft*, 539 U.S. 461, 477 (2003) *superseded*

- 8 -

*by statute* 135 S. Ct. 1257 (2015); *City of Lockhart v. United States*, 460 U.S. 125, 129 (1983); *Busbee v. Smith*, 549 F. Supp. 494 (D.D.C. 1982); *City of Port Arthur, Texas v. United States*, 517 F. Supp. 987, 991 n.2 (D.D.C. 1981); *N.Y. State v. United States*, 65 F.R.D. 10, 12 (D.D.C. 1974); *Commonwealth of Va. v. United States*, 386 F. Supp. 1319, 1321 (D.D.C. 1974); *City of Petersburg, Va. v. United States*, 354 F. Supp. 1021, 1024 (D.D.C. 1972); *Bellitto v. Snipes*, No. 0:16-cv-61474, 2016 WL 5118568 (S.D. Fla. Sep. 21, 2016); *Kobach v U.S. Election Assistance Comm'n*, No. 5:13-cv-04095, 2013 WL 6511874 (D. Kan. Dec. 12, 2013); *Veasey v. Abbott*, No. 2:13-cv-00193 (S.D. Tex. Sep. 19, 2013, Doc. 29); *Texas v. United States*, 798 F.3d 1108, 1111 (D.C. Cir. 2015); *LaRoque v. Holder*, No. 1:10-cv-00561 (D.D.C. Aug. 25, 2010); *Shelby Cnty., Ala. v. Holder*, No. 1:10-cv-00651 (D.D.C. Aug. 25, 2010).

For similar reasons, intervention by civil rights organizations in redistricting cases is common to defend the interests of minority voters. *See, e.g.*, *Perez v. Perry*, 2017 WL 962686 at *76 (W.D. Tex. Mar. 10, 2017) (noting LULAC had been allowed to intervene given its "history of promoting voting rights of Hispanics and other minorities"); *Higginson v. Becerra*, 733 Fed. Appx. 402 (Mem.) (9th Cir. 2008) (reversing denial of California LULAC Rule 24 motion and holding that it meets "all four requirements of intervention as of right" as a defendant); *King v. Ill. State Bd. of Elections*, 410 F.3d 404 (7th Cir. 2005) (noting successful intervention of Chicago Urban League to defend Black-majority district against racial gerrymandering claim); *Johnson v. Mortham*, 915 F. Supp. 1529 (N.D. Fla. 1995) (permitting NAACP to intervene to protect interest of voters in Black-majority district against racial gerrymandering claim); *Shaw v. Hunt*, 861 F. Supp. 408 (E.D.N.C. 1994), *rev'd on other grounds Shaw v. Hunt*, 517 U.S. 899 (1996) (granting intervention to defend a redistricting plan against racial gerrymandering claims).

Like intervenors in other political access cases who sought to defend their political rights, Applicant's interests here are real, protected under California and

- 9 -

federal law, and at risk of being compromised in this case by Plaintiffs' attempted transformation of a partisan gerrymander into a racial one. Applicant has a strong interest in this litigation, sufficient to meet the requirements of Rule 24(a). In particular, in furtherance of its core mission, Applicant has devoted substantial resources to ensuring Latinos are fairly represented and Latino communities are treated fairly in the political and redistricting processes, including in assisting people to register as voters, assisting registered voters or voting-eligible people in casting ballots, and strengthening public participation in the democratic process by ensuring that all eligible persons have equal opportunity to register to vote, vote for the candidate of their choice, and guarantee their vote is counted. LULAC's local councils across California hold voter registration events and get-out-the-vote programming for their members and have initiatives to coordinate transportation and assistance to help disadvantaged community members get to the polls or fill out absentee ballots. Sandoval Decl. ¶ 7.

Applicant has an interest in defending the Proposition 50 map against Plaintiffs' unwarranted claim that it is an unconstitutional racial gerrymander that "favors" Latinos. In particular, Plaintiffs boldly seek a sweeping declaration that all sixteen of the majority-Latino California's congressional districts in California are racial gerrymanders. In doing so, Plaintiffs are expressly targeting longstanding, established, and compact Hispanic neighborhoods and communities in areas such as metropolitan Los Angeles and the Central Valley. Plaintiffs' unwarranted approach would undo significant work LULAC has undertaken for almost a century to empower Latinos and ensure they are fairly represented in national, state, and local legislative bodies. These efforts could be severely impaired if Plaintiffs prevail in their sleight-of-hand attempt to escape the unfavorable legal landscape facing partisan gerrymander challenges and turn this Court's attention to inapplicable racial considerations. Thus, there is a direct and pointedly adverse, relationship between Plaintiffs' claims and Applicant's protectable interests.

MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT-INTERVENOR LULAC IN SUPPORT OF
RULE 24 MOTION TO INTERVENE

Courts and Congress have often recognized that the right to vote—that is central to Applicant's work and the bedrock of American democracy—is "a fundamental right." 52 U.S.C. § 20501(a)(1). And the Supreme Court has long recognized that voting-related restrictions implicate "interwoven strands of liberty" that "rank among our most precious freedoms": "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983) (citations and internal quotation marks omitted). Such an interest, and Applicant's role in furthering it, is more than sufficient to merit intervention.

### c.    The Disposition of this Action Could Impair Applicant's Interests

In addition to demonstrating an interest in the underlying litigation, intervention should be granted where the applicant shows that it is "so situated that the disposing of the action may as a practical matter impair or impede [its] ability to protect its interest." Fed. R. Civ. P. 24(a)(2). An intervenor is not required to show with "absolute certainty that a party's interests will be impaired." *Citizens for Balanced Use*, 647 F.3d at 900. Instead, the Ninth Circuit "follow[s] the guidance of Rule 24 advisory committee notes that state that '[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'" *Southwest*, 268 F.3d at 822 (quoting Fed. R. Civ. P. 24 advisory committee's notes to 1966 amendment). Applicant's interests here could very well be impaired by an adverse disposition.

As noted above, Plaintiffs' goals in this litigation are adverse to Applicant's interests. In seeking to have the Proposition 50 partisan gerrymander invalidated as a racial gerrymander, Plaintiffs are claiming that every majority-Latino Congressional district in California is a racial gerrymander. They have also made a specific and dubious racial gerrymandering claim regarding District 13, a majority Latino district in the Central Valley in which LULAC has three councils. In doing so, Plaintiffs are

MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT-INTERVENOR LULAC IN SUPPORT OF
RULE 24 MOTION TO INTERVENE

expressly targeting longstanding, established, and compact Latino neighborhoods and communities in areas such as metropolitan Los Angeles and the Central Valley concerns. And if Plaintiffs are successful in constitutionalizing a rule that presumptively prohibits any district comprised of a Latino majority, Applicant's rights under California and federal law to secure greater and fairer political representation across California will be diminished. Absent intervention, Applicant will lack the opportunity to protect its substantial interests and will be relegated to the sidelines in a case in which their interests will be determined by other parties.

Applicant's protectable interests will be impaired by this litigation proceeding without it, especially in the event that Plaintiffs' claims are victorious. This is why, as discussed above, courts have routinely allowed civil rights organizations and others to intervene as Defendants in racial gerrymandering cases.

### d.    The Existing Parties Do Not Adequately Represent the Interests of Applicant

The Ninth Circuit does not require a proposed intervenor to show with "absolute certainty . . . that existing parties will not adequately represent its interests." *Citizens for Balanced Use*, 647 F.3d at 900. Rather, "[t]he burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate." *Id.* at 898 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)). In assessing whether a proposed intervenor has met its burden, courts consider "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Id.* (quoting *Arakaki v. Cayetano*, 324 F.3d at 1086). Courts grant intervention where a prospective intervenor and the existing parties "do not have sufficiently congruent interests." *See, e.g., Southwest*, 268 F.3d at 823. And

- 12 -

Rule 24 "underscores both the burden on those opposing intervention to show the adequacy of the existing representation and the need for a liberal application in favor of permitting intervention." *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967). Applicant here easily meet this "minimal" burden of showing that the existing Defendants *may* not adequately represent their interests. *See Citizens for Balanced Use*, 647 F.3d at 898. Notably, neither Defendants nor Defendant-Intervenor DCCC oppose this Motion.

When the defendant is a governmental entity, "inadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public." *Forest Conservation Council v. U.S. Forrest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995) (citation omitted). Because of governmental parties' different interests and areas of expertise, courts have often recognized cases where governmental parties cannot adequately represent the interests of private intervenors, even if they take the same position on the underlying merits. For example, in *Johnson v. San Francisco Unified School District*, the Ninth Circuit held that parents of Chinese-American students could intervene in a school desegregation suit because, among other things, the defendant school district was "charged with the representation of all parents within the district." 500 F.2d 349, 353-54 (9th Cir. 1974). Similarly, *Trbovich v. United Mine Workers*, 404 U.S. 528 (1972), allowed a union member to intervene in an action brought by the Secretary of Labor to set aside union elections for violation of the Labor-Management Reporting and Disclosure Act of 1959, even though the Secretary was broadly charged with protecting the public interest. The Court reasoned that the Secretary of Labor could not adequately represent the union member because the Secretary had a "duty to serve two distinct interests"—a duty to protect both the public interest and the rights of union members. *Id.* at 538; *see also Southwest*, 268 F.3d at 823 (inadequacy of representation found where defendant "City's range of considerations in development is broader than the profit-motives animating

- 13 -

[intervenor] developers"); *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998) (affirming district court's grant of intervention where "the employment interests of [intervenor's] members were potentially more narrow and parochial than the interests of the public at large").

In this case, while there may be overlap between the objectives of the existing Defendants (both governmental officials) and those of Applicant, it is likely that each will have its own discrete areas of interest. That makes it at least not "undoubted" that the governmental Defendants would be, or are "capable and willing" to, advance all of Applicant's arguments. *Citizens for Balanced Use*, 647 F.3d at 901. As governmental officials with substantial public responsibilities to all Californians and numerous constituencies, Defendants may be subject to considerations and pressures that do not align with Applicant's interests representing the Latino community. Because of those different constituencies, neither governmental Defendant could be expected to focus uncompromisingly on the interests of a group like Applicant, its members, and the types of voters that Applicant seeks to engage. Moreover, because of these complex representational responsibilities, Defendants' defense of the case could conflict with Applicant's interests, particularly its interest in ensuring that the rights of Latino communities and voters are not subordinate to the rights of other groups. The Court will benefit from hearing from the voices of Latinos in responding to Plaintiffs' illegitimate effort to transform this partisan gerrymander into a racial one. Indeed, Applicant is uniquely positioned to represent the diverse interests of Latino voters with a degree of experience and perspective second to none. To be sure, governmental officials should be responsive to their constituents, but Applicant will give primacy to the interests of Latino communities and voters before the Court in a way that governmental officials simply cannot replicate.

In addition, the expedited nature of this litigation could also leave Applicant without sufficient time to remedy any adverse disposition before the 2026 elections. If

the existing parties were to settle or otherwise reach a resolution on the merits that adversely affected the interests of Applicant and its members, Applicant could lack meaningful avenues of relief as a non-party to this case. For this reason—and many others—Applicant's interests are threatened by the relief sought by Plaintiffs in this action.

Nor would the other Intervenor-Defendant adequately represent Applicant's interests. The DCCC is a partisan organization whose interest is in the political representation of Democrats and their various constituencies generally, not in Latino voters specifically. That is separate and distinct from Applicant's interest in protecting the discrete interests of Latino voters and communities.

## II.    Alternatively, the Court Should Grant Permissive Intervention under Rule 24(b)(1)(B)

Applicant satisfies not only the standard for intervention as of right, but also the criteria for Rule 24(b)(1)(B) permissive intervention. Under that rule, courts may permit intervention upon "timely motion" where the prospective intervenor has "a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(B), and must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights," Fed. R. Civ. P. 24(b)(3). According to the Ninth Circuit, "a court may grant permissive intervention where the Applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the Applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002) (citation omitted).

As discussed above, Applicant's motion is timely, and, for the same reasons, Applicant's intervention will not unduly delay or prejudice the adjudication of the original parties' rights. Nor does the application present any jurisdictional issues—this Court independently has subject matter jurisdiction over Applicant under federal

- 15 -

question jurisdiction because the dispute involves a question of federal constitutional law. And the questions of law and fact presented in this action address the core issues that Applicant seeks to litigate. Applicant does not propose to add a counterclaim or expand the questions presented by the Complaint—in fact, Applicant will confer with Defendants (and any other intervenors the court sees fit to permit) to seek to avoid redundant filings before the Court. Furthermore, Applicant will lend their unique perspective and expertise to the case, thereby enhancing development of the relevant issues. *See Miller v. Silbermann*, 832 F. Supp. 663, 674 (S.D.N.Y. 1993) (finding permissive intervention appropriate where the applicants, because of their "knowledge and concern," would "greatly contribute to the Court's understanding" of the case). Accordingly, if the Court finds that Applicant may not intervene as of right, Applicant respectfully requests that the Court allow intervention under Rule 24(b) so that they may protect their substantial interests in this litigation.

## CONCLUSION

For the foregoing reasons, Applicant respectfully request that the Court grant its motion to intervene in this action as a defendant, and to enter its proposed Answer, which is attached as Exhibit A to this motion.

DATED: November 15, 2025

/s/ Sean O. Morris
**ARNOLD & PORTER KAYE
SCHOLER LLP**
SEAN O. MORRIS (SBN 200368)
Sean.Morris@arnoldporter.com
777 South Figueroa Street
44th Floor
Los Angeles, CA  90017
T: (213) 243-4000
F: (213) 243-4199

JOHN A. FREEDMAN[*]
John.Freedman@arnoldporter.com
601 Massachusetts Ave, NW
Washington, DC  20001
T: (202) 942-5000
F: (202) 942-5999

**JUSTICE LEGAL STRATEGIES
PLLC**
Jon M. Greenbaum (SBN 166733)
jgreenbaum@justicels.com
P.O. Box 27015
Washington, DC 20038
T: (202) 601-8678

Counsel for Proposed Intervenor-
Defendant
League of United Latin American Citizens


*Application for admission pro hac vice
forthcoming

Respectfully submitted,

**DEMOCRACY DEFENDERS
ACTION**
NORMAN L. EISEN[*]
TIANNA MAYS[*]
SOFIA FERNANDEZ GOLD[*]
JACOB KOVACS-GOODMAN[*]
norman@democracydefenders.org
tianna@democracydefenders.org
sofia@democracydefenders.org
jacob@democracydefenders.org
600 Pennsylvania Ave SE, Unit
15180
Washington, DC 20003
T: (202) 594-9958

MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT-INTERVENOR LULAC IN SUPPORT OF
RULE 24 MOTION TO INTERVENE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT-INTERVENOR LULAC IN SUPPORT OF
RULE 24 MOTION TO INTERVENE

1

**ATTESTATION PURSUANT TO LOCAL RULE 5-4.3.4**

2    This certifies, pursuant to Local Rule 5-4.3.4, that all signatories to this

3  document concur in its content and have authorized this filing.

4

5                                        */s/ John Freedman*

6                                        John Freedman

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT-INTERVENOR LULAC IN SUPPORT OF
RULE 24 MOTION TO INTERVENE

# CERTIFICATE OF SERVICE

Case Name: **<u>Tangipa et al v. Newsom et al</u>** No.    **2:25-cv-10616-JLS-WLH-KKL**

I hereby certify that on <u>November 15, 2025</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT-INTERVENOR LULAC IN SUPPORT OF RULE 24 MOTION TO INTERVENE**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>November 15, 2025</u>, at Washington, D.C.

<u>      /s/ John A. Freedman      </u>
Signature