1  MICHAEL A. COLUMBO (SBN: 271283)
   SHAWN COWLES (SBN: 163826)
2  MARK P. MEUSER (SBN: 231335)
   AMBER R. HULSE (Admitted PHV)
3  **DHILLON LAW GROUP INC.**
   4675 MacArthur Court, Suite 1410
4  Newport Beach, CA 92660
   mmeuser@dhillonlaw.com
5  Telephone: (415) 433-1700
   Fax: (415) 520-6593
6
   *Attorneys for Plaintiffs*
7

8              **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10 | **DAVID TANGIPA**; *et al.*,                      CASE NO. 2:25-cv-10616 JLS (KESx)

11              Plaintiffs,

12       vs.                                           **PLAINTIFFS OPPOSITION TO**
                                                       **DEFENDANT-INTERVENOR EX**
13 **GAVIN NEWSOM**, in his official                   **PARTE MOTION TO**
   capacity as the Governor of California; *et al.*;   **INTERVENE (ECF # 49)**
14
              Defendants.                              Hon. Josephine L. Staton
15                                                     Hon. Kenneth K. Lee
                                                       Hon. Wesley L. Hsu
16
                                                       Action Filed:   November 5, 2025
17                                                     Hearing: Dec. 3, 2025

18

19

20

21

22

23

24



**OPP TO EX PARTE MOTION TO INTERVENE        CASE NO. 2:25-cv-10616**
                                        i

**INTRODUCTION**

Clarissa Cervantes, Antonio Madrigal, Jose Antonio Moreno Jr., Dr. Ines Ruiz- Huston, Dr. Gary Segura, and Isabel Solis ("Cervantes Intervenors") bid to intervene rests on the premise that only they, individual voters who supported Proposition 50, can "adequately" represent their interests as persons who favor the new congressional map. That is wrong as a matter of law and fact. The Governor and Secretary of State are already represented by experienced counsel, and the DCCC, whose electoral fortunes are directly tied to preserving this plan, is in the case as well. Among the existing Defendants, the arguments made by these individuals will undoubtedly be covered, and the proposed intervenors themselves admit they do not plan to bring any new claims. Mot. to Intervene at 20, ECF No. 49.

In these circumstances, the Ninth Circuit presumes adequacy where the proposed intervenor shares the same ultimate objective as the existing parties, upholding Proposition 50 and the enacted map, as Cervantes Intervenors indisputably do here. Speculation about the government's arguments or the desire to add voter-specific "personal experience" does not overcome that presumption, nor does a wish to fine-tune the briefing strategy. Intervention as of right therefore fails. A generalized policy or ideological interest in how the law is carried out, or a partisan preference for remaining in newly drawn, more favorable districts, does not constitute a "significantly protectable" interest and therefore cannot, by itself, justify intervention as of right. Permissive intervention is no better: it would only complicate and slow a matter that demands efficient resolution, and any marginal perspective Cervantes Intervenors claim to add can be provided as amicus.

For these reasons, Plaintiffs respectfully oppose the Cervantes Intervenors' motion to intervene. The Court should therefore deny the motion. If, however, the Court deems proposed Intervenors' involvement necessary, it should encourage said participation through amici.

---

**OPP TO EX PARTE MOTION TO INTERVENE          CASE NO. 2:25-cv-10616**

1

# ARGUMENT

2

## I.    Intervenors are Not Entitled to Intervene as of Right.

3
To intervene as of right under Federal Rule of Civil Procedure 24(a), the movant must

4
show: (1) its application is timely; (2) it has a cognizable interest relating to the subject of the

5
action; (3) it is so situated that disposition of the action may impede or impair its ability to

6
protect that interest; and (4) its interest is inadequately represented by the existing parties.

7
Fed. R. Civ. P. 24(a)(2); *NAACP v. New York,* 413 U.S. 345, 365 & n.15 (1973); *Wilderness*

8
*Society v. U.S. Forest Service*, 630 F.3d 1173, 1177 (9th Cir. 2011). Here, the Intervenors fail

9
to satisfy the second through fourth elements.

10

### A.  Intervenors' Filing Was Timely

11
Plaintiffs do not dispute the timeliness of Intervenors' application to intervene.

12
However, proposed Intervenors do not satisfy the three remaining factors.

13

### B.  Cervantes Intervenors' Claimed Interests Are Purely Political and Derivative, Not a "Significant Protectable Interest."

14
Rule 24(a)(2) requires intervenors to demonstrate a "significant protectable

15
interest"—an interest "protected under some law" that is actually related to Plaintiffs' claims.

16
*See Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) (quoting

17
*Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)); *Wilderness Soc'y v. U.S. Forest*

18
*Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc) (reciting Rule 24(a)(2) factors). As

19
*Patch* explains, an "undifferentiated, generalized interest in the outcome" of litigation is "too

20
porous a foundation on which to premise intervention as of right" and cannot justify party

21
status. *Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 205 (1st Cir. 1998).

22
Cervantes Intervenors identify three interests: (1) an interest "in their vote being

23
lawfully counted and enforced" because they voted for Proposition 50 and its "promised"

24
partisan redistricting, (2) an interest in remaining in the new districts Prop 50 gave them—

1  districts where they can support their preferred Democratic candidates, and (3) a generalized

2  interest in ensuring the Fourteenth and Fifteenth Amendments are "properly applied." None

3  of these is a *distinct* legal entitlement.

4      First, Plaintiffs do not seek to cancel anyone's vote or disenfranchise anyone. At

5  most, they seek a return to the 2021 congressional plan, a map Cervantes Intervenors never

6  challenged and were content to live under before Prop 50. Their harm is not that their votes

7  won't be "counted," but that the particular partisan outcome they hoped to secure with Prop

8  50 might not be preserved. That is a political hope, not a legal right.

9      Second, there is no cognizable individual legal right to remain in a specific district

10  configuration or to be placed in a district that is more favorable to one's preferred party.

11  Cervantes Intervenors say they "planned on supporting a Democrat candidate for the new

12  CDs." That is simply a description of the partisan tilt they prefer. The Cervantes Intervenors

13  have identified no authority establishing that voters are entitled to a particular partisan

14  composition of their districts, because there isn't any, and they do not gain a legal entitlement

15  to future electoral outcomes because a particular map "promised" them more favorable lines.

16      Third, their invocation of a generalized interest in ensuring the Fourteenth and

17  Fifteenth Amendments are "properly applied" adds nothing. That is exactly what the State

18  and the DCCC are already litigating: whether Proposition 50's map comports with the

19  Constitution. Dressing that up as an "interest" unique to these particular voters does not

20  establish a protectable legal right.

21      Cervantes Intervenors reliance on *Chula Vista Citizens for Jobs and Fair Competition*

22  *v. Norris*, 782 F.3d 520 (9th Cir. 2015), for its description of voters playing a "quasi-

23  legislative role in the initiative process" likewise fails. At most, that observation analogizes

24  the electorate collectively to a legislature when it enacts initiatives. It does not give each

---

**OPP TO EX PARTE MOTION TO INTERVENE**          **CASE NO. 2:25-cv-10616**

1   individual voter a personal, litigation-worthy entitlement to defend any initiative in court.

2   Just as an individual legislator has no automatic right to intervene merely because she voted

3   for a statute, individual voters have no automatic right to intervene merely because they

4   voted. *See Hollingsworth v. Perry*, 570 U.S. 693, 706–07 (2013) (initiative proponents lacked

5   Article III standing to defend the initiative where their "only interest" was "to vindicate the

6   constitutional validity of a generally applicable California law," a "generalized grievance"

7   shared with "the public at large" and therefore not a cognizable, personal stake).

8        The point is clearest in their own words: "As another example, Candidate for

9   California State Assembly, Ms. Cervantes has a particular interest in seeing the

10  democratically mandated will of the California electorate honored." That is campaign

11  rhetoric, not a legal interest. It confirms that Cervantes Intervenors do not seek to vindicate

12  any distinct, legally protectable right.

13       The worst thing that can happen to the Cervantes Intervenors is that California uses

14  the 2021 congressional district map created by the Citizens Redistricting Commission that

15  was supposed to be in place through the 2030 elections. Their theory that their votes will

16  somehow be "diluted" if the Court restores the pre-Prop 50 map, simply underscores how

17  untethered their claimed interests are from any cognizable legal entitlement.

18       Because proposed intervenors have not identified a distinct, legally protected interest

19  tethered to Plaintiffs' claims and cannot show practical impairment of such an interest, they

20  fail the second element, and intervention as of right must be denied

21       **C. Disposition of This Case Will Not, as a Practical Matter, Impair Proposed
         Intervenors' Ability to Protect Any Cognizable Interests.**

22       Rule 24(a)(2)'s third element asks whether a proposed intervenor "is so situated that

23  the disposition of the action may as a practical matter impair or impede" its ability to protect

24  its interest. Fed. R. Civ. P. 24(a)(2); *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir.



**OPP TO EX PARTE MOTION TO INTERVENE          CASE NO. 2:25-cv-10616**

1998). The question is not whether it would be more convenient or symbolically satisfying for the would-be intervenor to participate in this particular lawsuit. *See California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006) (explaining that "even if" a lawsuit affects a proposed intervenor's interests, those interests "might not be impaired if they have 'other means' to protect them") (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). The Ninth Circuit applies this same "practical impairment" standard when evaluating intervention as of right. *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002).

Cervantes Intervenors' impairment argument does not exist. They simply assert that if Plaintiffs prevail, "the will of the electorate could be undone," they might no longer reside in the new Prop 50 districts, and their ability "to ensure the Fourteenth and Fifteenth Amendments are properly applied may be impaired." That is the entire showing.

Even if Cervantes Intervenors' policy preferences are affected by the outcome, as every voter's preferences are in every election-law case, that does not mean their ability to protect those preferences is impaired. They will still be able to vote, to campaign, to lobby, and to participate in future redistricting cycles.

Their suggestion that the "electoral will" could be "undone" if this Court determines that Proposition 50's map violates the Constitution is, frankly, an argument against judicial review. Anytime a law is set aside as unconstitutional, the "will" of whatever majority enacted it is "undone." That truism does not confer a unique right on every member of that majority to intervene as a party. If it did, every single voter who supported Proposition 50, and every voter who opposed it, would have an equal claim to party status here.

Similarly, their complaint that they may be moved back into districts they previously resided in, or into districts less favorable to their preferred party, is not an impairment of any

1   legal interest. It is nothing more than disappointment that the partisan advantage they hoped

2   to lock in with Prop 50 might not last. That may be a genuine political frustration, but Rule

3   24 does not guarantee voters permanent residency in a "promised" safe seat.

4        In short, Cervantes Intervenors have not identified a concrete legal interest, and they

5   have certainly not shown that such an interest will be lost or even meaningfully impaired if

6   they participate in this case the same way every other voter does: as members of the public,

7   or at most, as amici curiae.

8        Because Intervenors have no uniquely protectable interest that will be practically

9   impaired by the judgment, the third requirement for intervention as of right is not met.

10   **C.  Cervantes Intervenors' interests are adequately represented.**

11        As to the fourth and final element, "[t]his Court considers three factors in determining

12   the adequacy of representation: (1) whether the interest of a present party is such that it will

13   undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is

14   capable and willing to make such arguments; and (3) whether a proposed intervenor would

15   offer any necessary elements to the proceeding that other parties would neglect." *Arakaki v.*

16   *Cayetano,* 324 F.3d 1078, 1086 (9th Cir. 2003) (citing *California v. Tahoe Reg'l Planning*

17   *Agency,* 792 F.2d 775, 778 (9th Cir.1986).

18        **i.    The Government Defendants and the DCCC Adequately Represent**
         **Cervantes Intervenors' Objectives, Triggering a Strong**
19        **Presumption of Adequate Representation.**

20        Cervantes Intervenors' adequacy argument begins by lifting a sentence from a D.C.

21   Circuit case: "Often…governmental entities do not adequately represent the interests of

22   aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003).

23   They then quote a Third Circuit natural-resources case about agencies having a broader view

24

1   of the "public welfare" than the "parochial" interests of would-be intervenors. *Kleissler v.*

2   *United States Forest Serv.,* 157 F.3d 964, 972 (3d Cir. 1998).

3          Those out-of-circuit snippets cannot override binding Ninth Circuit law. When a

4   government entity is defending the validity of its own law and the proposed intervenor shares

5   the same "ultimate objective," representation is presumed adequate, and the proposed

6   intervenor must make a "very compelling showing" to overcome that presumption. See

7   *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1305 (9th Cir. 1997); *Perry v.*

8   *Proposition 8 Official Proponents, 587 F.3d 947*, 949 (9th Cir. 2009).

9          Cervantes Intervenors make no such showing. Where the government and an aligned

10  party are already making the same arguments, adequacy is satisfied. *See United States ex rel.*

11  *Richards v. De Leon Guerrero*, 4 F.3d 749, 756 (9th Cir. 1993) (affirming denial of

12  intervention where the government "made the same arguments" as intervenors).

13         Cervantes Intervenors share precisely the same ultimate objective as the State and the

14  DCCC, upholding Proposition 50's congressional map. Their only claim of divergence is that

15  "it is not clear that the current defendant parties, the DCCC and California government

16  officials, will or are willing to make all of Cervantes Intervenors' individual arguments,"

17  because those defendants "represent either government or partisan entities, while Cervantes

18  Intervenors are individuals personally affected by any change in map." That is not evidence

19  of inadequate representation; it is pure speculation.

20         If anything, the suggestion that the DCCC, a national party committee whose sole

21  mission is electing Democrats to the House, might somehow leave "arguments on the table"

22  in a case that directly threatens its preferred map is difficult to take seriously. The DCCC is

23  represented by sophisticated counsel with deep experience in election and redistricting

24  litigation. It has every reason to press the very arguments proposed Intervenors say they care

1    about.  If the DCCC is not adequately representing the interests of Democratic voters, it is

2    hard to imagine who would be. And the State officials, who are defending their own law, are

3    represented by experienced counsel and have every institutional incentive to prevail.

4         Then, almost controverting themselves, the Cervantes Intervenors claim they will not

5    make any additional claims. Mot. to Intervene at 20, ECF No. 49 ("Cervantes Intervenors do

6    not seek to add any new claims.").

7         The Ninth Circuit has denied intervention where the existing party already advances

8    the same arguments the proposed intervenor wishes to make. In *United States ex rel.*

9    *Richards v. De Leon Guerrero*, for example, the court affirmed denial of permissive

10   intervention because the government party "made the same arguments" as the proposed

11   taxpayer intervenors and adequately represented their privacy interests. 4 F.3d 749, 756 (9th

12   Cir. 1993). The logic is even stronger here, where both the State and a major political

13   committee are committed to defending the map.

14        Cervantes Intervenors fail to identify any "necessary element" they can champion that

15   the existing defendants will neglect. They do not claim to have drawn the plan, to have

16   supplied the pre-enactment Voting Rights Act analysis, or to possess some specialized legal

17   expertise that the State, the United States, and the DCCC lack. At most, they propose "direct

18   arguments based on personal experience and the peculiarities of their district and

19   communities of interest," which is precisely the sort of optional color the Ninth Circuit has

20   said can be provided through amicus briefs. *See Perry*, 587 F.3d at 950.

21        Their reliance on *Berger v. North Carolina State Conf. of the NAACP* is both

22   improperly cited and misplaced. Berger stands for the proposition that when state law

23   designates specific officials to defend state law, those officials must be allowed to participate

24   even if the attorney general is already in the case. *Berger v. N. Carolina State Conf. of the*

*NAACP*, 597 U.S. 179, 193 (2022). The Supreme Court did not say that every private voter who supported an initiative is entitled to intervene when the State is already "vigorously" defending it. Here, Cervantes Intervenors are not state officials at all; they are private citizens and a candidate who simply prefer the partisan outcome generated by Prop 50.

In short, this is not a case where the State is refusing to defend its own enactment, has confessed error, or has taken positions directly adverse to the proposed intervenors. It is a case where every existing defendant and every would-be intervenor shares the same bottom-line goal. Under Ninth Circuit law, that triggers a strong presumption of adequacy that Cervantes Intervenors have not come close to rebutting.

Proposed intervenors identify no legal theory, evidentiary position, or remedial stance that the DCCC is unwilling or unable to assert. At bottom, proposed Intervenors appear only to desire to include information and "expertise" more appropriate for amici. *See Perry*, 587 F.3d at 950, 955 (affirming denial of intervention and noting amicus as the proper vehicle for additional perspective).

Because all three *Arakaki* considerations favor finding adequacy, and because the State's defense of its own enactment adds a strong presumption proposed Intervenors do not come close to rebutting, intervention as of right must be denied.

## II.    At Most, Any Participation Should Be Limited to *Amicus*

Permissive intervention is no more appropriate than intervention as of right. Although Cervantes Intervenors' defenses share common questions of law and fact with the existing parties, Rule 24(b) is discretionary and expressly directs courts to consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Here, they concede they assert no new claims and no distinct legal theory; they simply wish to re-argue the same constitutional questions the State and the DCCC are already pressing,

from the vantage point of partisan supporters of Proposition 50. Adding yet another full set of parties and counsel to make duplicative arguments would only complicate case management, lengthen briefing, and risk delay, without adding any unique legal perspective. To the extent they believe their political background, "personal experiences," or counsel's redistricting expertise would "aid the Court," those are classic *amicus* contributions, not a basis for full party status under Rule 24(b). If the Court nonetheless concludes that their presence could add some limited value, the proper vehicle is *amicus* participation.

The Ninth Circuit has expressly approved the *amicus* route for aligned campaign entities. In *Perry*, the court upheld the denial of intervention to the official Proposition 8 campaign and noted that the campaign could "seek leave to file amicus briefs on specific legal issues that [it] believe[d] require elaboration or explication that the parties fail to provide." 587 F.3d at 950. That model fits here: if Intervenors believes their political support and knowledge of a specific Latino or community-impact issue is underdeveloped, it can address it as amicus without becoming a full party.

## CONCLUSION

Proposed Intervenors share the same ultimate objective as the State and the DCCC: defending Proposition 50's congressional map, including the majority-Latino districts, against Plaintiffs' challenge. Under *Arakaki* and *LULAC v. Wilson*, the State's defense of its own law is presumed adequate in these circumstances, and Cervantes Intervenors have not come close to making the "very compelling showing" required to rebut that presumption. Its concerns are speculative, its interests are generalized and derivative, and its proposed contribution would not add anything to existing defendants and their experienced counsel.

The motion to intervene as of right should be denied. If the Court permits any involvement at all, it should be limited to *amicus* participation.

1 | Date: November 18, 2025

By:  /s Mark P. Meuser
MICHAEL A. COLUMBO (SBN: 271283)
mcolumbo@dhillonlaw.com
**DHILLON LAW GROUP INC.**
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 944-4996

SHAWN COWLES (SBN: 163826)
scowles@dhillonlaw.com
MARK P. MEUSER (SBN: 231335)
mmeuser@dhillonlaw.com
**DHILLON LAW GROUP INC.**
4675 MacArthur Court, Suite 1410
Newport Beach, CA 92660

AMBER R. HULSE (Admitted PHV)
ahulse@dhillonlaw.com
**DHILLON LAW GROUP INC.**
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314

*Attorneys for Plaintiffs*

