JESUS A. OSETE*
Principal Deputy Assistant Attorney General
MATTHEW ZANDI (CA No. 203329)
Chief of Staff & Special Counsel
MAUREEN RIORDAN (NY No. 2058840)
Acting Chief, Voting Section
ANDREW BRANIFF (IN No. 23430-71)
Acting Chief, Appellate Section
DAVID GOLDMAN (VA No. 98922)
JOSHUA R. ZUCKERMAN (DC No. 1724555)
GRETA GIESEKE (TX No. 24132925)
Attorneys
    Civil Rights Division
    United States Department of Justice
    950 Pennsylvania Avenue, NW
    Washington, D.C.  20530
    Telephone: (202) 514-3847
    E-Mail:     greta.gieseke@usdoj.gov

BILAL A. ESSAYLI
First Assistant United States Attorney
JULIE A. HAMILL (CA No. 272742)
Assistant United States Attorney
    United States Attorney's Office
    300 North Los Angeles Street, Suite 7516
    Los Angeles, California 90012
    Telephone: (213) 894-2464
    E-Mail:     julie.hamill@usdoj.gov

Attorneys for Plaintiff-Intervenor
UNITED STATES OF AMERICA

MICHAEL A. COLUMBO (SBN: 271283)
mcolumbo@dhillonlaw.com
SHAWN COWLES (SBN: 163826)
scowles@dhillonlaw.com
MARK P. MEUSER (SBN: 231335)
mmeuser@dhillonlaw.com
AMBER R. HULSE (Admitted PHV)
ahulse@dhillonlaw.com
**DHILLON LAW GROUP INC.**
4675 MacArthur Court, Suite 1410
Newport Beach, CA 92660
Telephone: (415) 433-1700
Fax: (415) 520-6593

Attorneys for Plaintiffs

---

* Assistant Attorney General Harmeet K. Dhillon is recused from this matter.

1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

9

10  DAVID TANGIPA, *et al.*,

11                           *Plaintiffs*,

12          and

13  UNITED STATES OF AMERICA,

14                     *Plaintiff-Intervenor*,

15          v.

16  GAVIN NEWSOM, in his official
    capacity as the Governor of California,
17  *et al.*,

18                           *Defendants*,

19

20

Case No.   2:25-cv-10616-JLS-WLH-KKL
Three-Judge Court

**PLAINTIFFS AND PLAINTIFF-INTERVENOR'S OPPOSITION TO DEFENDANTS AND DEFENDANT-INTERVENORS' *EX PARTE* JOINT APPLICATION TO MODIFY PRELIMINARY INJUNCTION BRIEFING AND HEARING SCHEDULE**

Honorable Kenneth Kiyul Lee
Honorable Josephine L. Staton
Honorable Wesley L. Hsu

Hearing Date: December 3, 2025
Time: TBD
Courtroom:  TBD

21
22
23
24
25
26
27
28

This case concerns a challenge to California's recently enacted congressional map (Proposition 50 map), which, absent court intervention, establishes California's congressional districts for the 2026-2030 elections. Defendants Governor Gavin Newsom and Secretary of State Shirley Weber have twice stipulated that congressional candidates "must know the district boundaries for these new districts before [December 19, 2025]," and have twice agreed to an expedited briefing schedule that requested a preliminary injunction hearing by December 5, 2025.[1] Dkts. 17 at 1-2; 33 at 1-2. Defendant-Intervenor DCCC likewise agreed to the current expedited briefing schedule. Dkt. 33 at 1. And the Cervantes parties moved to intervene as defendants without opposition by the United States on the condition that they would comply with the existing schedule. Dkt. 49. Now, almost a week after the Court adopted the parties briefing schedule and scheduled a December 3, 2025 hearing, and two days before their response briefs are due, Defendants, DCCC, and the Cervantes parties attempt to walk back their previous stipulations and representations and ask the Court to push the preliminary injunction hearing for two months, until at least late January.[2] Dkt. 71. Because Plaintiffs and Plaintiff-Intervenor the United States will suffer irreparable harm if the unlawful map is not enjoined by December 19, 2025, and delaying judicial review increases the risk of *Purcell* issues that would ensure even further irreparable harm, Plaintiffs and the United States oppose Defendants' *Ex Parte* Joint Application to Modify Preliminary Injunction Briefing and Hearing Schedule (the "Application"). Dkt. 71.

---

[1] Indeed, Governor Newsom and Secretary Weber initially represented to the Court that they were prepared to have the hearing as early as November 18, 2025. Dkt. 33 at 2.

[2] Defendant-Intervenor DCCC was not party to this case when Plaintiffs and Defendants entered the original stipulation and request for expedited briefing. DCCC joined the second stipulation in part, agreeing to the briefing schedule that it now seeks to challenge. Dkt. 33 at 1 n.1.

## BACKGROUND

Just over two weeks ago, on November 4, 2025, California passed Proposition 50 and thereby adopted a new congressional map for elections occurring in 2026-2030. The very next day, November 5, Plaintiffs filed this lawsuit against California Governor Gavin Newsom and Secretary of State Shirley Weber. Dkt. 1. On November 6, Plaintiffs were preparing to file an application for a temporary restraining order, but upon request, agreed to postpone their application for one day to give Defendants the opportunity to consider and oppose it. The next day, just minutes before Plaintiffs were to file their application for a TRO, Defendants requested that Plaintiffs instead file a motion for preliminary injunction, along with a stipulated briefing schedule. Decl. of Meuser ¶¶ 6-9. Plaintiffs filed their Motion for a Preliminary Injunction, Dkt. 15, that day, and the then-existing parties filed a Joint Stipulation for an Order Shortening Time. Dkt. 17. The parties stipulated:

> December 19, 2025, is the first day that individuals who will be candidates in each congressional district can begin to gather signatures to qualify as a candidate in lieu of paying a candidate filing fee *and therefore must know the district boundaries for these new districts before that date.*

*Id.* at 1 (emphasis added). Accordingly, Plaintiffs asked the Court to "issue an order scheduling the hearing on the Motion for Preliminary Injunction on a date and time convenient to the Three-Judge Court between November 18, 2025 and November 24, 2025"—a request that Defendants expressly did not oppose. *Id.* at 1-2. The parties also agreed that Defendants would file their response in opposition to Plaintiffs' Motion for Preliminary Injunction by November 14, 2025, and Plaintiffs would file their reply by November 17, 2025. *Id.* at 2.

DCCC filed an unopposed Motion to Intervene a few days later on November 10, Dkt. 20, which the Court granted. Dkt. 26. On November 13, the United States filed an

unopposed Motion to Intervene (which the Court granted the next day, Dkt. 38), Dkt. 28, and a Motion for Preliminary Injunction. Dkt. 29. The same day, following approximately twelve phone calls between counsel for the United States and counsel for Defendants—including an at-length discussion regarding expert evidence—all then-existing parties filed a Joint Stipulation for Order Shortening Time. Hamill Decl. ¶ 9; Dkt. 33. In this second joint stipulation, the parties agreed that Defendants and DCCC would file their responses in opposition to Plaintiffs' and the United States' motions for preliminary injunction by November 21, and Plaintiffs and the United States would file their replies by November 24. *Id.* at 2. The parties—other than DCCC, who only joined the joint stipulation as to the briefing schedule—also stipulated, as in the original stipulation, that congressional candidates "must know the district boundaries for these new districts" before December 19, 2025. *Id.* at 1. Plaintiffs and the United States also requested—without objection by Defendants Governor Newsom or Secretary Weber—a preliminary injunction hearing on or before December 5, 2025. *Id.* at 3. The following day, November 14, the Court issued an order adopting the parties' stipulated briefing schedule and setting a preliminary injunction hearing on December 3, 2025. Dkt. 38.

On November 15, League of United Latin American Citizens (LULAC) moved to intervene. Dkt. 39. Plaintiffs opposed intervention. *Id.* at 1. The United States did not oppose, so long as LULAC agreed to abide by the existing schedule.[3] *Id.*; Hamill Decl. ¶ 11, Ex. 1. On November 16, the Cervantes parties moved to intervene. Dkt. 49. Again, Plaintiffs opposed intervention, but the United States did not, so long as the Cervantes parties agreed to abide by the existing schedule. *Id.* at 3; Hamill Decl. ¶ 11, Ex. 2. Both motions to intervene are pending as of the time of this filing.

A few days later, on November 18, counsel for the United States emailed counsel for Defendants and DCCC a proposed schedule for the December 3 hearing. Hamill Decl.

---

[3] LULAC is not party to the Application.

¶ 12, Ex. 3. The United States proposed three live witnesses and a joint stipulation of facts and exhibits. *Id.* The email also included:

> L.R. 7-8 states that a party must file 14 days before the hearing a request with the Court regarding which of the party's declarants we wish to cross-examine (Tomorrow). We do not know Defendant's or Defendant-Intervenor's declarants. **<u>Can you please provide us with the names of your declarants by 10:00 am Pacific time tomorrow?</u>**

*Id.* After receiving no response, counsel for the United States followed up the next day: "I am following up on my request that Defendants and Defendant-Intervenors provide us with the names of your declarants." Hamill Decl. ¶ 13, Ex. 4. The United States again received no response regarding the hearing schedule, even after counsel for both the United States and Plaintiffs sent additional follow-up emails.[4] Hamill Decl. ¶¶ 14-15, Ex. 5-6. Instead, later that evening, counsel for the United States received an email from Governor Newsom and Secretary Weber's counsel with the subject line "Motion to Amend PI Schedule":

> In light of developments from yesterday, including the Texas opinion and your email contemplating a fulsome evidentiary hearing on December 3, Defendants (along with Defendant-Intervenors DCCC and Cervantes Intervenors) intend to move the court to amend the PI schedule, and specifically to extend the briefing and hearing to allow more time to litigate these fact-specific claims. Please let us know your position on this motion as soon as possible. If we do not hear from you by 7:00 pm PT this evening, we will assume you oppose.

---

[4] To this day, Plaintiffs and the United States still do not know who Defendants' declarants are, notwithstanding that Plaintiffs first filed this suit over two weeks ago and Defendants initially represented that they would be prepared for a hearing as early as November 18, 2025, which was two days ago.

Hamill Decl. ¶ 16, Ex. 7. Counsel for the United States promptly responded:

> As you know, we did not oppose intervention based on the agreement by the parties and proposed intervenors to adhere to the accelerated briefing schedule. This is now the third time the State has delayed responding to plaintiffs' motion for preliminary injunction.
>
> It seems rather disingenuous for the State to feign a need to amend the briefing schedule now, blaming a district court case in another jurisdiction that is not binding on the Central District of California.
>
> The United States opposes this 11th hour shift, and is still waiting for defendant and defendant intervenor to disclose their declarants.

*Id.*

Governor Newsom, Secretary Weber, DCCC, and the Cervantes parties (hereinafter, collectively "Defendants") subsequently filed the present Application just before midnight on November 19.[5] Dkt. 71. They ask the Court to (1) extend their November 21, 2025 deadline to respond to the United States' and Plaintiffs' motions for preliminary injunction; (2) postpone the December 3, 2025 hearing until at least January 20, 2026; and (3) allow limited discovery before the hearing. *Id.* at 1. Because Plaintiffs and the United States will suffer irreparable harm if the unlawful map is not enjoined by December 19, 2025, and further delaying judicial review increases the risk of *Purcell* issues, the Court should deny the Application.

---

[5] Neither Plaintiffs nor the United States received oral notice of the *ex parte* application, as required by L.R. 7-19.1.

**ARGUMENT**

Defendants ask the Court to postpone the briefing schedule and hearing, and expose Plaintiffs to irreparable harm, simply because they purportedly miscalculated the complexity of this case. The Court should deny that request.

Referring to the Joint Stipulation that Governor Newsom and Secretary Weber joined, Defendants submit: "[C]ontrary to [Plaintiffs' and the United States'] rushed attempt to push this case through to resolution on a superficial record so that they can 'pursue their appellate remedies,' the racial gerrymandering claims they have brought are not so simple." Dkt. 71 at 3. Defendants cite two developments that apparently prompted their sudden revelation that this is a complex case: (1) counsel for the United States sent Defendants a proposed schedule, identifying three live witnesses, for the December 3, 2025 evidentiary hearing; and (2) in a separate redistricting case, a district court enjoined Texas's recently enacted map.[6]

Neither of these developments satisfactorily explain—or justify—Defendants' about-face. While the Texas opinion might be persuasive authority for this court to consider when ruling on the pending motions for preliminary injunction, it did not change the issues that are before this Court or the relevant evidence. Nor did the United States' proposed schedule, which simply listed the names of three witnesses who were already identified in this litigation. There is no basis for Defendants to second-guess the Court's informed decision to schedule a one-day hearing. This was not and still is not a complex case.

In fact, this is a straightforward racial-gerrymandering case that only requires a one-day hearing at the preliminary injunction phase, as the Court correctly concluded. Plaintiffs and the United States allege that California drew its congressional districts with race as the predominant factor, pointing to, among other things, statements by legislators

---

[6] Defendants also missed their deadline, under L.R. 7-8, to file a notice 14 days before the hearing that identifies the other parties' declarants who they wish to cross-examine.

characterizing Proposition 50 as a response to—in fact a "shield" against—what they perceived as a loss of minority voting power in Texas; the candid statements of the map drawer that the first thing he did was draw a "Latino district" and expand the number of VRA districts (designed to favor Latino voters) from fourteen to sixteen districts; the actual creation of sixteen districts in which Latino voters outnumbered all other races and where the Legislature announced that Proposition 50's map "expands Voting Rights Act districts that empower Latino voters."

The United States is only challenging the legality of District 13.[7] Plaintiffs challenge all sixteen VRA districts. Plaintiffs separately contend that Defendants can attempt to prove that the sixteen districts they challenge satisfies strict scrutiny, but they would have prove "that the white majority votes sufficiently as a bloc to enable it … usually to defeat the minority's preferred candidate." *Thornburg v. Gingles*, 478 U.S. 30, 50 (1986). However, as a matter of demographic fact the Defendants cannot overcome, there is no white majority in California voting as a block to defeat candidates Hispanics prefer. No amount of declarations or experts will alter that reality and Plaintiffs' case thus largely turns on Census data, published election results, and the State's own public legislative record. Plaintiffs and the United Staes both submit that a preliminary injunction hearing will not require multiple days of expert testimony or other witnesses.

Yesterday, in North Carolina, a three-judge court held a hearing on a far more complicated mid-decade racial-gerrymander challenge in a single day. *See Williams v. Hall*, No. 1:23-cv-01057 (M.D.N.C.); *NAACP v. Berger*, 1:23-cv-1104 (M.D.N.C.). In North Carolina, the legislature approved the new map on October 22, 2025, the supplemental Complaints were filed on October 30 and 31, and motions for a preliminary injunction were filed the same day. *Williams*, 1:23-cv-01057, ECF Nos. 180-187. Twenty

---

[7] The United States seeks the same relief as Plaintiffs, however. The United States' position is that the Court need only find that District 13 is illegally racially gerrymandered to grant the requested relief.

days later, on November 19, the three-judge court held a one-day hearing on the motions for preliminary injunction. *Williams*, 1:23-cv-01057, ECF No. 208.

Plaintiffs contend that, contrary to Defendants' claims, the Texas case decided yesterday is not analogous to this case. It required dueling experts on *Gingles* factors and inferences across multiple districts to unpack how the composition of minorities affected each district. By contrast, this case hinges on an expressly stated racial gerrymandering intent corroborated by sixteen districts crafted to ensure a Latino majority as well as evidence in the public domain of demographics and election history that preclude the Defendants from satisfying strict scrutiny.

Plaintiffs and the United States agree that this matter is more like the North Carolina case and likewise fit for a one-day hearing on preliminary relief, as the Court already assessed was appropriate.

But even if this were a complex case, attorneys frequently litigate—and courts frequently decide—complex issues, on short notice, to avoid irreparable harm. That is why preliminary injunctions exist. The Texas court's decision to hold a nine-day hearing does not suggest that this Court should do the same. The Texas court had time to hold a lengthy hearing; this Court does not. The Texas maps were adopted on August 29, the motion for preliminary injunction was filed on August 23 (before the map was signed into law), and a hearing was held from October 1-10, approximately two months before Texas's December 8 filing deadline. *See League of United Latin Am. Citizens v. LULAC*, No. 3:21-cv-00259-DCG-JES-JVB (W.D. Tex. Nov. 18, 2025), ECF No. 1437 at 50. The parties had ample time to retain experts, submit hundreds of exhibits, and otherwise prepare for a lengthy hearing. The parties and the Court here lack that luxury. And not because of any delay on the part of Plaintiffs or the United States, but because California chose to engage in mid-decade redistricting approximately four months ago, enacted legislation to call a special election to get the voter approval to amend the state constitution three months ago, and held a special election this month, approximately six weeks before candidates begin

gathering signatures. And as Governor Newsom and Secretary Weber have twice stipulated, congressional candidates "must know the district boundaries for these new districts before [December 19, 2025]."

Conspicuously absent from the Application is any mention of *Purcell v. Gonzalez,* 549 U.S. 1 (2006) or why the Court should simply accept—contrary to Defendants' previous representations—that there is no need for an Article III court to preliminarily decide the legality of the new map authorized by Assembly Bill 604 and Proposition 50 before December 19, 2025.[8] *Purcell* cautions courts against granting injunctive relief just before an election because "[w]hen an election is close at hand, the rules of the road should be clear and settled." *Democratic Nat'l Comm. v. Wisconsin State Legislature*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring in denial of application to vacate stay). The date at which deciding the legality of the Proposition 50 map may run afoul of *Purcell* is not black and white: "How close to an election is too close may depend in part on the nature of the election law at issue[.]" *Merrill v. Milligan*, 142 S. Ct. 879, 881 n.1 (2022) (Kavanaugh, J., concurring in grant of applications for stays). To avoid gray territory under *Purcell*, Plaintiffs and the United States have made every effort to afford sufficient time for judicial review before the December 19, 2025 filing deadlines.[9]

## CONCLUSION

After reviewing the parties' joint stipulation, and with knowledge of the issues in the case, the Court determined that a one-day hearing was sufficient. Plaintiffs and the United States saw no reason to second guess the Court's judgment but rather began preparing, in

---

[8] At best, Defendants' Application ignores an important consideration in redistricting litigation. At worst, the Application is a veiled attempt to push the proceedings in this case into a timeline that would all but force the Court to accept the unlawful map for the elections in 2026 under *Purcell*. Plaintiffs and the United States have made every effort to avoid this situation and believe that the current schedule is both equitable and achievable.

[9] These efforts include Plaintiffs and United States' agreement to submit reply briefs the Monday following Defendants' Friday deadline to respond. The United States also expressly conditioned its lack of opposition to the Cervantes parties' and LULAC's motions to intervene on their agreement to abide by the current schedule.

reliance on the parties' stipulations and the Court's order. That Defendants now regret an expedited schedule does not justify exposing Plaintiffs and the United States to the irreparable harm that will occur if an unlawful map is in effect on December 19, 2025, or if *Purcell* later bars relief. Plaintiffs and the United States therefore respectfully request that the Court deny Defendants' *Ex Parte* Joint Application to Modify Preliminary Injunction Briefing and Hearing Schedule. Dkt. 71.

DATED: November 20, 2025

By:/s/ Mark P. Meuser
MICHAEL A. COLUMBO
mcolumbo@dhillonlaw.com
**DHILLON LAW GROUP INC.**
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 944-4996

SHAWN COWLES
scowles@dhillonlaw.com
MARK P. MEUSER
mmeuser@dhillonlaw.com
**DHILLON LAW GROUP INC.**
4675 MacArthur Court, Suite 1410
Newport Beach, CA 92660

AMBER R. HULSE
ahulse@dhillonlaw.com
**DHILLON LAW GROUP INC.**
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314

*Attorneys for Plaintiffs*

Respectfully submitted:

JESUS A. OSETE*
Principal Deputy Assistant Attorney General

MATTHEW ZANDI
Chief of Staff & Special Counsel

MAUREEN RIORDAN
Acting Chief, Voting Section

ANDREW BRANIFF
Acting Chief, Appellate Section

DAVID GOLDMAN
JOSHUA R. ZUCKERMAN
*s/ Greta Gieseke*
GRETA GIESEKE
Attorneys
Civil Rights Division
United States Department of Justice

BILAL A. ESSAYLI
First Assistant United States Attorney
*s/ Julie A. Hamill*
JULIE A. HAMILL
Assistant United States Attorney
United States Attorney's Office

Attorneys for Plaintiff-Intervenor
UNITED STATES OF AMERICA

## ATTESTATION PURSUANT TO LOCAL RULE 5-4.3.4

This certifies, pursuant to Local Rule 5-4.3.4, that all signatories to this document concur in its content and have authorized this filing.


*s/ Mark P. Meuser*
Mark P. Meuser

---

* Assistant Attorney General Harmeet K. Dhillon is recused from this matter.