Lalitha D. Madduri (CA Bar No. 301236)
lmadduri@elias.law
Christopher D. Dodge* (DC Bar No. 90011587)
cdodge@elias.law
Max Accardi* (DC Bar No. 90021259)
maccardi@elias.law
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4652
F: (202) 968-4498

Abha Khanna* (WA Bar No. 42612)
akhanna@elias.law
Tyler L. Bishop (CA Bar No. 337546)
tbishop@elias.law
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180

Omar Qureshi (CA Bar No. 323493)
omar@qureshi.law
Max Schoening (CA Bar No. 324643)
max@qureshi.law
**QURESHI LAW PC**
700 Flower Street, Suite 1000
Los Angeles, CA 90017
T: (213) 600-6096
F: (213) 277-8989

*Counsel for Defendant-Intervenor DCCC*

*\* Admitted pro hac vice*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| **DAVID TANGIPA, _et al._,** | 2:25-cv-10616-JLS-WLH-KKL |
| Plaintiffs, | Three-Judge Court |
| and | |
| **UNITED STATES OF AMERICA,** | |
| Plaintiff-Intervenor, | **DCCC's _EX PARTE_ APPLICATION TO COMPEL DEPOSITIONS OF CERTAIN PLAINTIFFS[1]** |
| **v.** | |
| **GAVIN NEWSOM, in his official capacity as the Governor of California, _et al._,** | |
| Defendants, | |
| **DEMOCRATIC CONGRESSIONAL CAMPAIGN COMMITTEE, _et al._,** | |
| Defendant-Intervenors. | |

---

[1] LULAC Intervenors do not oppose the relief requested. State Defendants take no position on the application. Plaintiffs oppose.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................iv

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 3

LEGAL STANDARD.............................................................................................. 5

DISCUSSION .......................................................................................................... 6

I.    The Court should require a subset of Plaintiffs to sit for short depositions that
      seek facts relevant to the preliminary injunction hearing. ..................................... 6

      A.    Racial gerrymandering plaintiffs are not "nominal" parties and, by
            invoking this Court's jurisdiction, they are subject to deposition. .............. 6

      B.    Plaintiffs are highly likely to have relevant information that cannot be
            obtained from other sources. .......................................................................... 8

      C.    The short, remote depositions requested by DCCC poses no burden to
            Plaintiffs. ...................................................................................................... 12

CONCLUSION...................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.F.P. v. United States*,
No. 1:21-cv-00780-DAD-EPG, 2022 WL 2704570 (2022)..........................12

*Aguirre v. City of Los Angeles*,
No. CV 14-5659 CBM (SS), 2015 WL 12746233 (C.D. Cal. May 15,
2015)...............................................................................................................4, 7

*Ala. Legis. Black Caucus v. Alabama*,
575 U.S. 254 (2015) .......................................................................................9

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993) .....................................................................................10

*City of Los Angeles v. Cnty. of Kern*,
462 F. Supp. 2d 1105 (C.D. Cal. 2006).........................................................10

*Cooper v. Heatley*,
No. 2:12-CV-00602 KJM, 2015 WL 163002 (E.D. Cal. Jan. 7, 2015) ..........7

*Equal Emp. Opportunity Comm'n v. Recruit U.S.A., Inc.*,
939 F.2d 746 (9th Cir. 1991) ........................................................................11

*Erichsen v. Cnty. of Orange*,
No. CV 14-2357 JAK (SS), 2016 WL 6921610 (C.D. Cal. Mar. 31,
2016)................................................................................................................7

*Fredenburg v. Contra Costa Cnty. Dep't of Health Servs.*,
172 F.3d 1176 (9th Cir. 1999).......................................................................12

*Gill v. Whitford*,
585 U.S. 48 (2018) .....................................................................................8, 13

*Green v. CDCR*,
No. 2:14-cv-2854 TLN AC P, 2018 WL 4963122 (E.D. Cal. Oct. 15,
2018) ...............................................................................................................7

*Hall v. Holder*,
117 F.3d 1222 (11th Cir. 1997) ........................................................9

*Hansen Beverage Co. v. Cytosport, Inc.*,
No. CV 09-0031-VBF(AGRX), 2009 WL 5104260 (C.D. Cal. Nov. 4,
2009) ...............................................................................................12

*Herring v. F.D.I.C.*,
82 F.3d 282 (9th Cir. 1995) .............................................................8

*HP Inc. v. Liahuan7*,
No. EDCV202633JGBKKX, 2021 WL 2497929 (C.D. Cal. Jan. 4,
2021) .................................................................................................6

*Keystone Driller Co. v. Gen. Excavator Co.*,
290 U.S. 240 (1933) ........................................................................11

*Labbe v. Dometic Corp.*,
No. 2:20-CV-1975-DAD-DMC, 2024 WL 992242 (E.D. Cal. Mar. 7,
2024) ...............................................................................................12

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ................................................................6, 8, 13

*N. Am. Meat Inst. v. Becerra*,
420 F. Supp. 3d 1014 (C.D. Cal. 2019) ...........................................10

*Pioche Mines Consol., Inc. v. Dolman*,
333 F.2d 257 (9th Cir. 1964) ...........................................................5

*Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*,
204 F.3d 867 (9th Cir. 2000) ...........................................................8

*Rabb v. Figueroa*,
No. 1:23-CV-00843-JLT-SAB (PC), 2024 WL 4507636 (E.D. Cal.
Sept. 27, 2024) ..................................................................................7

*Riverdeep Interactive Learning, Ltd. v. MPS Multimedia, Inc.*,
No. C 06-5597 CW2006 WL 8459700 (N.D. Cal. Oct. 11, 2006) ................6

v

*Segal v. Amazon.com, Inc.*,
No. C11-0227RSL, 2011 WL 841317 (W.D. Wash. Mar. 7, 2011) ...............7

*Stokes v. City of Visalia*,
No. 1:17-CV-01350-SAB, 2018 WL 1116548 (E.D. Cal. Feb. 26, 2018)......7

*Strike 3 Holdings, LLC v. Doe*,
No. 25-CV-02286-PHK2025 WL 1676271 (N.D. Cal. June 13, 2025)..........6

*Tate v. United States*,
No. CV 15-9323-FMO (JPRX), 2017 WL 10543551 (C.D. Cal.
Apr. 24, 2017)...........................................................................2, 4, 7

*Tene v. City & Cnty. of San Francisco*,
No. C 00-03868 WHA, 2004 WL 1465726 (N.D. Cal. May 12, 2004)..........1

*Washington v. Seattle Sch. Dist. No. 1*,
458 U.S. 457 (1982) .........................................................................10

*Whitehurst v. Kauffmann*,
No. 214CV4320JVSGJS, 2017 WL 761254 (C.D. Cal. Jan. 4, 2017)...........7

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ...........................................................................11

**Rules**

Fed. R. Civ. P. 26(b)(1) .......................................................................5

Fed. R. Civ. P. 30(a)(1).....................................................................5, 7

Fed. R. Evid. 602 ..............................................................................13

L.R. 7-6 ........................................................................................6, 14

L.R. 7-8 ...........................................................................................14

## **INTRODUCTION**

Plaintiffs—the California Republican Party ("CAGOP"), an Assemblyman, and sixteen California voters—have invoked this Court's jurisdiction and ask it to redress their purported injuries. Their allegations are serious—they claim that supermajorities of the California Legislature and over seven million California voters enacted a new congressional map with "race as a predominant factor." Compl. ¶ 95. The preliminary relief they seek is equally serious—they ask this Court to nullify the will of the California electorate by striking down California's new, voter-approved map in its entirety. *See* ECF No. 16-1 at 28. Having brought such weighty matters before the Court, Plaintiffs must now stand by their claims, including that they are injured by the challenged map. After all, "[b]y filing suit, plaintiff[s] assumed the responsibility of proving through admissible evidence the serious allegations of [their] complaint." *Tene v. City & Cnty. of San Francisco*, No. C 00-03868 WHA, 2004 WL 1465726, at *8 (N.D. Cal. May 12, 2004).

Plaintiffs are now shirking that responsibility. After this Court ordered that any "witness who will be called to testify at the preliminary injunction hearing may be deposed," ECF No. 81, Defendants and Defendant-Intervenors (collectively, "Defendants") noticed depositions for each Plaintiff to inquire as to their bases for standing and the allegations supporting their claims and to determine whether any should be called live at the December 15 hearing. Defendants made clear any such depositions would be short—likely no more than an hour—and could be taken remotely. After Plaintiffs objected, Defendants offered to forgo depositions of every Plaintiff and focus instead on a representative from CAGOP and seven individual Plaintiffs who were particularly outspoken about Proposition 50 during the public debate over its enactment. Even so, Plaintiffs refused to make *any* of these witnesses available for deposition for *any* amount of time, based on their own self-serving proclamation that they are only "nominal" parties—a baffling assertion that only reinforces the need for depositions. In short, having come to this Court to seek immensely consequential relief for their purported injuries, Plaintiffs now claim they are mere bystanders to their own lawsuit.

1

That is not how federal litigation works. A litany of decisions confirms that a "Plaintiff cannot file a lawsuit and then refuse to be deposed in support of it." *Tate v. United States*, No. CV 15-9323-FMO (JPRX), 2017 WL 10543551, at *2 (C.D. Cal. Apr. 24, 2017). And these Plaintiffs clearly have discoverable information that is directly relevant to their request for preliminary relief, including as to standing, the purpose of Proposition 50 as debated by the California voters responsible for its enactment, and past inconsistent statements by Plaintiffs that reveal the clearly pretextual nature of this suit. Each of the relevant deponents spent months denouncing Proposition 50 as a *partisan* gerrymander that would help Democrats, only to assert the opposite in this litigation, now insisting the whole matter is about race. This cynical about-face bears directly on Plaintiffs' credibility, their professed injuries, the weight of their evidence about racial predominance, and the equitable factors the Court must consider in deciding whether to grant preliminary relief. This evidence is uniquely within Plaintiffs' possession, and DCCC will be prejudiced if they are unable to obtain it before the hearing.

The Court should therefore compel commonsense, targeted discovery—short depositions of this subset of Plaintiffs, taken by remote means at a time convenient to each deponent. Plaintiffs cannot claim such brief examinations constitute an undue burden. And, as Defendants' counsel have already explained to Plaintiffs' counsel, these short depositions will likely relieve these same witnesses from being called live at the December 15 hearing—conserving the Court's time and resources in the process—so long as Defendants are permitted to designate their deposition testimony as evidence. Plaintiffs have failed to identify any meaningful prejudice from such targeted discovery beyond their self-proclaimed invocation of nominal status—a stark contrast to the prejudice DCCC will suffer if not permitted to depose Plaintiffs. There is simply no good reason why this small group of Plaintiffs—having sought such momentous relief— should not be required to briefly respond to questions about their injuries, past statements, and allegations before this Court. The Court should promptly compel such discovery.

## BACKGROUND

Plaintiffs filed this suit on November 5, just hours after California voters overwhelmingly approved Proposition 50 following a hotly contested campaign by both sides. Plaintiffs were not bystanders to this campaign—many vigorously participated in public debate over Proposition 50, typically by attacking it as a *partisan* gerrymander or *Democratic* power grab. *E.g.*, Exs. 1–3 (CAGOP); Ex. 4 (Costa); Ex. 5 (Netter), Ex. 6 (Morris), Ex. 7 (Buchanan); Ex. 8 (Hoge); Ex. 9 (Tardif); Ex. 10 (Ramirez).[2] Yet the Complaint alleges that each Plaintiff is suffering "stigmatic and representational injury" as a result of Proposition 50 being a *racial* gerrymander, *see* Compl. ¶¶ 6–27—a surprising claim given Plaintiffs' past insistence that Proposition 50 was all about partisan politics. Nevertheless, immediately after Proposition 50 passed, Plaintiffs promptly sought preliminary relief for these supposed injuries. *See* ECF Nos. 15–16.

The Court set the preliminary injunction schedule on November 21. *See* ECF No. 81. Its order made clear that the parties would have to participate in limited, expedited discovery, including depositions for any witness to be called at the December 15 hearing. *See id.* at 2. Shortly after this order issued, Defendants served Rule 30(b)(1) deposition notices on the individual Plaintiffs. Ex. 11. The email conveying the notices stated that Defendants did "not anticipate most of these depositions taking much longer than an hour or so." *Id.* It further indicated that it would be "most convenient and efficient for all involved to conduct these depositions virtually." *Id.* Several days later, Defendants served a Rule 30(b)(6) notice on CAGOP. *See* Ex. 12. That notice identified seven indisputably relevant topics for the deposition, including: (1) Plaintiffs' allegations in the

---

[2] These exhibits reflect a small sampling of Plaintiffs' past public statements claiming that Proposition 50 is a *partisan* gerrymander. Plaintiffs have not yet produced any non-public documents on behalf of any Plaintiff, so it remains unknown what similar private statements Plaintiffs have made to this effect. In any event, Plaintiffs' public statements on this score are voluminous and directly at odds with the allegations in the Complaint. DCCC intends to further present this evidence in their preliminary injunction briefing and at the hearing.

3

complaint; (2) CAGOP's actions regarding Proposition 50 when it was before the Legislature; (3) CAGOP's actions in the election campaign that followed; (4) any analyses CAGOP made of the new Proposition 50 map; (5) any analyses CAGOP made of the prior congressional map; (6) materials in Plaintiffs' exhibits list; and (7) Plaintiffs' discovery responses.  *See* Ex. 13.

On the evening of November 30, Plaintiffs sent Defendants an "objection" to their deposition notices. *See* Ex. 14. The objection claimed that the individual Plaintiffs and CAGOP were "nominal plaintiffs" and mere "private citizens" who should not have to sit for a deposition "absent agreement or court order." *See id.* at 1, 3. The objection also claimed that any depositions would be unduly burdensome, oppressive, and duplicative. *See id.* at 2–5. And while Plaintiffs made token objections to the "scope" of any deposition of CAGOP, *id.* at 5, they failed to specifically object to any of the 30(b)(6) topics proposed by Defendants.

The next morning, December 1, Defendants responded. *See* Ex. 15 at 12–14. They explained that the Plaintiffs could not simply proclaim themselves to be "nominal" and noted that it "is axiomatic that a plaintiff must sit for a deposition in a suit he or she initiates." *Id.* at 13 (quoting *Aguirre v. City of Los Angeles*, No. CV 14-5659 CBM (SS), 2015 WL 12746233, at *7 (C.D. Cal. May 15, 2015)). While Defendants maintained their right to inquire of each Plaintiff the bases for their allegations, they nonetheless proposed a compromise—Defendants would agree to depose only a representative of CAGOP and the seven Plaintiffs who had been most outspoken regarding Proposition 50. *See id.*

Plaintiffs rejected that offer. *See* Ex. 15 at 12. They claimed that depositions "for individual plaintiffs and the CAGOP are beyond the limited scope of discovery that the Court has permitted." *Id.* Defendants promptly responded explaining that the brief, targeted depositions they were seeking both complied with the Court's order and the local rules and sought obviously relevant evidence uniquely within Plaintiffs' possession. *See id.* at 9–11. Defendants pointed out the absurdity of Plaintiffs coming to the Court with a demand for immensely consequential relief only to then claim "nominal" status. *Id.*

4

They highlighted their own good faith effort to limit depositions to Plaintiffs who might reasonably be called as witnesses at the hearing. *Id.* And they further reaffirmed that any deposition would be extremely brief, undercutting any notion of undue burden. *Id.* In pursuit of a compromise, Defendants further indicated that they would be willing to forego calling their chosen deponents during the hearing and submit designated deposition testimony instead. *Id.* at 9. Even so, Plaintiffs refused to budge, insisting in effect that none of the Plaintiffs had any discoverable information that could bear on Plaintiffs' own request for preliminary relief. *Id.* at 7–8. Plaintiffs further asserted they are "fully prepared to litigate the matter," *id.*, however they have filed no motion for a protective order in the seven days since receiving the deposition notices. *See Pioche Mines Consol., Inc. v. Dolman*, 333 F.2d 257, 269 (9th Cir. 1964) (noting that "Rule 30(b) places the burden on the proposed deponent to get a[ protective] order").

In light of the exigencies created by Plaintiffs' request for preliminary relief on an expedited timeline, DCCC informed Plaintiffs early on December 3 that they intended to seek relief from this Court. Ex. 15 at 6. Plaintiffs then appeared to change tune, indicating for the first time that they were "evaluating the issues [DCCC] raised" and looking for a "good faith solution." *Id.* at 5. But their only offer was to supply declarations from Plaintiffs—an inadequate means for testing the Plaintiffs' barrage of inconsistent statements, as DCCC explained. *Id.* at 3–4. DCCC therefore asked Plaintiffs to definitively confirm by 11:00 am whether they would make the requested Plaintiffs available for depositions. *Id.* Plaintiffs responded, again refusing to indicate that they would make the requested Plaintiffs available. *Id.* at 2–3. This motion promptly followed.

## **LEGAL STANDARD**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In pursuit of such discovery, a "party may, by oral questions, depose any person, including a party, without leave of court[.]" Fed. R. Civ. P. 30(a)(1). While a party typically does not need to engage in discovery prior to a Rule 26(f) conference, the

5

"Court may authorize early discovery before the Rule 26(f) conference if the requesting party establishes 'good cause' for the early discovery." *Strike 3 Holdings, LLC v. Doe*, No. 25-CV-02286-PHK, 2025 WL 1676271, at *3 (N.D. Cal. June 13, 2025). Likewise, Local Rule 7-6 reflects that motion practice may "require . . . oral examination of any declarant or any other witness" if the Court orders so in its discretion. L.R. 7-6. Courts have previously found the need to develop a factual record ahead of a preliminary injunction hearing to constitute such good cause. *E.g.*, *HP Inc. v. Liahuan7*, No. EDCV202633JGBKKX, 2021 WL 2497929, at *5 (C.D. Cal. Jan. 4, 2021); *Riverdeep Interactive Learning, Ltd. v. MPS Multimedia, Inc.*, No. C 06-5597 CW, 2006 WL 8459700, at *5 (N.D. Cal. Oct. 11, 2006). Here, the Court has already indicated that depositions should occur for "[a]ny witness who will be called to testify at the preliminary injunction hearing may be deposed." ECF No. 81.

## DISCUSSION

I.    **The Court should require a subset of Plaintiffs to sit for short depositions that seek facts relevant to the preliminary injunction hearing.**

    A.    **Racial gerrymandering plaintiffs are not "nominal" parties and, by invoking this Court's jurisdiction, they are subject to deposition.**

Plaintiffs have invoked this Court's subject-matter jurisdiction to ask for extraordinary relief—setting aside the congressional map recently approved by over seven million California voters and supermajorities of the California Legislature. Each has alleged that they are personally injured by this new map and seek redress from this Court. *See* Compl. ¶¶ 6–27 (alleging "stigmatic and representational injury" for each plaintiff). It is foundational that as the "part[ies] invoking federal jurisdiction," these Plaintiffs each "bear[] the burden of establishing" the elements of standing, which constitutes "an indispensable part of the plaintiff[s]' case." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Likewise, it is well-established that, "[b]y bringing this action, Plaintiff is obligated to participate in the discovery process, and being deposed is part of

that obligation." *Whitehurst v. Kauffmann*, No. 214CV4320JVSGJS, 2017 WL 761254, at *2 (C.D. Cal. Jan. 4, 2017).

Plaintiffs, however, demand a different set of rules, insisting that they may invoke the Court's jurisdiction and remedial power for their own political ends without submitting to discovery into the basis for their claims. They are wrong. The Federal Rules make clear that parties are presumptively subject to deposition. *See* Fed. R. Civ. P. 30(a)(1) (explaining parties may "depose any person, including a party, without leave of court"). And there is a legion of case law from within the Ninth Circuit making clear that a plaintiff—upon invoking federal jurisdiction—should reasonably expect to be deposed. *E.g.*, *Aguirre v. City of Los Angeles*, No. CV 14-5659 CBM (SS), 2015 WL 12746233, at *7 (C.D. Cal. May 15, 2015) ("It is axiomatic that a plaintiff must sit for a deposition in a suit he or she initiates."); *Cooper v. Heatley*, No. 2:12-CV-00602 KJM, 2015 WL 163002, at *4 (E.D. Cal. Jan. 7, 2015) ("It is plaintiff who initiated this lawsuit; it is therefore reasonable that he should anticipate being subject to a deposition regarding the matters at issue."); *Tate*, 2017 WL 10543551, at *2 ("Plaintiff cannot file a lawsuit and then refuse to be deposed in support of it."); *Stokes v. City of Visalia*, No. 1:17-CV-01350-SAB, 2018 WL 1116548, at *4 (E.D. Cal. Feb. 26, 2018) ("Plaintiff selected a federal civil action requesting forms of relief and the defendant has a right to depose a party under the rules. The rules are straightforward and plaintiff provides no authority to the contrary."); *Erichsen v. Cnty. of Orange*, No. CV 14-2357 JAK (SS), 2016 WL 6921610, at *3 (C.D. Cal. Mar. 31, 2016) ("[D]efendants generally have an unqualified right to depose plaintiffs in a pending civil action."); *Rabb v. Figueroa*, No. 1:23-CV-00843-JLT-SAB (PC), 2024 WL 4507636, at *4 (E.D. Cal. Sept. 27, 2024); *Green v. CDCR*, No. 2:14-cv-2854 TLN AC P, 2018 WL 4963122, at *2 (E.D. Cal. Oct. 15, 2018) ("It would be fundamentally unfair and prejudicial to defendants to permit plaintiff to continue to pursue this action without requiring his attendance and cooperation at his deposition."); *cf. Segal v. Amazon.com, Inc.*, No. C11-0227RSL, 2011 WL 841317, at *1 (W.D. Wash. Mar. 7, 2011) ("Moreover, plaintiffs, who have brought this suit, should

be able to answer deposition questions about their case without first obtaining defendant's discovery.").

The chief response offered by Plaintiffs is to declare that they are "nominal" parties to this suit. Ex. 14 at 1. But that bizarre proclamation only reinforces why DCCC must be entitled to test the sincerity of Plaintiffs' alleged injuries. A nominal party is one "who ha[s] no interest in the action" and is merely joined to "perform [a] ministerial act." *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.,* 204 F.3d 867, 873 (9th Cir. 2000). If Plaintiffs in fact have "no interest in the action," *id.*, they presumably lack standing as well, *see Herring v. F.D.I.C.*, 82 F.3d 282, 285 (9th Cir. 1995) ("A party with no interest in the litigation generally has no standing."). Accordingly, it cannot both be true that Plaintiffs are "nominal" to this action, Ex. 14 at 1, *and* that they are suffering "stigmatic and representational harm[s]" as a result of Proposition 50 that require relief from this Court, Compl. ¶¶ 6–27. Discerning the truth between these conflicting assertions is essential both to this Court's subject-matter jurisdiction and its remedial authority.

**B.    Plaintiffs are highly likely to have relevant information that cannot be obtained from other sources.**

Short, remote depositions are particularly warranted because the specific Plaintiffs that DCCC wishes to depose are highly likely to have discoverable information that is not available from other sources. Indeed, Plaintiffs effectively concede that they have discoverable information regarding standing, Ex. 14 at 1 ("The CA GOP and Voter Plaintiffs are nominal plaintiffs whose role in this litigation is to establish Article III standing."), which forms an "indispensable part of the[ir] case." *Lujan*, 504 U.S. at 561. That information is particularly critical in the redistricting context because the scope of any remedy the Court can grant is informed directly by Plaintiffs' injuries. *See, e.g.*, *Gill v. Whitford*, 585 U.S. 48, 73 (2018); *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 264 (2015). Plaintiffs' preliminary injunction motion asks this Court to "order the State to use the Citizen Redistrict [sic] Commission congressional district map during the

8

pendency of this litigation," ECF No. 16-1 at 28, but to obtain such statewide relief they must show cognizable injury in *every* congressional district in California. *See Alabama*, 575 U.S. at 264. DCCC therefore has a right to test Plaintiffs' standing claims to determine whether they can support the broad relief they seek at the preliminary injunction hearing. That is particularly so as to CAGOP, which claims to represent injured members across the state. *See* Compl. ¶¶ 25–27; Ex. 14 at 1 ("The CA GOP and Voter Plaintiffs are nominal plaintiffs whose role in this litigation is to establish Article III standing."), which forms an "indispensable part of the[ir] case." *Lujan*, 504 U.S. at 561. That information is particularly critical in the redistricting context because the scope of any remedy the Court can grant is informed directly by Plaintiffs' injuries. *See, e.g.*, *Gill v. Whitford*, 585 U.S. 48, 73 (2018); *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 264 (2015). Plaintiffs' preliminary injunction motion asks this Court to "order the State to use the Citizen Redistrict [sic] Commission congressional district map during the pendency of this litigation," ECF No. 16-1 at 28, but to obtain such statewide relief they must show cognizable injury in *every* congressional district in California. *See Alabama*, 575 U.S. at 264. DCCC therefore has a right to test Plaintiffs' standing claims to determine whether they can support the broad relief they seek at the preliminary injunction hearing. That is particularly so as to CAGOP, which claims to represent injured members across the state. *See* Compl. ¶¶ 25–27.

Separately, Plaintiffs are likely to have discoverable information regarding the purpose of Proposition 50. Each of the Plaintiffs who DCCC wishes to depose took part in the public debate over whether to enact Proposition 50. The substance of that pre-enactment debate offers evidence of Proposition 50's purpose and the credibility of Plaintiffs' allegations on that issue in this case—after all, if Plaintiffs truly believed that Proposition 50 was predominantly motivated by race, a factfinder would expect to see that reflected in Plaintiffs' commentary about the measure. *See, e.g.*, *Hall v. Holder*, 117 F.3d 1222, 1230 (11th Cir. 1997) (holding ballot measure was not racially discriminatory, in part because there was no evidence voters "perceive[d] the referendum to be a black

versus white issue" or evidence that voter behavior was "racially polarized" (citation omitted)). While Plaintiffs insist their campaign statements cannot possibly weigh on the merits of their claim, *see* Ex. 15 at 7–8, case law from within this Circuit directly refutes their theory. *See, e.g.*, *N. Am. Meat Inst. v. Becerra*, 420 F. Supp. 3d 1014 (C.D. Cal. 2019) (faulting plaintiffs challenging an enacted ballot initiative for failing to "put forward evidence from the initiative campaign or the California Voter's Information Guide . . . that tended to show a discriminatory or protectionist intent"), *aff'd*, 825 F. App'x 518 (9th Cir. 2020); *City of Los Angeles v. Cnty. of Kern*, 462 F. Supp. 2d 1105, 1114 (C.D. Cal. 2006) ("Because Measure E was enacted as a ballot measure, the Court may look to the nature of the initiative campaign to determine the intent of the drafters and voters in enacting it."); *cf. Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457, 471 (1982) (reviewing evidence from initiative campaign to assess discriminatory intent in racial discrimination suit); *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 540 (1993) (explaining relevant evidence of discriminatory intent includes "the specific series of events leading to the enactment or official policy in question" as well as "contemporaneous statements made by members of the decisionmaking body"). The content of the public debate over Proposition 50 therefore supplies powerful evidence as to whether California voters—the decisionmakers who ultimately approved Proposition 50—had reason to believe the measure was about race.

The publicly-available evidence shows a striking *lack* of concern from Plaintiffs about racial discrimination in the weeks leading up to Proposition 50's enactment—a conspicuous absence of evidence given the serious allegations in the Complaint filed just hours later. Instead, the public record reflects that Plaintiffs vocally opposed Proposition 50 as a *partisan* gerrymander and were concerned with the advantage it would hand *Democrats*—not Latinos. CAGOP, for example, sponsored advertisements and made social media posts attacking Proposition 50 as a *partisan* gerrymander. *E.g.*, Exs. 1–3 (CAGOP). The same is true for the seven individual Plaintiffs who DCCC seeks to depose—each openly spoke out against Proposition 50 in *partisan* terms. *E.g.*, Ex. 4

(Costa); Ex. 5 (Netter), Ex. 6 (Morris), Ex. 7 (Buchanan); Ex. 8 (Hoge); Ex. 9 (Tardif); Ex. 10 (Ramirez). These party statements confirm the Legislature's own declaration that *partisan* motivations predominated in enacting Proposition 50. And while these publicly available statements undermine Plaintiffs' claims, only through depositions can DCCC discern Plaintiffs' actual understanding of Proposition 50 and their choice to frame it as a partisan gerrymander in the public debate that preceded the measure's enactment by voters.

Relatedly, DCCC has a strong interest in examining these Plaintiffs about the stark inconsistencies between their prior statements and the allegations they make in their Complaint. Plaintiffs spent months assailing Proposition 50 as a *partisan* gerrymander— with little if any mention of race—only to allege *racial* gerrymandering hours after election day. Plaintiffs' flip-flopping bears directly on their standing claims—that they are suffering "stigmatic and representational injury" from being placed into "a district drawn with race as the predominant factor," Compl. ¶ 6—and on the credibility of their allegations. These discrepant statements also bear directly on equitable considerations the Court must weigh in determining whether to grant extraordinary preliminary relief, *see Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 26 (2008), as well as on equitable defenses that DCCC is likely to raise.

For example, the doctrine of unclean hands "insists that one who seeks equity must come to the court without blemish." *Equal Emp. Opportunity Comm'n v. Recruit U.S.A., Inc.*, 939 F.2d 746, 752 (9th Cir. 1991). It requires that plaintiffs be "frank and fair with the court" and that "nothing about the case under consideration should be guarded, but everything that tends to a full and fair determination of the matters in controversy should be placed before the court." *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 244 (1933) (citing Story's Equity Jurisprudence (14th Ed.) § 98)). Here, numerous Plaintiffs spent months publicly decrying Proposition 50 as a partisan gerrymander in order to sway public opinion and the ultimate enactment of the map, only to change their tune the second California voters overwhelmingly supported the measure. Plaintiffs'

11

inconsistency and lack of frankness informs whether and how this Court should exercise its equitable authority. *E.g.*, *Hansen Beverage Co. v. Cytosport, Inc.*, No. CV 09-0031-VBF(AGRX), 2009 WL 5104260, at *24 (C.D. Cal. Nov. 4, 2009) ("In weighing the equities, the Court also considers the Plaintiff's inconsistent statements[.]"); *cf.* *Fredenburg v. Contra Costa Cnty. Dep't of Health Servs.*, 172 F.3d 1176, 1179 (9th Cir. 1999) (explaining inconsistent statements may rise to the level of estoppel and at minimum can be "considered along with other evidence" in weighing the merits). DCCC therefore also has a strong interest in examining Plaintiffs to obtain facts about their conspicuous departure from their past characterizations of Proposition 50.

Finally, it bears emphasis that Plaintiffs have not produced *any* documents on behalf of the individual Plaintiffs and only a smattering of public communications on behalf of CAGOP. This lack of document production reinforces the need for depositions.

**C.    The short, remote depositions requested by DCCC poses no burden to Plaintiffs.**

Plaintiffs' remaining objections are implausible and grossly outweighed by DCCC's stark interest in obtaining relevant discovery. To start, Plaintiffs have altogether failed to explain how remote one-hour depositions constitute an undue burden, particularly given Defendants' offer to accept such deposition testimony in lieu of live testimony at the hearing. *See Labbe v. Dometic Corp.*, No. 2:20-CV-1975-DAD-DMC, 2024 WL 992242, at *4 (E.D. Cal. Mar. 7, 2024) ("Any burden to [the deponent] is minimal given the parties' agreement that the deposition will be conducted by remote means and counsels' representations that the deposition will, in all likelihood, be brief."); *cf.* *A.F.P. v. United States*, No. 1:21-cv-00780-DAD-EPG, 2022 WL 2704570, at *9 (E.D. Cal. July 12, 2022) (recognizing that the "availability of . . . depositions in lieu of

live testimony . . . eliminates any substantial burden that might be imposed on witnesses").

Their claims that these depositions will be duplicative likewise fail. Standing, after all, "is not dispensed in gross." *Gill*, 585 U.S. at 73 (citation omitted). Only each individual Plaintiff can speak to their own harm and the relief allegedly necessary for redress. *See Lujan*, 504 U.S. at 561 n.1 (explaining injury "must affect the plaintiff in a personal and individualized way"). Likewise, only each Plaintiff can explain their own past statements. *Cf.* Fed. R. Evid. 602. For similar reasons, Plaintiffs have failed to explain how the narrow, targeted deposition topics in Defendants' Rule 30(b)(6) notice are in any way improper or beyond the scope of these proceedings.

Plaintiffs also insist the Court's scheduling order restricts depositions to witnesses identified on the parties' "will call" list. Ex. 15 at 7–8. But that arbitrary dividing line makes no sense. If Defendants merely wanted to badger each Plaintiff with a pointless deposition, as Plaintiffs allege, it would have been simple enough to label them each as "will call" witnesses. Instead, Defendants sought to streamline the hearing by listing Plaintiffs as "may call" witnesses while explaining to the Court that they do not "anticipate calling all or even most of the named Plaintiffs to testify at the preliminary injunction hearing" but reserved the right to do so subject to information gleaned in upcoming depositions and discovery. ECF No. 101 at 8 n.4. In the parties' subsequent correspondence, Defendants offered to *forego* this reserved right to call these witnesses at the hearing in exchange for the opportunity to designate deposition testimony. Rather than accept this balanced approach—which would see only a handful of Plaintiffs deposed and close to none of them called at the hearing—Plaintiffs now contend that Defendants should be restricted in seeking discovery because they declined to take a maximalist approach on the witness list. That makes no sense.

Plaintiffs have also stated that they are not refusing depositions altogether, but merely at the preliminary injunction stage. Ex. 15 at 12. But that attempted feint is dubious. For one, all of Plaintiffs' (flawed) bases for refusing depositions now—

13

including their alleged "nominal" status and lack of discoverable information—are equally applicable to the merits stage. There is no sound basis for arguing that Plaintiffs will have discoverable information later but not now. Relatedly, as a practical matter, these preliminary injunction proceedings—rather than any future merits proceedings—are likely to determine which congressional districts California employs for the 2026 midterm elections. So Plaintiffs' effort to delay their depositions until that latter stage is, in effect, an effort to sit out participating in the discovery that is most consequential to resolving their own claims. The Court should not countenance such gamesmanship.

Finally, nothing in the Local Rules bars this relief. Local Rule 7-6 states that the Court may, "in its discretion, require or allow oral examination of any declarant or any other witness." L.R. 7-6. The Court has already exercised that discretion in view of the need to develop a proper evidentiary record for Plaintiffs' motion. *See* ECF No. 81. Similarly, Plaintiffs' invocation of Local Rule 7-8 is off the mark. Ex. 14 at 2. That rule *also* permits the Court to order examination "by deposition," L.R. 7-8, as the Court has done.

Plaintiffs set this machinery of litigation in motion; they must accept the gears of discovery that turn as a result. They have offered no good reason why the limited, proportional discovery DCCC wishes to take is improper, burdensome, or prejudicial. And against Plaintiffs' paper-thin objections stands Defendants' weighty interest in obtaining the important discovery described above. The Court should therefore compel such relief.

## <u>CONCLUSION</u>

The Court should compel a CAGOP representative, along with Plaintiffs Vernon Costa, Doug Buchanan, Mike Netter, Sayrs Morris, Roxanne Hoge, Michael Tardif, and Paul Ramirez, to sit for depositions by remote means ahead of the December 15 hearing.[3]

Dated: December 3, 2025                    Respectfully submitted,

*/s/ Lalitha D. Madduri*
Lalitha D. Madduri (CA Bar No. 301236)
Christopher D. Dodge* (DC Bar No. 90011587)
Max Accardi* (DC Bar No. 90021259)
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4652
F: (202) 968-4498
lmadduri@elias.law
cdodge@elias.law
maccardi@elias.law

Abha Khanna* (WA Bar No. 42612)
Tyler L. Bishop (CA Bar No. 337546)
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
akhanna@elias.lawtbishop@elias.law

---

[3] DCCC notes that the parties are already in agreement that Defendants will be able to depose Plaintiffs David Tangipa and Eric Ching, who Plaintiffs intend to call live at the hearing. This application has no effect on that agreement.

15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Omar Qureshi (CA Bar No. 323493)
Max Schoening (CA Bar No. 324643)
**QURESHI LAW PC**
700 Flower Street, Suite 1000
Los Angeles, CA 90017
T: (213) 600-6096
omar@qureshi.law
max@qureshi.law

*Counsel for Proposed Intervenor-Defendant DCCC*

*\* Pro hac vice application forthcoming*

## **<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on December 3, 2025, I electronically served the foregoing document via electronic mail on all counsel of record.

<u>/s/ Lalitha D. Madduri</u>
Lalitha D. Madduri (CA Bar No. 301236)