

# POLITICAL CONSULTING AGREEMENT

This Political Consulting Agreement (this "**Agreement**"), by and between Redistricting Partners ("**Consultant**") and DCCC, HMP, and Jeffries for Congress (collectively "**Client**"), is entered into effective as of July 15, 2025 (the "Effective Date"). Client and Consultant shall sometimes be referred to herein collectively as the "Parties" and individually as a "Party."

Client desires to avail itself of the expertise and consulting services of Consultant and Consultant desires to make Consultant's expertise and consulting services available to Client upon the terms and conditions set forth. In consideration of the agreements herein contained, the Parties agree as follows:

1. <u>CONSULTING SERVICES</u>.

    a) Consultant hereby agrees to perform, at Client's request and for the benefit of Client, map drawing services (the "Services") during the Term of this Agreement.

    b) Consultant represents and warrants that Consultant will use its best efforts during the performance of the Services to promote the interests of Client and to devote such portion of Consultant's time and energies as is necessary to perform such Services. Consultant shall perform such Services in an efficient, expeditious, professional and skillful manner in keeping with the standards imposed on professionals in Consultant's industry. Except as otherwise approved in advance and in writing by Client, Consultant shall cause all the Services under this Agreement to be performed by Paul Mitchell.

    c) Consultant represents and warrants that, in performing the Services, it will at all times comply at its own expense with all federal, state, and local laws, ordinances, rules, regulations, orders, licenses, permits and other governmental requirements applicable to the Services including, but not limited to, any such requirements imposed upon Client with respect to the Services. Consultant shall adopt appropriate employment practices and policies in compliance with these legal obligations including, but not limited to, an equal employment opportunity and harassment policy.

2. <u>TERM OF AGREEMENT AND TERMINATION.</u>

    a) The "Term" of this Agreement shall commence as of the Effective Date, and shall terminate on the earliest of the following: (i) December 31, 2025; (ii) the date on which Consultant ceases to perform the Services set forth above; or (iii) the date on which the Agreement is terminated in accordance with Section 2(b).

    b) Client may terminate this Agreement at any time, without cause and without penalty, effective upon written notice to Consultant. Notwithstanding the foregoing, in the event that Consultant breaches this Agreement, Client may terminate this Agreement immediately.

Consultant expressly waives any right to suspend its performance under, or terminate, this Agreement with or without cause, except for Client's breach of the payment provisions of this Agreement on ten (10) days' prior written notice, provided that Consultant must give Client the ability to cure such breach within the ten (10) day notice period. In the event of any termination, Client's sole liability and Consultant's exclusive remedy is limited to reimbursement of costs and expenses incurred prior to the date of termination in accordance with Section 3(b) and payment of the fees earned by Consultant in accordance with Section 3(a).

3. FEES; EXPENSES; INVOICES.

a) Rate of Compensation. Consultant shall receive as sole compensation for the Services a total fee of $325,000. The fee may be paid in separate installments by DCCC, HMP, and Jeffries for Congress. In the event that any fees were pre-paid, Consultant shall promptly reimburse Client for the pro-rata share of fees that reflect the Services that were not performed.

b) Expenses. Unless otherwise specified in this Agreement, Consultant shall be responsible for payment of all ordinary expenses incurred in the performance of the Services, including telephone, fax, internet connection, computer paper, printer ink, etc. Consultant must obtain pre-approval from Client for all extraordinary prior to incurring or invoicing any such expenses, and all travel in connection with the Services must be arranged in compliance with any travel policy that Client shall put in place and provides to Consultant. When incurring any extraordinary expenses, Consultant shall always select the lowest reasonable cost alternative. Reimbursement of extraordinary will not be made unless and until receipts and documentation corresponding to such expenses are provided to Client.

c) Invoices. In order to receive payment, Consultant shall submit an invoice setting forth Consultant's fee and any extraordinary expenses incurred. Each of Consultant's invoices must be itemized as reasonably specified by Client. Client shall have no responsibility to pay for any extraordinary expenses that are not incurred in compliance with this Section 3 or for which Consultant does not provide an acceptable receipt. Receipts must be attached for all extraordinary expenses. Extraordinary expenses will only be reimbursed if submitted with the next invoice following Consultant's receipt of expenses.

d) Exclusivity of Compensation. Consultant may not enter into any fee sharing arrangements or accept payment, kickbacks, referral fees, or any other form of compensation from any entity or individual other than Client in connection with the Services performed pursuant to this Agreement.

e) Third Party Resources. Excluding the use of sub-contractors as governed by Section 15, to the extent that any equipment, support services or other resources are used in connection with the Services that are owned or paid for by a third party entity, including but not limited to office space, related utilities and overhead, office supplies, secretarial or other support staff time, travel expenses, and the like ("**Third Party Resources**"), the fair market

value of the use of Third Party Resources shall be paid for in advance by Client to such entity. Consultant shall prepare an itemized invoice of any Third Party Resources that Consultant anticipates using in advance, and submit such invoice to Client for approval, which Client may withhold in its sole discretion. Client shall pay for all approved itemized Third Party Resources before Consultant uses any Third Party Resources in connection with the Services. Consultant shall not employ or otherwise use any Third Party Resources in connection with the provision of the Services if such employment or other use would result in Client being deemed to have received a contribution under the Federal Election Campaign Act of 1971, as amended (the "**Act**").

4. COORDINATION; PRESS; PROMOTIONAL RESTRICTIONS.

   a) Coordination. Consultant shall coordinate all activities as instructed by Client or Client's authorized representatives.

   b) Press. Consultant agrees that it is not, under any circumstances, authorized to communicate with any member of the press regarding any aspect of this Agreement, the Services, or any knowledge or information relating to Client or its activities, without express, prior approval of Client or Client's authorized representative. Consultant shall refer promptly all queries from the press, in whatever form or circumstances they are made, to Client or Client's authorized representative.

   c) Promotional Restrictions. Unless otherwise agreed upon in writing in advance by the Chief Operating Officer or their designee of Client, Consultant shall not (i) issue any press releases or other communications identifying Consultant as providing the Services to Client; or (ii) use Client's name, service marks, trademarks or logos in press releases or other public communications, except that Consultant may list Client as a client on its website. Notwithstanding the above, Consultant shall remain subject to and shall comply with the nondisclosure and confidentiality provisions of Section 6.

5. MATERIALS.

   a) Public Materials: Consultant shall provide Client the opportunity to review in advance all content of any kind to be used in the performance of the Services that will be in any way distributed, posted or disseminated to persons other than Client or Consultant ("**Public Materials**"). Consultant agrees that Client maintains final decision-making authority over the content of all Public Materials. Consultant agrees that all such Public Materials shall not contravene any term of this Agreement. Consultant shall work with Client to ensure that all such Public Materials comply with the requirements of federal and state law and regulations, including any disclaimer requirements.

6. NONDISCLOSURE & CONFIDENTIALITY; DATA SECURITY

   a) Consultant may not, directly or indirectly, at any time during the Term of this Agreement or thereafter, and without regard to when or for what reason this Agreement shall

terminate, divulge, sell, lease, transfer, furnish, make accessible, or permit the disclosure to anyone (other than Client or other persons employed or designated by Client) any Confidential Information. Consultant may collect, store, access, use, process and maintain Confidential Information only for the purpose of performing the Services. Nothing herein shall limit any other non-disclosure of confidentiality agreements entered into between Consultant and Client.

b)  The term "**Confidential Information**" means any knowledge or information disclosed by Client to Consultant, Consultant to Client, or otherwise learned or acquired by Consultant during the period beginning on the first day of Consultant's service relationship with Client (whether prior to or as of the Effective Date) through the effective date of termination of this Agreement, regardless of medium, including, but not limited to:



Notwithstanding the foregoing, Confidential Information will not include any information which is (i) generally available in the public domain through no action or inaction of Consultant; (ii) already in the possession of Consultant at the time of disclosure by Client to Consultant as shown by Consultant's records prior to the time of disclosure; (iii) obtained, generated, produced or otherwise acquired during the course of the Services by Consultant from a third party without a breach of such third party's obligations of confidentiality; (iv) disseminated to the public by Consultant with Client's prior written consent or (v) independently developed by Consultant without use of or reference to Client's Confidential Information, as shown by Consultant's records. Information shall be deemed to be Confidential Information even if no legal protection has been obtained or sought for such information and whether or not Consultant has been notified that such information is Confidential Information.

c)  Consultant shall refer promptly to Client all queries from third parties regarding Client. Consultant shall be permitted to disclose Confidential Information solely to those

employees, permitted subcontractors, counsel, and other professional advisors of Consultant on a "need-to-know" basis to perform the Services and meet Consultant's obligations under this Agreement; provided, however, that all such persons shall be subject to non-disclosure and confidentiality obligations to Consultant substantially similar to the obligations of Consultant set forth in this Section 6, and provided further that Consultant shall be liable to Client for any unauthorized use or disclosure of Confidential Information by any such persons.

d) Consultant shall not be liable for disclosure of Confidential Information if such disclosure is pursuant to judicial action or other lawfully compelled disclosure, provided that Consultant notifies Client, by email and with a copy by registered mail, of the need for such disclosure within two (2) days after such need becomes known and gives Client a reasonable opportunity to contest such disclosure or seek other appropriate relief.

e) Upon expiration or termination of this Agreement for whatever reason or upon written request by Client and notwithstanding any ongoing dispute of any kind, Consultant shall return or destroy, at Client's election, all Confidential Information to Client, regardless of the form in which Confidential Information appears or is stored.



i) Consultant will ensure that all Confidential Information resides in, and may be accessed only from within, the United States, unless approved in writing in advance by Client. Consultant shall also ensure that all persons who have access to Confidential Information (if any are so permitted pursuant to the terms of this Agreement) are citizens or lawfully admitted permanent residents of the United States.

7.   ASSISTANCE WITH GOVERNMENT INQUIRY. Consultant agrees to provide, in a timely manner, and at no additional cost to Client, all documents and services, including reasonable personal services, necessary to assist Client in connection with any matter, audit, inquiry or investigation of Client by the Federal Election Commission or by any other government entity.

8.   OTHER CONSULTING SERVICES. Consultant, including its employees and principals, may provide independent consulting services to other individuals or entities, provided, however, that any such services must strictly comply with the provisions of this Agreement, including, without limitation, the following:

a) Such other independent consulting services shall in no way impair Consultant's ability to provide the Services or present a conflict with the interests of Client.

b) In providing services to its other clients, Consultant must observe in full the confidentiality requirements of this Agreement and, without limiting the foregoing, may not use any Client resources, or use or convey any information about the plans, projects, activities, or needs of Client. Consultant may not use or convey any client-specific information used previously by Consultant in providing services to Client.

c) Notwithstanding the restrictions set forth in this Section 8, nothing shall prevent Consultant from using or conveying information obtained from a publicly available source, in providing services to its other clients.



9. **BREACH BY CONSULTANT.** Each Party recognizes that the Services are special, unique and extraordinary in character, and that in the event of breach by Consultant of the terms and conditions of this Agreement to be performed by Consultant, Client shall be entitled, if it so elects, to institute and prosecute proceedings in any court of competent jurisdiction, either in law or in equity, to seek damages, obtain an injunction or enforce the specific performance of this Agreement.

10. **INDEMNIFICATION; LITIGATION BY THIRD PARTIES.**

   a) Consultant agrees to indemnify and hold harmless Client against any and all losses, liabilities, damages, demands, settlements, judgments, costs and expenses, including reasonable attorneys' fees, sustained as a result of (i) any claim or action arising from or in connection with any Services performed by Consultant pursuant to this Agreement (ii) Consultant's breach of any of the obligations, representations, warranties or covenants set forth in this Agreement, or (iii) any Security Incident.

   b) If Consultant is a party to litigation, an audit, a document request, a subpoena, an investigation, an inquiry, an administrative proceeding, or any other legal proceeding, which is related to any work performed under this Agreement or related to Client, Consultant must provide Client with prompt notice and copies of all related documents. Client may, at its discretion, pay for the response or defense of such action provided that Client shall be given sole control of the defense and/or settlement, including choice of legal counsel, and Consultant shall cooperate with Client in responding, defending, or settling such proceedings.

   11. **INDEPENDENT CONTRACTOR.** Consultant shall perform the Services as an independent contractor with respect to Client, and nothing in this Agreement shall create, or be deemed to create, any relationship of employer and employee between Client and Consultant. As an independent contractor, Consultant is responsible for payment of all applicable obligations to state and/or federal governmental agencies including workers' compensation, income tax, unemployment tax, business registration fees, etc.



13.  ASSIGNMENT. Except as specifically set forth in this Agreement, the rights and interests of Consultant in this Agreement may not be sold, transferred, assigned, pledged or hypothecated. Any assignment in violation of the foregoing shall be deemed null and void. In the event of any attempted assignment or transfer of rights hereunder contrary to the provisions hereof, Client shall have no further obligations or liability for payments hereunder. Client may assign the Agreement, and any and all of its rights and interests in the Agreement by providing Consultant with written notice of such assignment.

14.  MAINTENANCE OF RECORDS. Consultant shall maintain adequate books and records in a manner consistent with the accounting and professional standards ordinarily followed within Consultant's industry, except as Consultant may be otherwise directed by Client. All books and records shall be maintained for up to thirty-six (36) months after expiration or termination of this Agreement and open to inspection and copying by Client. Consultant shall reimburse Client for any additional costs incurred by Client in reviewing, updating, supplementing or otherwise correcting the books and records of Consultant in connection with any breach of its obligation under this Section 14, if, after demand by Client, Consultant shall fail to promptly correct the breach. Consultant shall maintain a complete record of all contracts or other agreements for the work relating to the Services.

15.  USE OF SUB-CONTRACTORS. Except as otherwise approved in advance in writing by Client, all Services shall be performed on behalf of Client by Consultant. Consultant is not permitted to hire or utilize sub-contractors to provide Services pursuant to this Agreement unless such sub-contractor is specifically approved in writing by Client and such sub-contractors agree to comply with all applicable terms of this Agreement. Consultant is fully responsible and liable for full compliance with this Agreement by any of its subcontractors as if the act or omission had been performed by Consultant. A sub-contractor hired to provide the Services may not accept, or solicit, any kickbacks, referral fees, or fee sharing for its work to provide the Services. A sub-contractor hired to provide Services may not accept any compensation for Services from any entity or individual other than Client or

Consultant. Consultant may not markup the fee charged by any sub-contractor performing Services. Notwithstanding any use of sub-contractors, all materials or goods procured or produced pursuant to this Agreement must be made in the United States, unless prior written approval is obtained from Client. All Services must be performed in the United States.

16. GOVERNING LAW; CAPTIONS. This Agreement contains the entire agreement between the Parties and shall be governed by the laws of the District of Columbia. Any action or litigation concerning this Agreement shall take place exclusively in the courts located in the District of Columbia, and the parties expressly consent to the jurisdiction of, and venue in such courts. Section headings are for convenience of reference only and shall not be considered a part of this Agreement.

17. PRIOR AGREEMENTS. This Agreement supersedes and terminates all prior agreements between the Parties relating to the subject matter herein addressed with the exception of non-disclosure agreements.

18. NOTICES; APPROVAL. Any notice or other communication shall be in writing and shall be deemed effective when: (i) delivered in person; (ii) if emailed (in the case of Consultant ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (iii) if mailed, on the date of deposit in the mail, postage prepaid, addressed, in the case of Consultant, to: 925 University Ave., Sacramento, CA 95828 and in the case of Client, to: DCCC, Attn: Chief Operating Officer, 430 S. Capitol Street SE, Washington, D.C., 20003; HMP, Attn: Marisa Mormile, 1029 Vermont Ave NW, Suite 300, Washington, D.C., 20005; Jeffries for Congress, PO Box 65322, Washington, D.C., 20035 with a copy to: Elias Law Group LLP, Attn: Rachel Jacobs, 250 Massachusetts Ave. NW Suite 400, Washington, DC 20001. Unless otherwise specified herein, where Consultant is required to get Client's prior, written approval, approval via email shall suffice. In the case of email notice, a hard copy shall also be provided in person or by mail.

19. SURVIVAL. The parties hereby agree that those provisions that by their nature are intended to survive the termination of this agreement, including indemnification and confidentiality provisions, shall survive the termination notwithstanding the cause of termination of this agreement.

[Signature Page Follows.]

IN WITNESS WHEREOF, Client and Consultant each has caused this Agreement to be signed by its duly authorized representative as of the day and year first above written.

**DCCC**

By: _____

Name: _____

Title: _____

**HMP**

By: _____

Name: _____

Title: _____

**JEFFRIES FOR CONGRESS**

By: _____

Name: _____

Title: _____

**REDISTRICTING PARTNERS**

By: _____

Name: _____

Title: _____

DCCC000192