FILED
CLERK, U.S. DISTRICT COURT

**12/21/25**

CENTRAL DISTRICT OF CALIFORNIA
BY_____CS_____DEPUTY
DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

1  **CARL GORDON**
2  **PROPOSED INTERVENOR, PRO SE**
   **UNIVERSITY OF THE 'HOOD®**
3  8306 Wilshire Blvd., No. 792
4  Beverly Hills, CA 90211
   Tel. (310) 926-3939 Email: universityofthehood@gmail.com
5

6  **UNITED STATES DISTRICT COURT**
7  **CENTRAL DISTRICT OF CALIFORNIA WESTERN DIVISION**

8

9  DAVID TANGIPA, *ET AL.*,                    CASE No: 2:25-cv-10616-JLS-WLH-KKL

10              *PLAINTIFFS*,               **PROPOSED INTERVENOR**
                                            **CARL GORDON'S,**
11     AND                                  **EMERGENCY SUPPLEMENTAL**
                                            **NOTICE OF RECORD FACTS IN**
12  UNITED STATES OF AMERICA,               **SUPPORT OF EMERGENCY**
                                            **MOTION TO INTERVENE**
13              *PLAINTIFF-INTERVENOR*,

14     V.                                   (FED. R. CIV. P. 24(a), 24(b))
                                            (Structural Disqualification; Supremacy
15  GAVIN NEWSOM, IN HIS OFFICIAL           Clause; Federal Election Integrity;
    CAPACITY AS THE GOVERNOR OF             28 U.S.C. § 455; Rule 60(d)(3))
16  CALIFORNIA, *ET AL.*,                    Judges:     Hon. Josephene L. Staton
                                                        Hon. Wesley L. Hsu
17              *DEFENDANTS*,                            Hon. Kenneth K. Lee
18  AND

19  DEMOCRATIC CONGRESSIONAL
20  CAMPAIGN COMMITTEE, ET AL.,

21              *DEFENDANT-INTERVENORS*

22

23

24  **TO ALL PARTIES, COUNSEL OF RECORD, AND TO THE COURT:**
25
26  **PLEASE TAKE NOTICE** that Proposed Intervenor Carl Gordon, appearing pro
27  se, hereby respectfully submits this Emergency Supplemental Notice of Record

28

Facts in support of his Emergency Motion to Intervene, filed on December 19, 2025, pursuant to Federal Rule of Civil Procedure 24(a) and 24(b).

This Emergency Supplemental Notice is submitted solely to preserve the record and to ensure that the Court and the parties have a complete, accurate, and contemporaneous record of undisputed facts, judicial records, legislative history, and federal-law considerations bearing on non-waivable structural and federal issues. This filing does not amend, supersede, or withdraw any portion of the previously filed Emergency Motion to Intervene and does not seek additional relief.

This Supplemental Notice proceeds on undisputed facts, judicial records, and legislative history. It is not submitted to accuse any judicial officer or party of improper motive, but solely to preserve the record where structural disqualification, federal preemption, and appearance-of-impartiality issues are implicated and reviewable on appeal.

**EMERGENCY SUPPLEMENTAL NOTICE OF RECORD FACTS**

IN SUPPORT OF EMERGENCY MOTION TO INTERVENE
(FED. R. CIV. P. 24(a), 24(b))
(Structural Disqualification; Supremacy Clause; Federal Election Integrity;
28 U.S.C. § 455; Rule 60(d)(3))

**I. PROCEDURAL POSTURE OF PROPOSED INTERVENOR**

1. In the instant action, Case No. 2:25-cv-10616-JLS-WLH-KKL, Movant Carl Gordon appears as a Proposed Intervenor pursuant to Federal Rule of Civil Procedure 24(a) and 24(b).

2. The Emergency Motion to Intervene arises from the same nucleus of operative facts, constitutional violations, and election-administration conduct that underlie multiple recall-related, election-law, and federal-funding cases previously filed by Proposed Intervenor and currently pending in this District and on appeal before the Ninth Circuit.

3. The relief sought—including an expedited ruling, leave to file proposed Rule 56 materials, a proposed Statement of Undisputed Facts, a proposed Request for Judicial Notice, and transfer to the United States District Court for the District of Columbia—is necessitated by non-waivable structural disqualification and appearance-of-impartiality considerations governed by 28 U.S.C. § 455.

4. This case is presently before a three-judge court composed of Judge Josephine L. Staton, Judge Wesley L. Hsu, and Judge Kenneth K. Lee.

## II. STRUCTURAL OVERLAP INVOLVING JUDGE STATON

5. The issues presented in this action overlap materially with multiple related proceedings arising from the 2021 California gubernatorial recall, the use of federal election funds, and the statutory authorization of polling places in alcohol-primary venues.

6. Judge Josephine L. Staton previously presided over United States of America et al., ex rel. Gordon v. Newsom, Case No. 2:23-cv-06727-JLS-MAR, which arose from the same recall-related election framework and federal funding conditions.

7. In that action, the April 17, 2020, California Secretary of State HAVA certification was expressly embedded in, relied upon by, and incorporated

into the federal pleading. *See* Doc. 3, filed August 16, 2023, at page 134 of 146 (PageID #348). A true and correct copy of the certification is attached hereto as **EXHIBIT A**.

8.  Judge Staton therefore possesses direct judicial knowledge of:

    o   California's federal election-funding certifications;

    o   the constraints imposed by HAVA and 2 C.F.R. § 200.423; and

    o   the statutory framework authorizing polling places in alcohol-primary venues.

9.  Judge Staton is also a named appellee in Ninth Circuit Appeal No. 25-1190, arising from related recall-based litigation involving overlapping statutory and constitutional issues.

10. In light of this record, Judge Staton's participation in adjudicating matters involving Proposition 50, Assembly Bill 2037, or the continued enforcement of SB 423 / SB 152–derived polling-place authorizations presents a non-waivable structural issue under 28 U.S.C. § 455(a) and (b).

11. A reasonable observer, fully informed of these overlapping proceedings, could question whether continued participation satisfies the constitutional requirement of an impartial tribunal. *See* Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009).

12. This Supplemental Notice does not request recusal and leaves any determination solely to the Court and the parties.

## III. STRUCTURAL CONFLICT INVOLVING THE CALIFORNIA ATTORNEY GENERAL

13. Rob Bonta, California's Attorney General and chief law enforcement officer, appears in this action through the Office of the Attorney General while simultaneously having been a named defendant in multiple related election-law actions arising from the same 2020–2025 statewide election framework.

14. Attorney General Bonta, together with Secretary of State **Shirley Weber**, was a defendant in:

- *Gordon v. Newsom*, No. 2:21-cv-07270-FMO-MAR (9th Cir. No. 22-55640);

- *United States of America et al., ex rel. Gordon v. Newsom*, No. 2:23-cv-06727-JLS-MAR;

- *Gordon v. Newsom*, No. 2:24-cv-06476-MRA-AS (9th Cir. No. 25-5722);

- *Gordon v. Kounalakis*, No. 2:24-cv-03683-MRA-AS (9th Cir. No. 25-561);

- *Clark v. Weber*, No. 2:21-cv-06558-MWF-KS (9th Cir. Nos. 21-55930, 21-56337); and

- *Gordon v. Olguin, et al.*, No. 2:24-cv-05384-MWF (9th Cir. No. 25-1190).

15. Attorney General Bonta previously served as a member of the California State Assembly and voted in favor of Senate Bill 423 (2020) and Senate Bill 152 (2021)—legislation authorizing polling places in establishments whose primary purpose is the sale and dispensation of alcoholic beverages.

16. Those temporary authorizations were later made permanent by Assembly Bill 2037 (Stats. 2022, ch. 155), which amended California Elections Code § 12288.

17. Attorney General Bonta now appears, in his official capacity, defending the continued enforcement of the same statutory framework he previously voted to enact, including its application to the November 4, 2025 Proposition 50 special election.

18. These overlapping roles are noted solely as structural facts relevant to California Government Code §§ 87100 and 1090, and to federal Supremacy Clause considerations.

## IV. LEGISLATIVE CONTINUITY: SB 423, SB 152, AND AB 2037

19. SB 423 (2020) and SB 152 (2021) contained identical operative language in § 1603(c), providing:

"Notwithstanding Section 12288, an elections official may establish a vote center, polling place, or consolidated polling place in a location whose primary purpose is the sale and dispensation of alcoholic beverages."

20. Legislative materials relied upon by the sponsors of AB 2037 documented that approximately 20 counties used this exemption during the November 2020 presidential election, and approximately 20 counties again used it during the September 2021 recall election—representing over forty percent of California's counties across those cycles.

21. AB 2037 did not create a new policy. It codified, normalized, and extended a polling-place framework already deployed during federally funded

elections, and carried it forward into the 2022 midterms, 2024 general election, and the November 4, 2025 Proposition 50 special election.

## V. FEDERAL FUNDING CERTIFICATIONS AND SUPREMACY CLAUSE CONTEXT

22. On April 17, 2020, the California Secretary of State formally certified to the U.S. Election Assistance Commission that California would use HAVA funds only in a manner consistent with Title III of HAVA and applicable federal law and would not expend those funds inconsistently with federal requirements.

23. Federal regulations provide that "costs of alcoholic beverages are unallowable" under federal awards. 2 C.F.R. § 200.423. The regulation is purpose-based, not room-based, and applies regardless of state statutory authorization.

24. Because HAVA and related federal funds were used to support vote centers, polling-place administration, accessibility, staffing, and election infrastructure during the 2020–2025 election cycles, state authorization of polling places in alcohol-primary venues raises Supremacy Clause preemption issues where state law authorizes conduct incompatible with federal funding conditions. *See* U.S. Const. art. VI, cl. 2.

25. AB 2037, as a lineal continuation of the SB 423 / SB 152 framework, does not cure or cleanse that incompatibility as applied to Proposition 50.

## VI. PURPOSE AND RECORD PRESERVATION

26. This Emergency Supplemental Notice is submitted solely to preserve the record.

27. Proposed Intervenor does not seek recusal, does not request findings, and does not seek adjudication under 28 U.S.C. § 455 or otherwise.

28. All determinations are expressly left to the Court and the parties, and this filing is intended to ensure that any reviewing court has a complete, accurate, and contemporaneous record.

## VII. CONTEXTUAL BACKGROUND: FEDERAL VIOLATIONS UNDERLYING THE PRESENT EMERGENCY

29. The issues presented to this Court do not arise in isolation. They stem from a continuous federal-law vulnerability affecting California's administration of elections from 2020 through 2025, including the November 4, 2025 Proposition 50 special election.

30. This background is provided solely to preserve the record and to explain why federal interests, Supremacy Clause considerations, and non-waivable structural issues are implicated in the pending Emergency Motion to Intervene.

## VIII. SUMMARY OF FEDERAL VIOLATIONS REQUIRING DOJ ATTENTION

### A. Misuse of Federal HAVA and CARES Act Funds

31. Public records, legislative history, and federal certifications demonstrate that California expended, federal HAVA and CARES Act election funds:

a. on polling places located in alcohol-serving venues, prohibited by 2 C.F.R. § 200.423;

b. in ways that materially benefited the Governor's private PlumpJack business holdings;

c. on recall election processes during a period in which the Governor was financially disqualified from participating;

d. to subsidize election infrastructure reused in the 2021 recall, 2022 statewide election, 2024 general election, and 2025 Proposition 50 special election.

32. These expenditures implicate federal fraud, misappropriation, false claims, and Supremacy Clause violations, irrespective of any state statutory authorization.

## B. Governor Newsom's Constitutional Disqualification

33. For the period 2019–2025, Governor Gavin Newsom:

a. maintained prohibited financial interests under California law;

b. signed election and funding legislation while constitutionally disqualified under Article II § 17 and Article V § 10 of the California Constitution;

c. directed or benefitted from federal election appropriations while legally disabled under Government Code §§ 1090, 87100, and 8920;

d. caused California to submit federally tainted certifications affecting national archival records.

34. Election actions taken during a period of constitutional disability are void ab initio as a matter of law. This vulnerability explains the cascading litigation now before multiple federal courts.

## C. EAC Office of Inspector General Criminal Referral (December 9, 2021)

35. On December 9, 2021, the Election Assistance Commission Office of Inspector General referred California election-funding irregularities to the Department of Justice and the FBI, documenting:

a. non-compliance with federal grant requirements;

b. misreporting of expenditures;

c. irregular CARES/HAVA fund usage;

d. potential federal criminal violations.

36. No publicly documented corrective action has occurred to date.

## IX. SUPPRESSION AND SEALING OF FEDERALLY MATERIAL REQUESTS FOR JUDICIAL NOTICE

37. Across multiple actions, Proposed Intervenor filed **Requests for Judicial Notice ("RJNs")** containing:

a. federal audit materials;

b. evidence of misuse of federal funds;

c. **FPPC 700 Form disclosures**;

d. **Inspector General findings**;

e. statutory conflicts;

f. legislative history;

g. financial records; and

h. constitutional analysis.

38. These RJNs were sealed, ignored, or not adjudicated, preventing federal stakeholders from accessing evidence submitted to protect federal interests.

39. The same materials are now being preserved for direct DOJ review and public refiling where appropriate.

## X. IMPACT ON FEDERAL ELECTIONS AND NATIONAL ARCHIVAL RECORDS

40. The challenged conduct directly affected:

a. the 2020 Presidential Election (Electoral College certifications);

b. the 2021 California recall;

c. the 2022 Federal midterm and statewide election;

d. the 2024 Presidential Election; and

e. the November 4, 2025, Proposition 50 special election.

41. Each cycle involved federal funds, federal oversight obligations, and federal archival records governed by the Federal Records Act and NARA policies.

## XI. LEGISLATIVE CONTINUITY AND FEDERAL PREEMPTION

42. Legislative history relied upon by the sponsors of Assembly Bill 2037 documents that approximately 20 counties used alcohol-serving polling

places during the 2020 presidential election, and approximately 20 counties again used them during the 2021 recall—representing over 40% of California counties.

43. AB 2037 (Stats. 2022, ch. 155) did not create a new policy. It permanently codified the identical framework previously authorized by SB 423 (2020) and SB 152 (2021), carrying it forward into the 2022, 2024, and 2025 election cycles.

44. Federal law renders alcohol-related costs unallowable regardless of state authorization. *See* 2 C.F.R. § 200.423.

45. Where federal election funds support infrastructure used at such venues, state law is preempted under the Supremacy Clause. *See* U.S. Const. art. VI, cl. 2.

## XII. STRUCTURAL IMPLICATIONS FOR THIS COURT

46. The foregoing context explains why intervention is necessary, why § 455 issues arise, and why the record must be complete now.

47. These issues are **structural**, **ongoing**, and **non-waivable**. They predate this Court and will outlast it unless properly preserved.

## XIII. RELIEF PRESERVED FOR FEDERAL AUTHORITIES (NOT REQUESTED HERE)

48. Nothing in this filing seeks relief from this Court against any federal agency. However, the record reflects the necessity for:

a. DOJ review under 28 U.S.C. § 535(a);

b. potential federal intervention under 31 U.S.C. § 3730(c)(3);

c. preservation of federal records under the Federal Records Act.

**XIV. CONCLUSION**

49. This Emergency Supplemental Notice of Record Facts is submitted to ensure that the Court, the parties, and any reviewing court have a complete, accurate, and contemporaneous record of the federal, constitutional, and structural context giving rise to the Emergency Motion to Intervene.

50. No accusations are made. No findings are requested. The record is simply preserved.

**Dated**: December 21, 2025                Respectfully submitted,

*Carl Gordon*

Carl Gordon
Proposed Intervenor, Pro Se
8306 Wilshire Blvd., No. 792
Beverly Hills, CA 90211
universityofthehood@gmail.com
(310) 926-3939

# EXHIBIT A



**ALEX PADILLA** | SECRETARY OF STATE | STATE OF CALIFORNIA
1500 11th Street | Sacramento, CA 95814 | **Tel** 916.653.7244 | **Fax** 916.653.4620 | www.sos.ca.gov

April 17, 2020

Mona Harrington, Acting Executive Director
U.S. Election Assistance Commission
1335 East-West Highway, Suite 4300
Silver Spring, MD 20910

Dear Ms. Harrington:

The purpose of this letter is to certify that the state of California will use the funds
provided under the Notice of Grant Award, Agreement #20101001, for activities
consistent with the laws described in Section 906 of HAVA and will not use the funds in
a manner that is inconsistent with the requirements of Title III of HAVA.

We further certify that we have reviewed and accept the terms of the award as specified
in the Notice of Grant Award. Our UEI number (formerly DUNS) is #360741904 and the
signed certification is enclosed.

We are requesting $38,943,512 at this time. The funds will be used for county and state
support for: technical and security enhancements, security training, infrastructure needs,
equipment costs, polling place administration, auditing, and improving the administration
of elections.

If you have any questions about this request, please contact me at (916) 695-1662 or
slapsley@sos.ca.gov.

Sincerely,

Susan Lapsley

Susan Lapsley
Deputy Secretary of State, HAVA Director and Counsel
California Secretary of State Alex Padilla

Enclosures

cc: Kinza Ghaznavi, Grants Manager

*134*

Case 2:25-cv-10616-JLS-WLH-KKL    Document 199    Filed 12/21/25    Page 16 of 32
Page ID #:19914
Case 2:23-cv-06727-JLS-MAR    Document 3    Filed 08/16/23    Page 135 of 146    Page ID #:349

**State Allocations of 2020 HAVA Funds**
**2020 Appropriation at $425 Million**

| State | Federal Share | State Share 20% | Total |
|---|---|---|---|
| Alabama | $6,901,560 | $1,380,312 | $8,281,872 |
| Alaska | $3,000,000 | $600,000 | $3,600,000 |
| American Samoa | $600,000 | N/A | $600,000 |
| Arizona | $8,362,741 | $1,672,548 | $10,035,289 |
| Arkansas | $5,011,991 | $1,002,398 | $6,014,389 |
| **California** | **$38,740,655** | **$7,748,131** | **$46,488,786** |
| Colorado | $7,106,267 | $1,421,253 | $8,527,521 |
| Connecticut | $5,735,740 | $1,147,148 | $6,882,887 |
| District of Columbia | $3,000,000 | $600,000 | $3,600,000 |
| Delaware | $3,031,481 | $606,296 | $3,637,777 |
| Florida | $21,506,406 | $4,301,281 | $25,807,687 |
| Georgia | $11,549,183 | $2,309,837 | $13,859,020 |
| Guam | $600,000 | N/A | $600,000 |
| Hawaii | $3,508,595 | $701,719 | $4,210,314 |
| Idaho | $3,616,020 | $723,204 | $4,339,223 |
| Illinois | $14,830,251 | $2,966,050 | $17,796,302 |
| Indiana | $8,510,075 | $1,702,015 | $10,212,090 |
| Iowa | $5,161,182 | $1,032,236 | $6,193,418 |
| Kansas | $4,909,494 | $981,899 | $5,891,393 |
| Kentucky | $6,467,707 | $1,293,541 | $7,761,248 |
| Louisiana | $6,597,832 | $1,319,566 | $7,917,398 |
| Maine | $3,505,118 | $701,024 | $4,206,142 |
| Maryland | $7,914,306 | $1,582,861 | $9,497,167 |
| Massachusetts | $8,841,674 | $1,768,335 | $10,610,009 |
| Michigan | $11,999,001 | $2,399,800 | $14,398,801 |
| Minnesota | $7,389,506 | $1,477,901 | $8,867,407 |
| Mississippi | $5,021,549 | $1,004,310 | $6,025,859 |
| Missouri | $8,101,455 | $1,620,291 | $9,721,746 |
| Montana | $3,127,978 | $625,596 | $3,753,573 |
| Nebraska | $3,915,413 | $783,083 | $4,698,495 |
| Nevada | $4,790,795 | $958,159 | $5,748,954 |
| New Hampshire | $3,472,912 | $694,582 | $4,167,494 |
| New Jersey | $10,934,419 | $2,186,884 | $13,121,302 |
| New Mexico | $4,142,484 | $828,497 | $4,970,981 |
| New York | $21,838,990 | $4,367,798 | $26,206,788 |
| North Carolina | $11,624,810 | $2,324,962 | $13,949,772 |
| North Dakota | $3,000,000 | $600,000 | $3,600,000 |
| Northern Marianas | $600,000 | N/A | $600,000 |
| Ohio | $13,657,222 | $2,731,444 | $16,388,666 |
| Oklahoma | $5,820,345 | $1,164,069 | $6,984,414 |
| Oregon | $6,007,538 | $1,201,508 | $7,209,045 |
| Pennsylvania | $15,103,663 | $3,020,733 | $18,124,395 |
| Puerto Rico | $5,821,405 | $1,164,281 | $6,985,686 |
| Rhode Island | $3,210,168 | $642,034 | $3,852,202 |
| South Carolina | $6,767,471 | $1,353,494 | $8,120,966 |
| South Dakota | $3,000,000 | $600,000 | $3,600,000 |
| Tennessee | $8,476,810 | $1,695,362 | $10,172,173 |
| Texas | $26,064,574 | $5,212,915 | $31,277,489 |
| Utah | $4,603,931 | $920,786 | $5,524,718 |
| Vermont | $3,000,000 | $600,000 | $3,600,000 |
| Virgin Islands | $600,000 | N/A | $600,000 |
| Virginia | $10,175,711 | $2,035,142 | $12,210,853 |
| Washington | $8,860,638 | $1,772,128 | $10,632,765 |
| West Virginia | $4,044,353 | $808,871 | $4,853,223 |
| Wisconsin | $7,818,581 | $1,563,716 | $9,382,297 |
| Wyoming | $3,000,000 | $600,000 | $3,600,000 |
| **Totals** | **$425,000,000** | **$84,520,000** | **$509,520,000** |

# FEDERAL FINANCIAL REPORT
(Follow form instructions)

| 1. Federal Agency and Organizational Element to Which Report is Submitted | 2. Federal Grant or Other Identifying Number Assigned by Federal Agency (To report multiple grants, use FFR Attachment) |
|---|---|
| **ELECTION ASSISTANCE COMMISSION** | **CA20101001** |

**3. Recipient Organization (Name and complete address including Zip code)**

**CALIFORNIA SECRETARY OF STATE**

**1500 11TH ST, SACRAMENTO, CA 958145701**

| 4a. DUNS Number | 4b. EIN | 5. Recipient Account Number or Identifying Number (To report multiple grants, use FFR Attachment) | 6. Report Type | 7. Basis of Accounting |
|---|---|---|---|---|
| | | | ☐ Quarterly<br>☐ Semi-Annual<br>☒ Annual<br>☐ Final | ☒ Cash<br>☐ Accural |

| 8. Project/Grant Period (Month, Day, Year) | | 9. Reporting Period End Date (Month, Day, Year) |
|---|---|---|
| From: **March 28, 2018** | To: **September 30, 2099** | **September 30, 2020** |

**10. Transactions**

| | Cumulative |
|---|---|
| *(Use lines a-c for single or combined multiple grant reporting)* | |
| **Federal Cash (To report multiple grants separately, also use FFR Attachment):** | |
| a. Cash Receipts | $73,502,386.00 |
| b. Cash Disbursements | $5,535,493.66 |
| c. Cash on Hand (line a minus b) | $67,966,892.34 |
| *(Use lines d-o for single grant reporting)* | |
| **Federal Expenditures and Unobligated Balance:** | |
| d. Total Federal funds authorized | $73,502,386.00 |
| e. Federal share of expenditures | $5,535,493.66 |
| f. Federal share of unliquidated obligations | $0.00 |
| g. Total Federal share (sum of lines e and f) | $5,535,493.66 |
| h. Unobligated balance of Federal funds (line d minus g) | $67,966,892.34 |
| **Recipient Share:** | |
| i. Total recipient share required | $9,516,646.00 |
| j. Recipient share of expenditures | $0.00 |
| k. Remaining recipient share to be provided (line i minus j) | $9,516,646.00 |
| **Program Income:** | |
| l. Total Federal share of program income earned | $1,016,737.95 |
| m. Program income expended in accordance with the deduction alternative | $0.00 |
| n. Program income expended in accordance with the addition alternative | $0.00 |
| o. Unexpended program income (line l minus line m and line n) | $1,016,737.95 |

| 11. Indirect Expense | a. Type | b. Rate | c. Period From | Period To | d. Base | e. Amount Charged | f. Federal Share |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | g. Totals: | | $0.00 | $0.00 | $0.00 |

**12. Remarks: Attach any explanations deemed necessary or information required by Federal sponsoring agency in compliance with governing legislation:**

State Interest Earned: $0

**13. Certification: By signing this report, I certify to the best of my knowledge and belief that the report is true, complete, and accurate, and the expenditures, disbursements and cash receipts are for the purposes and intent set forth in the award documents. I am aware that any false, fictitious, or fraudulent information may subject me to criminal, civil, or administrative penalties. (U.S. Code, Title 18, Section 1001)**

| a. Typed or Printed Name and Title of Authorized Certifying Official | c. Telephone (Area code, number, and extension) |
|---|---|
| **Yang, Fan**<br><br>**Accounting Administrator I (Supervisor)** | d. Email Address |
| b. Signature of Authorized Certifying Official<br><br>**Yang, Fan** | e. Date Report Submitted (Month, Day, Year)<br>**April 19, 2021** |

Standard Form 425
OMB Approval Number: 4040-0014
Expiration Date: 02/28/2022

**Paperwork Burden Statement**
According to the Paperwork Reduction Act, as amended, no persons are required to respond to a collection of information unless it displays a valid OMB Control Number. The valid OMB control number for this information collection is 4040-0014. Public reporting burden for this collection of information is estimated to average 1 hours per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to: US Department of Health & Human Services, OS/OCIO/PRA, 200 Independence Ave, SW, Suite 336-E, Washington DC 20201. Attention: PRA Reports Clearance Officer

*136*

Case 2:25-cv-10616-JLS-WLH-KKL     Document 199     Filed 12/21/25     Page 18 of 32
Page ID #:1991
Case 2:23-cv-06727-JLS-MAR     Document 3     Filed 08/16/23     Page 137 of 146     Page ID #:351

**FEDERAL FINANCIAL REPORT**
(Additional Page)

| | | |
|---|---|---|
| Federal Agency & Organization | : | ELECTION ASSISTANCE COMMISSION |
| | | |
| Federal Grant ID | : | CA20101001 |
| Recipient Organization | : | CALIFORNIA SECRETARY OF STATE |
| | | 1500 11TH ST, SACRAMENTO, CA 958145701: |
| DUNS Number | | |
| DUNS Status when Certified | | |
| EIN | | |
| Reporting Period End Date | : | September 30, 2020 |
| Status | : | |
| Remarks | : | |

**Federal Agency Review**

| | | |
|---|---|---|
| Reviewer Name | : | |
| Phone # | : | |
| Email | : | |
| Review Date | : | |
| Review Comments | : | |

*137*

# EAC Progress Report

Response ID:149 Data

## 1. Login

**Please enter your userword and password to begin the Progress Narrative. If you require assistance or have any questions, please contact grants@eac.gov**

## 2. Verification

## 3. EAC Progress Report

**1. State or Territory:**

California

**2. Grant Number:**

CA20101001-01

**3. Report:**

Annual (Oct 1 - Sept 30)

**4. Grant:**
**Please select only one.**

Election Security

**5. Reporting Period Start Date**

10/01/2019

**6. Reporting Period End Date**

09/30/2020

**7. DUNS/UEI:**

**8. EIN:**

**9. Recipient Organization:**

**138**

Case 2:25-cv-10616-JLS-WLH-KKL    Document 199    Filed 12/21/25    Page 20 of 32
Page ID #:1991
Case 2:23-cv-06727-JLS-MAR    Document 8    Filed 09/16/23    Page 139 of 146    Page ID #:353

**Organization Name**

California Secretary Of State

**Street Address**

1500 11th Street

**City**

Sacramento

**State**

CA

**Zip**

95814

## 4. Progress and Narrative

**10. Describe in detail what happened during this reporting period and explain how you implemented the approved grant activities.**

At the beginning of this reporting period, the HAVA election security funding was planned for and used for activities consistent with approved grant activities including the enhancement of technology and making election security improvements. Specifically, the funds were: (1) provided to California's 58 counties in the form of county contracts to support county implementation of cyber security safeguards and associated infrastructure enhancements to protect against cyber risks and vulnerabilities; (2) used for state support of technical security enhancements to the Statewide Voter Registration Database (VoteCal) to ensure the statewide voter registration database remains secure among an ever changing landscape of potential vulnerabilities and changing technology and requirements; (3) provided to California counties to improve the administration of elections through the implementation of vote centers and associated voting process enhancements; (4) provided to California counties for support of polling place accessibility through the training of counties on accessibility requirements and mitigations and providing support to counties to improve accessibility of polling places; (5) used to provide a risk limiting audit tool, support, guidelines and regulations to California counties; and (6) used for associated personnel costs for administration and support of the funding which includes indirect costs for personal services costs of administrative, supervisory, and executive and support units, including accounting, internal audits, legal, information technology, and clerical support.

**139**

As COVID-19 emerged in January and February 2020 and a global pandemic was declared, assessment of needs and planning began. Beginning in early March, the California Secretary of State convened on a daily basis a working group of California's 58 county elections officials, legislators, the Governor's office, voting rights advocates, disability rights advocates, data and policy experts, and other stakeholders to adopt new strategies and enact new laws to protect California voters and election workers in the November 3, 2020 General Election. Specifically:

• Every active, registered voter in California receiving a vote-by-mail ballot.
• All California voters able to track their vote-by-mail ballot.
• Options for returning vote-by-mail ballots, including voting locations, county election offices, special ballot drop boxes, and U.S. Postal Service.
• Sufficient in-person voting opportunities.
• Extensive health and safety training for poll workers and protocols in place at in-person voting locations.
• A statewide communications and outreach effort to inform voters of the changes in election procedures to vote safely.
• Recruiting poll workers statewide in an effort to assist all county election offices to replace the many traditional older workers who are unable or unwilling to be poll workers due to their higher-risk of contracting COVID-19.
• Identification and procurement of new sites for in-person voting locations that offer the necessary space for physical distancing while voting.
• Personal protective equipment for all 58 counties for use by election workers and voters.

Based upon the EAC issued Guidance which included OMB guidance that addressed the use of HAVA funds for expenditures, including those necessary to protect the health and safety of poll workers, voters, and staff in conducting the November election, Omnibus Appropriations Act of 2018 funding, Consolidated Appropriations Act of 2020 funding, Coronavirus Aid, Relief, and Economic Security Act (CARES Act) funding, and state General funds were requested through the legislative budget process to prepare for and respond to the COVID-19 pandemic for the November 3, 2020 General Election.

Accordingly, in the last quarter of the reporting period, state and county contracts were issued for COVID-19 support to prevent, prepare for, and respond to coronavirus in the November 3, 2020 General Election. The support included county and state support for costs associated with conducting the election in the face of a pandemic including such things as the higher level of voting by mail, ensuring accessibility by all populations, acquiring additional secure ballot drop boxes, staff and poll worker training on cleaning and prevention processes, notifying and educating the public of voting process changes and requirements, acquiring personal protective equipment for election workers and voters, additional staffing costs, cyber and physical security, specialized training of staff and election workers, cleaning and disinfection, and polling locations or election facilities.

**11. Provide a timeline and description of project activities funded to meet HAVA requirements. Provide an analysis of how such activities conform to the submitted State Plan or Program Narrative as applicable.**

The HAVA election security funding was planned for and used for activities consistent with approved grant activities including the enhancement of technology and making election security improvements as follows: (1) cyber security contracts were provided to California's 58 counties; (2) state security enhancements; (3) vote center contracts were provided to counties; (4) polling place accessibility contracts; (5) a risk limited audit tool and associated guidelines and regulations were provided for county use for the November 2020 election; and (6) personnel costs were accrued and paid during the reporting period.

In the last quarter of the reporting period, state and county contracts were issued for COVID-19 support to prevent, prepare for, and respond to coronavirus in the November 3, 2020 General Election. COVID-19 contracts were provided to California's 58 counties in July 2020 for costs associated with conducting the election in the face of a pandemic including the higher level of voting by mail, ensuring accessibility by all populations, acquiring additional secure ballot drop boxes, staff and poll worker training on cleaning and prevention processes, notifying and educating the public of voting process changes and requirements, acquiring personal protective equipment for election workers and voters, additional staffing costs, cyber and physical security, specialized training of staff and election workers, cleaning and disinfection, and polling locations or election facilities. Contracts were issued for state activities for conducting the November 3, General Election in the face of the COVID-19 pandemic including costs associated with sending every active, registered voter in California receiving a vote-by-mail

*140*

Case 2:25-cv-10616-JLS-WLH-KKL    Document 199    Filed 12/21/25    Page 22 of 32
Case 2:23-cv-06727-JLS-MAR    Document 3    Filed 08/16/23    Page 141 of 146    Page ID #:355
Page ID #:1992

ballot, providing all California voters the ability to track their vote-by-mail ballot, providing sufficient options for returning vote-by-mail ballots and in-person voting opportunities, creating and providing extensive health and safety training for poll workers and protocols in place at in-person voting locations, conducting a statewide communications and outreach effort to inform voters of the changes in election procedures to vote safely, recruiting poll workers statewide in an effort to assist all county election offices to replace the many traditional older workers who are unable or unwilling to be poll workers due to their higher-risk of contracting COVID-19, identifying and procuring new sites for in-person voting locations that offered the necessary space for physical distancing while voting, and procuring personal protective equipment for all 58 counties for use by election workers and voters.

**12. Describe any significant changes to your program during the course of the project, or if the project was implemented differently than described in your original State Plan or Program Narrative.**

**Otherwise enter - no significant changes during this period.**

As described above, as COVID-19 emerged in January and February 2020, assessment of needs and planning began. Beginning in early March, the California Secretary of State convened on a daily basis a working group of California's 58 county elections officials, legislators, the Governor's office, voting rights advocates, disability rights advocates, data and policy experts, and other stakeholders to adopt new strategies and enact new laws to protect California voters and election workers in the November 3, 2020 General Election.

Based upon the EAC issued Guidance which included OMB guidance that addressed the use of HAVA funds for expenditures, including those necessary to protect the health and safety of poll workers, voters, and staff in conducting the November election, Omnibus Appropriations Act of 2018 funding, Consolidated Appropriations Act of 2020 funding, Coronavirus Aid, Relief, and Economic Security Act (CARES Act) funding, and state General funds were requested through the legislative budget process to prepare for and respond to the COVID-19 pandemic for the November 3, 2020 General Election.

Accordingly, in the last quarter of the reporting period, state and county contracts were issued for COVID-19 support to prevent, prepare for, and respond to coronavirus in the November 3, 2020 General Election.

**13. Describe any favorable developments which enabled meeting time schedules and objectives sooner or at less cost than anticipated or producing more or different beneficial results than originally planned.**

**Otherwise enter N/A.**

N/A

**14. Report on the number and type of articles of voting equipment obtained with the funds. Include the amount expended on the expenditure table.**

**Otherwise enter - No articles of voting equipment purchased during this period.**

Counties were reimbursed for obtaining the following voting equipment during the reporting period:
o Two Dominion Voting Systems Central Tabulators.
o Two Hart Intercivic Central Tabulators.

**15. Provide a description of any security training conducted and the number of participants.**

**Otherwise enter - no security training conducted during this period.**

In January 2020, cyber security contracts were provided to Califoria's 58 counties. Under these contracts, counties are allowed to submit claims for reimbursement for the implementation of cyber security safeguards and associated infrastructure enhancements to protect against cyber risks and vulnerabilities. As a condition of receiving funds under the contract, counties must conduct a security assessment and conduct security awareness training for all staff. Training must include cyber security best practices, including how to recognize a phishing email, creating and maintaining strong passwords, utilizing multi-factor authentication, and avoiding dangerous applications.

*141*

Case 2:25-cv-10616-JLS-WLH-KKL    Document 199    Filed 12/21/25    Page 23 of 32
Page ID #:19921
Case 2:23-cv-06727-JLS-MAR    Document 3    Filed 08/16/23    Page 142 of 146    Page ID #:356

In addition, the Secretary of State's Office conducted the following trainings for county and state election officials on security related topics during the reporting period:

o In October of 2019 the SOS hosted a custom-built tabletop exercise in regions throughout the state attended by over 200 local, state, and federal participants. The tabletop exercise was a compressed time simulation-style training where participants were given roles and required to respond to a variety of Election Day security challenges from misinformation to coordinated cyberattacks to physical destruction of property.

o In mid-July of 2020 the SOS partnered with Defending Digital Democracy (D3P) a project of Harvard's Belfer Center for a weeklong training attended by 103 state and local officials which covered operations management, incident tracking, crisis communications, information operations, and COVID-19 related special topics. The training was a mix of lectures and small group tabletop exercises.

o In late July the SOS coordinated attendance of 99 state and county elections officials at the CISA hosted National Tabletop the Vote exercise sessions. Three sessions were held that covered cybersecurity, misinformation, communications, and physical security.

o In August the SOS partnered with the California Office of Emergency Services (CalOES) to provide 32 state and local election officials a training on how to update a continuity of operations plan. The training consisted of a lecture followed a week later by a tabletop exercise. The lecture covered operation analysis, identifying critical functions, and activation planning. Participants were asked to review their existing plans prior to participating in the exercise. The exercise covered election specific operations disruptions and participants considered how well their plans addressed the scenarios.

**16. Subgrants (if applicable):**

**Describe how you made funds available to local jurisdictions.**

**Provide a description of the major categories of subgrant activities local voting districts will accomplish with the funds.**

**Otherwise enter N/A.**

Funds were made available to California's Counties in the form of county contracts. Under these contracts, counties are allowed to submit claims for reimbursement for: implementation of cyber security safeguards and associated infrastructure enhancements to protect against cyber risks and vulnerabilities, improving the administration of elections through the implementation of vote centers and associated voting process enhancements, improving polling place accessibility, and for COVID-19 support to prevent, prepare for, and respond to coronavirus in the November 3, 2020 General Election for costs including the higher level of voting by mail, ensuring accessibility by all populations, acquiring additional secure ballot drop boxes, staff and poll worker training on cleaning and prevention processes, notifying and educating the public of voting process changes and requirements, acquiring personal protective equipment for election workers and voters, additional staffing costs, cyber and physical security, specialized training of staff and election workers, cleaning and disinfection, and polling locations or election facilities.

**17. Match (if applicable):**

**Describe how you are meeting the matching requirement.**

**Otherwise enter - match not required.**

California authorized $46.1 million in the FY 20-21 state General Fund budget to satisfy the match requirement.

**18. Issues Encountered:**

**Describe all major issues that arose during the implementation of the project and the reasons why established goals were not met, if appropriate. Address each issue separately in its own section, and describe whether and how the issues were resolved. Also, briefly discuss the implications of any unresolved issues or concerns.**

**Otherwise enter - no issues encountered.**

**19. Upcoming Activities:**

**Provide a timeline and description of upcoming activities.**

In the next reporting period covering October 1, 2020 – September 30, 2021, the Secretary of State will continue administering the above described contracts, monitoring activities, and entering into contracts planned for the next fiscal year as well as other activities authorized under the grant provisions.

## 5. Expenditures

**20. Current Period Amount Expended and Unliquidated Obligations**

### GRANT COST CATEGORIES

|  | Federal | Match |
|---|---|---|
| Voting Equipment: | $3,809,061.14 | $493,174.29 |
| Post-Election Auditing: | $91,910.96 | $11,900.08 |
| Voter Registration Systems: |  |  |
| Cyber Security: | $431,679.86 | $55,891.31 |
| Communications: |  |  |
| Total | $4,332,651.96 | $560,965.67 |
| Establish toll-free hotlines to report voter fraud/violations to report voting irregularities and to obtain election information Accessibility-related services: Including improving accessibility and quantity of polling places: | $468,714.67 | $60,686.35 |
|  |  |  |
|  |  |  |
|  |  |  |

*143*

**OMB CONTROL NUMBER: 3265-0020**

---

---

## 6. Certification

**Name and Contact of the authorized certifying official of the recipient.**

**First Name**

Daniel

**Last Name**

Onodera

**Title**

VoteCal Project Manager

**Phone Number**


**Email Address**


**Signature of Certifying Official:**

Signature of: Daniel Onodera

*144*

## 7. Report Submitted to EAC



**Thank you, your progress report has been submitted to EAC.  Please keep the PDF download of your submission as grant record.**

**PROOF OF SERVICE**

I, Mae Gordon, declare as follows:

I am employed in the City and County of Los Angeles, State of California. I am over the age of eighteen (18) years and not a party to the within action. My business address is 1125 South Holt Avenue, Apt. 3, Los Angeles, California 90035.

On December 21, 2025, I served the following document(s):

PROPOSED INTERVENOR CARL GORDON'S, EMERGENCY SUPPLEMENTAL NOTICE OF RECORD FACTS IN SUPPORT OF EMERGENCY MOTION TO INTERVENE (FED. R. CIV. P. 24(a), 24(b)) (Structural Disqualification; Supremacy Clause; Federal Election Integrity; 28 U.S.C. § 455; Rule 60(d)(3)) including all attachments filed therewith, and EXHIBIT A

**By electronic mail** to counsel of record for Plaintiffs, at the email addresses listed on the Court's docket where available.

**LIMITED INITIAL SERVICE NOTICE**

Due to the unusually large number of parties and counsel of record in this action, and given the expedited filing circumstances, Proposed Intervenor has at this time served the United States of America, the principal State Defendants (including the Governor), and counsel for Plaintiffs. Proposed Intervenor respectfully represents that, should the Court grant intervention or otherwise direct, he will promptly effect service on any additional parties or counsel as the Court deems appropriate. See attached Service List (Email Service Only)

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 21, 2025, at Los Angeles, California.

*Mae Gordon*

Mae Gordon

1

**EMERGENCY PROPOSED OF MOTION AND MOTION TO INTERVENE**
**SERVICE LIST (EMAIL SERVICE ONLY)**

**CARL GORDON**
**PROPOSED INTERVENOR, PRO SE**
**UNIVERSITY OF THE 'HOOD®**
8306 Wilshire Blvd., No. 792
Beverly Hills, CA 90211
Tel. (310) 926-3939 Email: universityofthehood@gmail.com

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA WESTERN DIVISION

| | |
|---|---|
| DAVID TANGIPA, *ET AL.*, | CASE No: 2:25-cv-10616-JLS-WLH-KKL |
| *PLAINTIFFS*, | |
| AND | |
| UNITED STATES OF AMERICA, | **PROPOSED INTERVENOR CARL GORDON'S, EMERGENCY SUPPLEMENTAL NOTICE OF RECORD FACTS IN SUPPORT OF EMERGENCY MOTION TO INTERVENE** |
| *PLAINTIFF-INTERVENOR*, | |
| V. | |
| GAVIN NEWSOM, IN HIS OFFICIAL CAPACITY AS THE GOVERNOR OF CALIFORNIA, *ET AL.*, | (FED. R. CIV. P. 24(a), 24(b)) (Structural Disqualification; Supremacy Clause; Federal Election Integrity; 28 U.S.C. § 455; Rule 60(d)(3)) |
| *DEFENDANTS*, | |
| AND | |
| DEMOCRATIC CONGRESSIONAL CAMPAIGN COMMITTEE, ET AL., | |
| *DEFENDANT-INTERVENORS* | |
| | Judges:    Hon. Josephene L. Staton |
| | Hon. Wesley L. Hsu |
| | Hon. Kenneth K. Lee |

**SERVICE LIST (EMAIL SERVICE ONLY)**

Plaintiffs' Counsel

Dhillon Law Group, Inc.

- Domenic P. Aulisi – DAulisi@dhillonlaw.com
- Mark P. Meuser – mmeuser@dhillonlaw.com
- Amber R. Hulse – AHulse@dhillonlaw.com
- Michael Andrew Columbo – mcolumbo@dhillonlaw.com
- Shawn E. Cowles – scowles@dhillonlaw.com

Lehotsky Keller Cohn

- William T. Thompson – will@lkcfirm.com

---

Movant – NAACP Legal Defense & Educational Fund, Inc.

- Anuja D. Thatte – athatte@naacpldf.org
- Kathryn C. Sadasivan – ksadasivan@naacpldf.org
- Stuart Charles Naifeh – snaifeh@naacpldf.org

---

Movant – Democratic Congressional Campaign Committee (DCCC)

Elias Law Group LLP

- Lalitha D. Madduri – lmadduri@elias.law
- Abha Khanna – akhanna@elias.law
- Christopher D. Dodge – cdodge@elias.law
- Max Accardi – maccardi@elias.law
- Tyler L. Bishop – tbishop@elias.law

Qureshi Law

- Omar G. Qureshi – omar@qureshi.law

3

Movant – League of United Latin American Citizens (LULAC)

Democracy Defenders Action / Fund

- Jacob Kovacs-Goodman – jacob@democracydefenders.org
- Norman L. Eisen – norman@democracydefenders.org
- Sofia F. Gold – sofia@democracydefenders.org
- Tianna J. Mays – tianna@democracydefenders.org

Arnold & Porter Kaye Scholer LLP

- John A. Freedman – john.freedman@arnoldporter.com
- Sean O. Morris – sean.morris@arnoldporter.com
- Orion L.C. de Nevers – orion.denevers@arnoldporter.com
- Gilbert Thomas Rivera III – tom.rivera@arnoldporter.com

Justice Legal Strategies PLLC

- Jon Marshall Greenbaum – jgreenbaum@justicels.com

---

Movant – Legislature of the State of California

Olson Remcho, LLP

- Robin B. Johansen – rjohansen@olsonremcho.com

---

Intervenor-Plaintiff – United States of America

U.S. Department of Justice

- Julie Ann Hamill – julie.hamill@usdoj.gov
- David Goldman – david.goldman@usdoj.gov
- Greta Alyse Gieseke – greta.gieseke@usdoj.gov
- Jesus Armando Osete – jesus.osete@usdoj.gov
- Joshua Robert Zuckerman – joshua.zuckerman@usdoj.gov

- Matthew Zandi – matt.zandi@usdoj.gov

**United States Attorney's Office – Central District of California**

- BILAL A. ESSAYLI
  First Assistant United States Attorney
  Email: bilal.essayli@usdoj.gov
- 
- JULIE A. HAMILL (CA No. 272742)
  Assistant United States Attorney
  julie.hamill@usdoj.gov

Defendants – State of California

California Attorney General's Office

- Iram Hasan – iram.hasan@doj.ca.gov
- Jennifer E. Rosenberg – jennifer.rosenberg@doj.ca.gov
- Anya M. Binsacca – anya.binsacca@doj.ca.gov
- Carter Jansen – carter.jansen@doj.ca.gov
- Christina Marie McCall – christina.mccall@doj.ca.gov
- Daniel Cullen Sheehan – daniel.sheehan@doj.ca.gov
- David Green – david.green@doj.ca.gov
- Harald Kirn – harald.kirn@doj.ca.gov
- Katrina Keiko Uyehara – katrina.uyehara@doj.ca.gov
- Lara Haddad – lara.haddad@doj.ca.gov
- Nicholas Reiss Green – nicholas.green@doj.ca.gov
- Ryan Duane Eason – ryan.eason@doj.ca.gov
- Sean Clinton Woods – clint.woods@doj.ca.gov

Intervenor-Defendants

UCLA Voting Rights Project

- Sonni Waknin – sonniwaknin@gmail.com

Amicus Curiae

Strumwasser & Woocher LLP

- Fredric D. Woocher – fwoocher@strumwooch.com
- Dale K. Larson – dlarson@strumwooch.com
- Julia Gabriela Michel – jmichel@strumwooch.com

---

UCLA School of Law

- Richard L. Hasen – hasenr@gmail.com