MICHAEL A. COLUMBO (SBN: 271283)
mcolumbo@dhillonlaw.com
SHAWN COWLES (SBN: 163826)
scowles@dhillonlaw.com
MARK P. MEUSER (SBN: 231335)
mmeuser@dhillonlaw.com
DOMENIC P. AULISI (Admitted PHV)
daulisi@dhillonlaw.com
AMBER R. HULSE (Admitted PHV)
ahulse@dhillonlaw.com
**DHILLON LAW GROUP INC.**
4675 MacArthur Court, Suite 1410
Newport Beach, CA 92660
Telephone: (415) 433-1700
Fax: (415) 520-6593

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAVID TANGIPA**, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> **GAVIN NEWSOM**, in his official capacity as the Governor of California, *et al.*, <br><br> Defendants. | CASE NO. 2:25-cv-10616-JLS-WLH-KKL <br><br> **PLAINTIFFS' EX PARTE APPLICATION FOR AN INJUNCTION PENDING APPEAL. FRAP 8(a)(1)(C)** <br><br> Hon. Josephine L. Staton <br> Hon. Kenneth K. Lee <br> Hon. Wesley L. Hsu <br><br> Trial Date: None <br> Action Filed: November 5, 2025 |



APPLICATION FOR INJUNCTION PENDING APPEAL   CASE NO. 2:25-cv-10616

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Plaintiffs, through counsel, will and hereby do apply to this Court pursuant to Fed. R. App. P. 8(a)(1)(C) for an injunction pending appeal of the Court's Order Denying Plaintiffs' Motion for Preliminary Injunction (ECF No. 216).

Plaintiffs have filed their Notice of Appeal and are filing this application the day after this Court issued its Order denying Plaintiffs' Motion for Preliminary Injunction. Ex parte relief is necessary because absent an injunction pending appeal, Plaintiffs will suffer irreparable harm by the time this matter is likely to be fully resolved by the U.S. Supreme Court due to the impending deadline for candidates to file the necessary paperwork with the state to run for Congress. As such, Plaintiffs request that this court issue an injunction pending appeal so that Plaintiffs' constitutional rights will not be violated while the Supreme Court considers Plaintiffs' appeal. Plaintiff-Intervenor the United States agrees that this Court should issue an injunction pending appeal.

## NOTICE

Plaintiffs notified counsel for all parties via email. Attorneys for Plaintiff-intervenor, the United States of America, supports the application. Attorneys for State Defendants and attorneys for Defendant-intervenor DCCC opposed the application. Attorneys for Defendant-intervenor LULAC, opposed the application.

## INTRODUCTION

After a three-day preliminary injunction hearing, this Court found in favor of the Defendant and Defendant-intervenors. This fact notwithstanding, the Court should grant an injunction pending appeal of that ruling because Plaintiffs have presented this Court with evidence that race was unlawfully used in drawing Congressional District lines by a state actor and, absent an injunction, plaintiffs' constitutional rights will be violated.

## BACKGROUND

California's Constitution prohibits partisan gerrymandering and establishes a system for drawing congressional districts once-a-decade through an independent Citizens Redistricting Commission (CRC), which. *See* Cal. Const. art. XXI.

In August 2025, California's Governor and state legislative leadership announced a package of bills (hereinafter referred to as "Proposition 50") to replace the congressional map adopted by the Citizens Redistricting Commission ("CRC") with a new congressional map for use in 2026, 2028, and 2030, subject to voter approval at a special election on November 4, 2025. The package consisted of:

(a) ACA 8 (Rivas & McGuire), a legislatively-referred constitutional amendment authorizing temporary use of a legislature-enacted congressional map through 2030 (*see* Assemb. Const. Amend. 8, 2025–26 Reg. Sess. (Cal. 2025));

(b) AB 604 (Aguiar-Curry & Gonzalez), the statute specifying the new congressional district boundaries (*see* Assemb. B. 604, 2025–26 Reg. Sess. (Cal. 2025)); and

(c) SB 280 (Cervantes & Pellerin), the bill calling the special election, appropriating funds, and making conforming calendar changes (*see* Sen. B. 280, 2025–26 Reg. Sess. (Cal. 2025)).

(Compl. ¶ 39, ECF No. 1).

From the beginning, there were signs that Proposition 50 would racially gerrymander California's districts by making race the predominant factor when drawing the maps under the cover of rhetoric about President Trump and events outside California. Sen McGuire said in a press release on August 19, 2025, that the "new map . . . retains and expands Voting Rights Act districts that empower Latino voters to elect their candidates of choice." Ex. 21.

Consistent with race being the predominant consideration for drawing the districts, the Redistricting Atlas, a document the map maker provided to the legislators to help

them understand the Proposition 50 map he drew, did not show the political breakdown of the districts but instead only showed the racial breakdown of the districts. Ex. 190.

Furthermore, Paul Mitchell, the individual who drew the Proposition 50 maps, explained in a presentation to Hispanas Organized for Political Equality ("HOPE") that the first thing he did was to add a "Latino district," specifically reversing the Commission's decision to eliminate that district. Ex. 11 at 23–24. He also stated that "the Prop 50 maps I think will be great for the Latino community" as "they ensure that the Latino districts [] are bolstered in order to make them most effective, particularly in the Central Valley." *Id.* at 30. Mitchell bragged on social media that the "proposed Proposition 50 map will further increase Latino voting power" and "adds one more Latino influence district." Ex. 14.

Paul Mitchell's confidence that Proposition 50 would augment Latino voting power is unsurprising. Just four years earlier, during the CRC's redistricting efforts in 2021, HOPE submitted a letter to the CRC proposing two district configurations: (1) "a new GATEWAY CITIES District centered around Downey . . . allowing for the creation of FIVE Latino Majority minority districts where there are currently four"; and (2) "tak[ing] the current LBNorth seat to the south, through Seal Beach into Huntington Beach, making that a Latino influence seat at 35-40% Latino by voting age population." (Ex. 12 at 2. (capitals in original).) That proposal was based on a report created by Dr. Christian Grose and Raquel Centeno with assistance from Paul Mitchell (See Ex. 12 at 3; Ex. 434 at 52–53 (Paul Mitchell confirming that he "consulted with Christian Grose" in drafting the report).) In concluding that these two changes would enhance Latino voting power, that report determined that districts most optimally achieve that result when they are drawn to contain "between 52% and 54% Latino CVAP." (Ex. 12 at 5.)

Ultimately, the CRC disregarded HOPE's suggestions and, as discussed *supra*, eliminated a Latino-majority district in Los Angeles. But when the California Legislature placed Paul Mitchell in a position to reverse that change, that is precisely what he did. Moreover, Mr. Mitchell created the district configurations HOPE proposed to the CRC—



as Proposition 50 Districts 41 and 42—and ensured that the overwhelming majority of Proposition 50's Latino-majority districts stayed within a narrow HCVAP band of 51–55%. (*See* Exs. 190 at 2–7 (showing racialized CVAP statistics for Proposition 50 districts), 434 at 53 (Paul Mitchell discussing the realization of HOPE's proposal in his map).) At bottom, Mr. Mitchell made deliberate decisions to deliver HOPE's earlier wishes in an explicit effort to protect, if not enhance, Latino voting power.

On November 4, 2025, voters in California approved Proposition 50. (ECF No. 1, ¶ 76). The next day, on November 5, 2025, Plaintiffs filed a Complaint in this matter. (ECF No. 1.) On November 7, 2025, Plaintiffs filed their Motion for Preliminary Injunction. (ECF Nos. 15, 16.) On November 10, 2025, DCCC moved to intervene as a defendant in this case. (ECF No. 20.) On November 13, 2025, the United States of America filed its motion to intervene (ECF No. 28) and concurrently filed its motion for preliminary injunction (ECF No. 29). On November 15, 2025, LULAC also moved to intervene as a defendant in this case. (ECF No. 39). The three-day hearing on Plaintiffs and Plaintiff-Intervenor's Motion for Preliminary Injunction was held on December 15-17. (ECF Nos. 179, 180, and 183.)

The filing period for candidates that are seeking public office to declare their candidacy is February 9, 2026, through March 6, 2026. (Ex 189.) The deadline for candidates to file their signatures in lieu of a filing fee is February 4, 2026. *Id.*

## LEGAL STANDARD

In evaluating whether to issue, modify, or otherwise affect an injunction under Fed. R. App. P. 8(a)(1)(C), courts in this district look to the stay factors articulated by the U.S. Supreme Court in *Nken v. Holder*, 556 U.S. 418 (2009). *See FTC v. QYK Brands, LLC*, No. SACV 20-1431 PSG (KESx), 2022 WL 2784416, at *2 (C.D. Cal. June 21, 2022). These factors are as follows: "(1) whether the movant makes a strong showing that he or she is likely to succeed on the merits; (2) whether irreparably injury is probable without a stay; (3) whether issuing a stay will "substantially injure" other parties

interested in the litigation; and (4) whether the stay advances the public interest." *Nken*, 556 U.S. at 434.

Accordingly, when a movant seeks an injunction pending appeal of an order denying a preliminary injunction, the movant must show (1) a strong showing of success on the merits, (2) a probability that the movant will be irreparably injured absent an injunction, (3) that an injunction would not "substantially injure" other parties interested in the litigation, and (4) that an injunction would advance the public interest. "The first two factors 'are the most critical,' and the last two factors merge when the Government is the opposing party." *QYK Brands, LLC*, 2022 WL 2784416 at *2 (quoting *Nken*, 556 U.S. at 434).

## ARGUMENT

### I. Plaintiffs Are to Likely Succeed on the Merits of Their Appeal

An equal-protection claim that a redistricting map unlawfully uses "race-based lines … call[s] for a two-step analysis." *Cooper v. Harris*, 581 U.S. 285, 291 (2017). "First, the plaintiff must prove that 'race was the predominant factor motivating the legislature's decision to place a significant number of voters within or without a particular district." *Id.* (quoting *Miller v. Johnson*, 515 U.S. 900, 916 (1995)). "Second, if racial considerations predominated over others," then the burden shifts to the State to satisfy "strict scrutiny." *Id.* at 292.

A plaintiff proves racial predominance by showing that race, rather than traditional redistricting principles or other legitimate objectives, was the legislature's "dominant and controlling rationale" in drawing district lines. *Miller*, 515 U.S. at 913; *accord Shaw v. Hunt*, 517 U.S. 899, 905 (1996). As the Supreme Court has determined, race predominates in the drawing of districts where a redistricting plan's "architects" indicate a focus on the racial makeup of congressional districts and testimony illustrates a drafter's "resolve to hit a majority-[minority] target." *Cooper*, 581 U.S. at 316. Plaintiffs can show racial predominance with "some combination of direct and circumstantial evidence." *Alexander v. S. Carolina State Conf. of the NAACP*, 602 U.S. 1, 8 (2024)

(quoting *Cooper v. Harris,* 581 U.S. at 291). "Direct evidence often comes in the form of a relevant state actor's express acknowledgment that race played a role in the drawing of district lines." *Alexander*, 602 U.S. at 8.

In redistricting cases, the intent at issue is the intent behind how the district lines were drawn, not the motives of the last person to approve the lines. In *Alexander*, the Supreme Court held that statements of the "career employee who drew the Enacted Map" was "direct evidence" of whether race predominated in the drawing of district lines. *Alexander*, 602 U.S. at 19. As Judge Lee stated in his dissent, the "Supreme Court has repeatedly relied on statements from the mapmaker in assessing whether the state improperly relied on race in drawing district lines." (ECF No. 216, at 82 (citing *Alexander, Cooper*, *Rucho*, and *Bethune-Hill*).) Because Mitchell refused to testify, his earlier statements that race was used in drawing Congressional districts constituted on-point and unmitigated direct evidence of his intentions in drawing the district lines.

As Judge Lee concluded: "Because Mitchell's own words show that he relied on race in drawing certain districts, Plaintiffs have rebutted the presumption of legislative good faith that we give to California." (ECF No. 216, at 79.)

In reaching its decision denying Plaintiffs' Motion for Preliminary Injunction, the Court deemed irrelevant the intent of the mapmaker who drew the map as well as the state legislators who initiated legislation to put Proposition 50 on the ballot. The Court determined that it was Plaintiffs' responsibility to "put forth evidence that the *voters* predominately intended the challenged districts to be racial, rather than partisan, gerrymanders." ECF No. 216, at 22 (emphasis added). The Court determined that "the voters are the most relevant state actors and their intent is paramount." ECF No. 216, at 15.

The Court focused on the case of *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647 (2021). In *Brnovich*, the Supreme Court determined that the "'cat's paw' theory has no application to legislative bodies." *Brnovich*, 594 U.S. at 690. That is, that the legislature cannot be deemed to have the improper intent of one of its members.



The Court acknowledged that it was a case of first impression as to whether this doctrine could be extended to insulate the intent of the voters who approved a redistricting plan despite an alleged racial gerrymander by the person who drew the map or the legislature. ECF No. 216, at 14. Nevertheless, the Court reasoned that since the voters were the final decision makers, any impermissible racial intent of the mapmaker or the legislature cannot be imputed to the voters. The Court stated that Plaintiffs were essentially urging the Court "to apply the 'cat's paw' theory to the voters here." ECF No. 216, at 18.

Plaintiffs respectfully disagree with the Court's extension of *Brnovich* to inoculate a racial gerrymander just because it was approved by the voters following a campaign that did not focus on the mapmaker's racial gerrymander. Majoritarian approval, whether by a legislature or by the electorate, cannot insulate unconstitutional election structures from judicial review. *See, e.g.*, *Moore v. Harper*, 600 U.S. 1, 23–26 (2023) (cases reviewing constitutionality of redistricting schemes).

The Plaintiffs also introduced circumstantial evidence of an unconstitutional racial gerrymander. As Judge Lee recognized, indirect evidence of racial motivation may come from many sources. Plaintiffs' expert Sean Trende confirmed that race predominated in drawing Congressional District 13 lines. ECF No. 216, at 95.

Because Plaintiffs offered direct and circumstantial evidence that at least one district in Proposition 50 was drawn with race as the predominant consideration, and because the State has failed to articulate any justification for doing so, Plaintiffs are likely to succeed on the merits of their appeal.

Once Plaintiffs show direct evidence that the mapmaker used race in drawing of district lines, the burden shifts to the State to "satisfy strict scrutiny." *Alexander*, 602 U.S. at 8. To satisfy strict scrutiny, the State must show that the use of race in drawing the district lines was "narrowly tailored to serve a compelling state interest." *Alabama Legis. Black Caucus v. Alabama*, 575 U.S. 254, 272 (2015). Neither the State Defendants nor Defendant-Intervenors introduced any evidence indicating that Proposition 50 meets

this stringent standard. Accordingly, for purposes of Plaintiffs' motion for preliminary injunction, Defendants conceded this point. *See Shorter v. L.A. Unified Sch. Dist.*, No. CV 13–3198 ABC AJW, 2013 WL 6331204, at *5 (C.D. Cal. Dec. 4, 2013).

**II. Irreparable Injury Is Likely Absent an Injunction**

Plaintiffs here will suffer irreparable injury in the absence of an injunction pending appeal for the simple reason that the current election calendar assures it.

Plaintiffs are voters, a candidate, and a state party. They will suffer irreparable harm if the Defendants implement unconstitutionally racially gerrymandered congressional district maps. Plaintiffs have already filed their Notice of Appeal. However, by the time this matter is likely to be fully resolved by the U.S. Supreme Court, the deadline for candidates to file the necessary paperwork with the state to run for Congress will have already passed, thus causing irreparable harm.

As identified by Judge Lee in his dissent, February 4, 2026, "starts a month-long period when the candidates can begin filing their paperwork declaring their candidacy in the appropriate district." The deadline for candidates to file their signatures in lieu of a filing fee is February 4, 2026. Ex 189. The filing period for candidates who are seeking public office to declare their candidacy is February 9, 2026, through March 6, 2026. *Id.*

As such, Plaintiffs request that this court issue an injunction pending appeal so that Plaintiffs' constitutional rights will not be violated while this case is addressed by the Supreme Court. An injunction is necessary to preserve the status quo. And the 2021 commission congressional map provides a ready alternative for the State and would preserve the status quo.

Moreover, where a plaintiff in a constitutional case "shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). Therefore, because Plaintiffs here have demonstrated the underlying merits of their claim, they are likely to suffer irreparable harm absent injunctive relief during the pendency of their appeal.



### III. An Injunction Would Not "Substantially Injure" Defendants and Would Advance the Public Interest

As discussed *supra*, the final two factors courts evaluate when weighing whether to issue the relief requested here "merge when the Government is the opposing party." *QYK Brands, LLC*, 2022 WL 2784416 at *2. Accordingly, Plaintiffs address them together here. For two essential reasons, these factors cut sharply in Plaintiffs' favor.

*First*, the public has a paramount interest in ensuring that its congressional district maps comply with the Constitution. Because Plaintiffs have shown a strong likelihood that the state has racially gerrymandered congressional districts in contravention of federal law, the public interest lies in preliminarily preventing those suspect districts from governing future federal elections. *See Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014).

*Second*, granting an injunction preserves, rather than upends, the electoral status quo. The unconstitutional districts authorized by Proposition 50 are brand new. They were drawn by a partisan consultant, rushed through the Legislature in a matter of days, and only recently approved at a special election on November 4, 2025. (ECF #16, 20–22.) By contrast, the CRC's 2021 congressional map has already governed two federal cycles and been implemented by state and local election officials.

In denying Plaintiffs' motions for preliminary injunction, the Court's assessment was limited only to the question of whether Plaintiffs met their burden of showing "serious questions going to the merits" of their racial gerrymandering claims. (See ECF No. 216, at 69 n.36.) Indeed, only Judge Lee, in dissent, considered the extent to which denying preliminary relief would injure Plaintiffs or affect the public interest. As Judge Lee articulated: "[W]hen a plaintiff in a constitutional case proves he is likely to succeed on the merits, it 'also tips the public interest sharply in his favor because it is "always in the public interest to prevent the violation of a party's constitutional rights."'" (*Id.* at 113 (quoting *Baird*, 81 F.4th at 1040).) Because Plaintiffs have shown that they are likely to succeed in their appeal, these factors favor awarding the relief requested herein.

# CONCLUSION

For these reasons, the Court should grant Plaintiffs' request for an injunction pending appeal in this matter. The Court should enjoin Defendants, as well as their agents, employees, and successors in office, from implementation of Proposition 50's congressional districts map during the pendency of this litigation.

Unless the Court enters this Injunction, Plaintiffs and other Californians will suffer irreparable harm. Proposition 50's map violates Plaintiffs' Fourteenth Amendment constitutional rights. Plaintiff-Intervenor United States agrees that this Court should enter an injunction pending appeal.

Date: January 15, 2026

By: _/s/ Mark P. Meuser_
MICHAEL A. COLUMBO (SBN: 271283)
mcolumbo@dhillonlaw.com
**DHILLON LAW GROUP INC.**
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 944-4996

SHAWN COWLES (SBN: 163826)
scowles@dhillonlaw.com
MARK P. MEUSER (SBN: 231335)
mmeuser@dhillonlaw.com
**DHILLON LAW GROUP INC.**
4675 MacArthur Court, Suite 1410
Newport Beach, CA 92660

DOMENIC P. AULISI (Admitted PHV)
daulisi@dhillonlaw.com
AMBER R. HULSE (Admitted PHV)
ahulse@dhillonlaw.com
**DHILLON LAW GROUP INC.**
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314

*Attorneys for Plaintiffs*

